# EXHIBIT 6

RECORDING REQUESTED BY AND MAIL TO

RECORDED AT REQUEST OF
BOARD OF SUPERVISORS
RETURN TO 383 HALL OF
ADMINISTRATION

85   277960

This is to certify that this
document covers County business
within the meaning of Section
6103 of the Government Code.
LARRY J. MONTEILH, Executive Officer-
Clerk of the Board of Supervisors

By _Joyce D. Sauble_
Deputy

DEVELOPMENT AGREEMENT

FREE 22G

THIS AGREEMENT, dated ___November 29___ ,

1984 is between the County of Los Angeles (hereinafter "County"),

a political subdivision organized and existing under the laws

of the State of California, and Lost Hills Investment (hereinafter

"LHI"), a California partnership with its principal place of

business at 23480 Park Sorrento, Calabasas, California 91302.

RECITALS:

A.  Government Code Sections 65864-65869.5 authorize

the County to enter into binding development agreements with

persons having legal or equitable interests in real property

for the development of such property;

B.  Pursuant to Section 65865 the County has adopted

rules and regulations establishing procedures and requirements

for consideration of development agreements;

C.  LHI has requested the County to enter into a

development agreement, and procedures have been followed in

accordance with the law.

D.  The Board of Supervisors of the County has found

that this development agreement is consistent with the General

Plan of the County; and

RECORDED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
31  MIN.   9 A.M. MAR 13 1985
PAST.



E.  On ___November 29,_____, 1984, the Board of
Supervisors of the County adopted Ordinance No. _84-0230-M_
approving the development agreement with LHI and the Ordinance
thereafter took effect on _____December 30,_____, 1984.

NOW THEREFORE, the parties agree:

1.  The real property, which is the subject of this
agreement ("Property"), is that area described in Exhibit "A",
attached hereto.

2.  LHI represents that it is the owner of the Property
and that all other persons holding legal or equitable interests
in the Property are to be bound by the agreement.

3.  The rights of LHI under this agreement may not
be transferred or assigned unless the written consent of the
County is first obtained, which consent shall not be unreasonably
withheld.

4.  The burdens of this agreement shall be binding
upon, and the benefits of this agreement shall inure to, all
successors-in-interest to the parties to this agreement.

5.  On February 3, 1983, the County approved Zone
Change No. 81-039 for light industrial-, commercial-, and residential-
planned developments of the Property.  On March 24, 1983, the

85 277980

2

County Board of Supervisors approved Conditional Use Permit
2013 and Tentative Tracts 32952, 32964, and 33128 for said
light industrial-, commercial-, and residential-planned developments
of the Property.  Tentative Tracts 32953, 32954, 32960, and
32988 were approved by the County Regional Planning Commission
on November 24, 1982, and were not subsequently appealed to
the Board of Supervisors and thus became final.

The findings and conditions for Conditional Use Permit
2013 and Tentative Tracts 32952, 32953, 32954, 32960, 32964, 32988
and 33128 have been filed with the Board Clerk as an Appendix
to this agreement and are incorporated herein by this reference.

Tentative Tracts 32953, 32954, 32960, 32964, 32988
and Conditional Use Permit No. 2013 provide for a cluster development
of the Property with 1,192 residential units.

Tentative Tracts 32952 and 33128 and Conditional
Use Permit No. 2013 provide for development of 58.6 acres of
light industrial-, and commercial-planned development and 15.0
acres for a Public Administrative Center.

The light industrial-, commercial-, and residential
development described above is referred to herein as the "Project".

Condition No. 11 of Conditional Use Permit No. 2013
was subsequently modified by Conditional Use Permit No. 2503
adopted by the Regional Planning Commission on June 13, 1984.  The

85- 277980

modification to Condition No. 11 allowed grading in Phase I
only prior to recordation of Tentative Tract Nos. 33128, 32952,
32953 and 32954.  Conditional Use Permit No. 2503 also authorized
modifications which dealt with further grading on property
being acquired from the Department of Transportation of the
State of California.  Conditional Use Permit No. 2503 was processed
in conjunction with Oak Tree Permit No. 84-004 because the
development authorized by Conditional Use Permit No. 2013,
as modified by Conditional Use Permit No. 2503, would cause
the removal of 38 oak trees for Phase I grading where 72 oak
trees currently exist.  Both Conditional Use permit No. 2503
and Oak Tree Permit No. 84-004 have become final, and the findings
for the same have been filed with the Board Clerk as an Appendix
to this agreement and are incorporated herein by this reference.

    6.  In addition to the zoning classification, the
following specific restrictions, as reflected in the applicable
findings and conditions of the conditional use permit and tentative
tract maps, shall also govern the use of the Property:

        (a) Permitted uses of the Property are limited
        to the following:  a residential-planned development
        of 1,192 residential units, commercial-planned development
        of 38.2 acres, light industrial-planned development
        of 20.4 acres, and an Administrative Center site of
        15.0 acres, all in accordance with the terms of Conditional
        Use Permit No. 2013, as modified by Conditional Use
        Permit No. 2503;

**85 277960**

4

(b) The maximum density is described in Conditional Use Permit No. 2013, as modified by Conditional Use Permit No. 2503, and on Tentative Tracts 32952, 32953, 32954, 32960, 32964, 33128 and 32988;

(c) The size and height for each of the proposed buildings shall conform to the plot plans on file with Conditional Use Permit No. 2013, as modified by Conditional Use Permit No. 2503; and

(d) The provision for reservation or dedication of land for public purposes is described in the approved conditions for recordation of Tentative Tract No. 32952.

7.  LHI will dedicate to the County in fee Lot 17 of Tentative Tract Map No. 32952, which real property is more specifically described in Exhibit "B", attached hereto, upon the occurrence of both the execution and recordation of this agreement and the final approval and recordation of Final Tract Map No. 32952.  The deed shall be in the format attached hereto as Exhibit "C".  Further, LHI will grade said lot and provide necessary drainage facilities per approved County grading plan and drainage plan for Tentative Tract Map No. 32952.  LHI will apply for applicable grading permits within six (6) months of the execution of this agreement.  LHI will complete grading within three (3) years of the date of the execution of this

85 277980                         5

agreement.  Notwithstanding the dedication to the County in
fee of Lot 17, LHI shall have the unimpeded right of entry
to said parcel, and such easements, whether temporary, or permanent,
as are necessary for the purpose of accomplishing the grading
just described, as well as, such minor modifications as may
be authorized by the County in writing for Final Tract Map
No. 32952.  LHI acknowledges that the County currently intends
to construct a Civic Center complex on Lot 17 at some future
date.  The dedication of Lot 17 is a material consideration
for the execution of this agreement.  Except as otherwise provided
in this agreement, the County agrees that upon receiving title
to Lot 17 it shall at all times maintain the parcel in a manner
that is neat, clean and free from hazard.

Basic architectural guidelines in the design and
construction of the Civic Center buildings shall be consistent
with the architectural concepts shown in exhibits 12 through
27 of Conditional Use Permit No. 2013, as modified by Conditional
Use Permit No. 2503.

The County further agrees to landscape Lot 17 in
a manner which is compatible with the Project.  Landscaping
shall be, on average, of the same quality, quantity, size and type
as is currently approved for the balance of the Project.

85 277980

6

The County also agrees that the exterior walls, and colors of said exterior walls shall be compatible with the architectural style shown in exhibits 12 through 27 of Conditional Use Permit No. 2013, as modified by Conditional Use Permit No. 2503. The provisions of paragraph 7 shall not terminate or alter any requirements or conditions set forth in any approvals or permits issued by the County prior to the date of this agreement.

8. The rules, regulations and official policies governing permitted uses of the Property, the density of the Project, the design, improvement and construction standards and specifications applicable to the Project are those ordinances, rules, regulations, official policies and other applicable laws in force at the time of the execution of this agreement.

9. This agreement does not prevent the County in subsequent actions applicable to the Property from applying new or amended ordinances, rules, regulations and policies which do not conflict with those rules, regulations and policies applicable to the Property as set forth in paragraph 6 hereinabove. This agreement does not prevent the County from denying or conditionally approving any subsequent development project application on the basis of existing, new or amended ordinances, rules, regulations or policies.

10. In the event that any subsequent change in the laws or regulations of a federal or state agency prevents or

85 277980

7

precludes compliance with one or more provisions of this agreement, such provision shall be modified or suspended only to the extent necessary to comply with such new federal or state law or regulation.

11. The County, through the Director of Planning, shall review this agreement at least once during every 12-month period from the date this agreement is executed. During each periodic review by the County, LHI is required to demonstrate good faith compliance with the terms of this agreement to the reasonable satisfaction of the Director of Planning. LHI agrees to furnish such evidence of good faith compliance as the Director of Planning, in the exercise of his discretion, may require.

12. It is understood that the contractual relationship between the parties created hereunder is such that LHI is an independent contractor of the County. This agreement is not intended, and shall not be construed, to create the relationship of agent, servant, employee, partnership, joint venture, or association, as between the parties.

13. LHI agrees to indemnify, defend and hold harmless the County, its officers, agents and employees from and against any and all liability, expense, costs of suit and legal fees, and claims for damages of any nature whatsoever including, but not limited to, personal injury, bodily injury, death or property damage, arising from or connected with LHI's acts or omissions in connection with Lot 17 or the Project, or with

**85 277960**

8

Lot 17 prior to the County's commencement of construction of the County's capital improvements on Lot 17, including, but not limited to:

    a.  negligence;

    b.  creation or maintenance of a dangerous condition of public property;

    c.  breach of warranty, express or implied; or

    d.  intentional infliction of harm.

LHI further agrees to indemnify, defend, hold harmless, and pay all costs for the County in any action challenging the validity of this development agreement or the authority of the County to enter into this development agreement on the terms and conditions contained herein.

14.  Without limiting its indemnification of the County, LHI shall provide and maintain at its own expense during the terms of this agreement the following program(s) of insurance concerning its operations hereunder.  Such insurance shall be provided by insurer(s) satisfactory to the County Risk Manager and evidence of such programs satisfactory to the County shall be furnished to the County on or before the effective date of this agreement.  Such evidence shall specifically identify this agreement and shall contain express conditions that the County

85 277980

9

is to be given written notice at least thirty (30) days prior to any modification or termination of any program of insurance.

a.  Liability:  Such insurance shall be primary to and not contributing with any other insurance maintained by the County, shall name the County of Los Angeles as an additional insured, and shall include, but not be limited to:

(1)  Either Comprehensive General Liability insurance endorsed for Premises-Operations, Products/Completed Operations, Contractual, Broad Form Property Damage, and Personal Injury, or Builder's All-Risk Insurance, with a combined single limit of not less than $3,300,000 per occurrence.

(2)  Comprehensive Auto Liability endorsed for all owned and non-owned vehicles with a combined single limit of at least $2,000,000 per occurrence.

b.  Workers' Compensation:  LHI shall cover its employees with workers' compensation insurance in an amount and form to meet all applicable requirements of the Labor Code of the State of California.  LHI shall require each contractor and subcontractor similarly to provide workers' compensation insurance for their respective employees.  LHI agrees to indemnify the County for damage, if any, resulting from its failure to take out and maintain such insurance.

85 277980                    10

c.  Bonds:

(1)  Performance Bond:  A faithful performance bond in the sum of not less than 100% of the agreed contract price payable to the County and executed by a corporate surety licensed to transact business as a surety in the State of California.  Such bond shall be conditioned upon faithful performance by LHI of the terms and conditions of paragraph 7 of this agreement and shall be renewed to provide for continuing liability in the above amount notwithstanding any payment of recovery thereon.

(2)  Labor and Material Bond:  A labor and material payment bond of not less than the amount incurred for labor and material payable to the County and executed by a corporate surety in the State of California.  Such bond shall be conditioned upon satisfactory payment by LHI and its subcontractors for all labor and material used in performance of paragraph 7 of this agreement.  Such bond shall be renewed to provide for continuing liability in the above amount notwithstanding any payment or recovery thereon.

11

85  277980

As its sole option, the County may accept Certificates of Deposit, Cash Deposits, or U.S. Government Securities in lieu of commercial bonds to meet this provision. Such alternate bond shall be made payable to the County and shall be deposited with the County's Auditor-Controller.

15. Failure on the part of LHI to procure or maintain required insurance, or bond, shall constitute a material breach of contract upon which the County may immediately terminate or suspend this agreement or, at its discretion, procure or renew such insurance, or bond, and pay any and all premiums in connection therewith, and all monies so paid by County shall be repaid by LHI to County upon demand.

16. This agreement may be amended or cancelled, in whole or in part, only by mutual consent of the parties or their successors-in-interest and in the manner provided for in Government Code Sections 65868, 65867 and 65867.5.

17. Unless amended or cancelled as provided hereinabove, this agreement is enforceable by any party to it notwithstanding any change in the applicable general or specific plan, zoning, subdivision or building regulations adopted by the County which alter or amend the ordinances, rules, regulations or policies governing permitted uses of the land, density, design, improvement and construction standards and specifications.

85 277980

12

18.  LHI is in default under this agreement if a warranty, representation or statement made or furnished by LHI to the County is false or proves to have been false in any material respect when it is made.  Additionally, LHI may be found in default under this agreement if the Director of Planning, upon a finding and determination made following a periodic review, as provided hereinabove, that upon the basis of substantial evidence LHI has not complied in good faith with one or more of the terms or conditions of this agreement. The determination of default is to be made by the Director of Planning only after notice and public hearing.

19.  Upon the occurrence of an event of default, the County may terminate or modify this agreement; however, the County does not waive any claim or defect in performance by LHI if, on periodic review, the County does not propose to modify or terminate this agreement.

20.  Nonperformance under this agreement shall not be excused because of an act or omission of a third person. Adoption of a law or other governmental activity making performance by the applicant unprofitable, more difficult, or more expensive does not excuse the performance of the obligation by LHI. Nonperformance shall be excused only when it is prevented or delayed by acts of God or an emergency declared by the Governor of the State of California.

85  277980                        13

21. All other remedies at law or in equity which are not otherwise provided for in this agreement or in the County's regulations governing development agreements are available to the parties to pursue in the event there is a breach.

22. In no event shall LHI be entitled to any damages against the County upon termination of this agreement.

23. If legal action by either party is brought because of a breach of this agreement, or to enforce a provision of this agreement, the prevailing party is entitled to reasonable attorneys' fees and court costs.

24. All notices required or provided for under this agreement shall be in writing and delivered in person or sent by certified mail, postage prepaid. Notices to be given to the County shall be addressed as follows:

Director of Planning
County of Los Angeles
320 West Temple Street
Los Angeles, California 90012

Notices to be given to LHI shall be addressed as follows:

Lost Hills Investment
c/o Currey-Riach Company
23480 Park Sorrento
Calabasas, California 91302

A party may change its address by giving notice in writing to the other party, and thereafter notices shall be addressed and transmitted to the new address.

**85 277980**

14

25.  If a part of this agreement is held to be invalid, the remainder of the agreement is not affected.

26.  The time limits set forth in this agreement may be extended or shortened by mutual consent of the parties in accordance with the procedures for adoption of an agreement.

27.  This agreement shall expire ten years from the date of its execution.

IN WITNESS WHEREOF this agreement has been executed by the parties on the day and year first written above.



County of Los Angeles

By _____
Chairman, Board of Supervisors

Attest:  Larry J. Monteilh,
         Executive Officer
         Clerk of the Board of
         Supervisors

By _____
  Deputy

85 277980                    15

Lost Hills Investment,
 a California partnership

Currey-Riach Company

By _____
 Title _____ President

By _____
 Title _____ Secretary

APPROVED AS TO FORM:

DeWitt W. Clinton
 County Counsel

By _____
 Deputy

85 277980

16

```
STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF __Los Angeles__  )
```

On __December 11_____, 19<sup>84</sup>, before me, the undersigned, a
Notary Public in and for said State, personally appeared
Thomas E. Riach, and Sam G. Currey_____,
personally known to me or proved to me on the basis of satisfactory
evidence to be the person(s) that executed the within instrument on
behalf of LOST HILLS INVESTMENT, the partnership therein named, and
acknowledged to me that the partnership executed it.

WITNESS my hand and official seal.

OFFICIAL SEAL
ROMAINE HOSCIK
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires JUN 27, 1986

_Romaine Hoscik_____
Notary Public in and for said State

[SEAL]

```
STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF _____  )
```

On _____, 19__, before me, the undersigned, a
Notary Public in and for said State, personally appeared
_____,
personally known to me or proved to me on the basis of satisfactory
evidence to be the person(s) that executed the within instrument on
behalf of the COUNTY OF LOS ANGELES, the political subdivision
organized and existing under the laws of the State of California,
and acknowledged to me that said organization executed it.

WITNESS my hand and official seal.

_____
Notary Public in and for said State

[SEAL]

85 277980                    -17-

EXHIBIT "A"

PARTNERSHIP GRANT DEED

LEGAL DESCRIPTION OF PROPERTY

85 277980                    -9-

LEGAL DESCRIPTION
OVERALL OWNERSHIP

Those portions of Government Lots 3 and 4 in Section 30, Township 1 North, Range 17 West, San Bernardino Meridian and the Southwest quarter of said Section 30, and portion of Government Lots 1 and 2 in Section 31, Township 1 North, Range 17 West, San Bernardino Meridian and portion of the Northwest quarter of said Section 31 and portion of the South half of Section 25, Township 1 North, Range 18 West, San Bernardino Meridian and portion of the Northeast quarter of Section 36, Township 1 North, Range 18 West, San Bernardino Meridian all in the Unincorporated territory of the County of Los Angeles, State of California according to the official Plats thereof described as a whole as follows:

Beginning at the center of said Section 30; thence along the Westerly line of the land described in deed to M.M. Ely Jr., recorded on June 2, 1954 in book 44711, Page 143, Official Records, the following courses and distances South 36° 56' 27" West 795.83 feet; South 10° 46' 01" West 269.12 feet; South 18° 07' 29" East 276.54 feet; South 50° 18' 47" West 148.45 feet; South 62° 27' 37" West 282.06 feet; South 32° 28' 25" West 330.94 feet and South 19° 46' 05" West 227.89 feet to the South-westerly corner thereof; thence Easterly along the Westerly prolongation of the Northerly line of the land described in deed to Las Virgenes Union School District recorded on April 21, 1949 as Instrument No. 1519 in Book 29899 Page 114 of Official Records South 89° 58' 53" East 28.57 feet to the Northwesterly corner thereof; thence along the Westerly line of said land South 10° 35' 04" West 746.83 feet to the Southerly line of said Section 30; thence along said Southerly line South 89° 58' 53" East 920.52 feet to the centerline of Las Virgenes Road; thence along said centerline South 10° 35' 04" West 3.09 feet; thence South 5° 47' 49" West 788.82 feet; thence South 5° 10' 46" West 815.64 feet to the beginning of a tangent curve concave Northwesterly having a radius of 1000.00 feet; thence Southwesterly along said curve thru a central angle of 45° 36' 56" a distance of 796.09 feet; thence tangent to said curve South 50° 47' 42" West 231.86 feet to the beginning of a tangent curve concave Southeasterly having a radius of 1000.00; thence Southwesterly along said curve thru a central angle of 15° 34' 52" a distance of 271.94 feet to the Southerly line of the Northwest quarter of said Section 31; thence along said Southerly line South 89° 38' 20" West 1508.81 feet to the Southwesterly corner thereof; thence along the Southerly line of the Northeast quarter of said Section 36 South 89° 51' 53" West 2614.46 feet to the Southwesterly corner thereof; thence along the Westerly line of said Northeast quarter North 0° 06' 30" West 1321.035 feet to the Southwesterly corner of Tract No. 34177 as per map filed in Book 967 Pages 38 to 45 inclusive of Maps, records of said County; thence along the boundary lines of said Tract No. 34177, North 89° 53' 22" East 1311.56 feet; thence North 0° 04' 46" East 1320.48 feet to the Southerly line of the Southeast quarter of said Section 25; thence along said Southerly line South 89° 54' 50" West 1315.08 feet to the Southwesterly corner thereof; thence along the westerly line of said Southeast quarter North 0° 03' 52" East 1336.47 feet to the Northeasterly corner of Tract No. 29674 as per map filed in Book 734 Pages 71 to 74 of Maps records of said County; thence westerly along the Northerly line of said Tract No. 29674 to the Southeasterly line of Rondell Street, 60 feet wide, as described in deed to the County of Los Angeles recorded in Book 6235 Page 140 of Deeds, records of said County; thence Northeasterly along said Southeasterly line to the Southerly line of the land described in deed to the State of California recorded in Book D2553 Page 276 of Official Records; thence Easterly along said Southerly line and the Southerly line of the land described to said State of California in deeds recorded in Book D6310 Page 288 and in Book D6081 Page 248 both of official records, to the Northerly line of said Southwest quarter of Section 30; thence Easterly along said Northerly line to the point of beginning.

85 277980

EXHIBIT A



CHANGE OF PRECISE PLAN
THE MALIBU DISTRICT II
ADOPTED BY ORDINANCE 83-0062Z
ON        April 19,        1983
AMENDING SECTION 421 ORDINANCE 1494
ZONING CASE                B1039

THE REGIONAL PLANNING COMMISSION
COUNTY OF LOS ANGELES
DELTA L. MURPHY        CHAIRMAN
NORMAN MURDOCH   PLANNING DIRECTOR

85 277980

EXHIBIT "B"

<u>PARTNERSHIP GRANT DEED</u>

<u>LEGAL DESCRIPTION OF BENEFITTED PROPERTY</u>

85 277960

LEGAL DESCRIPTION

PROPOSED CIVIC CENTER PARCEL

THAT PORTION OF THE SOUTHEAST QUARTER OF SECTION 25, TOWNSHIP 1 NORTH; RANGE 17 WEST S.B.M. ACCORDING TO THE OFFICIAL PLAT THEREOF IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA DESCRIBED AS FOLLOWS:

COMMENCING AT THE EASTERLY TERMINUS OF THE NORTHERLY LINE OF TRACT NO. 29074 AS SHOWN ON MAP RECORDED IN BOOK 734 PAGES 71 THROUGH 74 INCLUSIVE OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY HAVING A BEARING AND DISTANCE OF NORTH 86° 59' 50" WEST 2614.47 FEET; (NORTH 89° 41' 27" EAST FOR THE PURPOSE OF THIS DESCRIPTION) THENCE SOUTH 89° 49' 21" EAST 1319.76 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 0° 13' 54" WEST 77.81 FEET; THENCE SOUTH 56° 41' 56" EAST 144.02 FEET; THENCE NORTH 73° 41' 10" EAST 106.80 FEET; THENCE SOUTH 52° 51' 58" EAST 217.00 FEET; THENCE NORTH 87° 50' 14" EAST 412.95 FEET TO THE BEGINNING OF A NON-TANGENT CURVE CONCAVE TO THE EAST AND HAVING A RADIUS OF 502.00 FEET; A RADIAL LINE OF SAID CURVE TO SAID POINT BEARS SOUTH 87° 50' 14" WEST; THENCE NORTHERLY AND NORTHEASTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 26° 10' 25" AN ARC DISTANCE OF 229.32 FEET; THENCE TANGENT TO SAID CURVE NORTH 24° 00' 39" EAST 45.41 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE TO THE SOUTHWEST AND HAVING A RADIUS OF 13.00 FEET; THENCE NORTHERLY AND NORTHWESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 85° 46' 10" AN ARC DISTANCE OF 19.46 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE TO THE NORTHEAST AND HAVING A RADIUS OF 597.00 FEET; A RADIAL LINE OF SAID CURVE TO SAID POINTS BEARS SOUTH 28° 14' 29" WEST; THENCE NORTHWESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 60° 51' 01" AN ARC DISTANCE OF 634.04 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE TO THE SOUTHWEST AND HAVING A RADIUS OF 27.00 FEET; A RADIAL LINE OF SAID CURVE TO SAID POINT BEARS SOUTH 89° 05' 30" WEST; THENCE NORTHERLY AND WESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 87° 05' 56" AN ARC DISTANCE OF 41.04 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE TO THE NORTH AND HAVING A RADIUS OF 2650.00 FEET; A RADIAL LINE OF SAID CURVE TO SAID POINT BEARS SOUTH 1° 59' 34" WEST; THENCE NORTHWESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 9° 31' 25" AN ARC DISTANCE OF 440.48 FEET; THENCE TANGENT TO SAID CURVE NORTH 78° 29' 01" WEST 85.73 FEET; THENCE SOUTH 0° 13' 54" WEST 651.04 FEET TO THE TRUE POINT OF BEGINNING.

CONTAINING 12.89 ACRES MORE OR LESS.

THIS LEGAL DESCRIPTION WAS PREPARED AS A CONVENIENCE AND IS NOT INTENDED FOR USE IN THE DIVISION AND/OR CONVEYANCE OF LAND AS GOVERNED BY THE SUBDIVISION MAP ACT OF THE STATE OF CALIFORNIA.

85 277980

EXHIBIT B





EXHIBIT "C"

PARTNERSHIP GRANT DEED

DEVELOPMENT AGREEMENT

85 277980

RECORDING REQUESTED BY,

AND, WHEN RECORDED, MAIL TO:

The County of Los Angeles
Board of Supervisors
383 Hall of Administration
500 West Temple Street
Los Angeles, California  90012

Attention: _____



─────────────────────────────────
[Space Above For Recorder's Use]

MAIL TAX STATEMENTS TO:

The County of Los Angeles
Board of Supervisors
383 Hall of Administration
500 West Temple Street
Los Angeles, California
              90012

Atten: _____

The undersigned Grantor declares
that this deed is recorded for
the benefit of the County of
Los Angeles and therefore is
exempt from the payment of the
Documentary Transfer Tax pursuant
to Revenue and Taxation Code Sec-
tion 11922, and is exempt from the
payment of a recording fee pursuant
to Government Code Section 6103.

A.P. No.: _____

─────────────────────────────────

## PARTNERSHIP GRANT DEED

        FOR VALUABLE CONSIDERATION, receipt of which is hereby
acknowledged, LOST HILLS INVESTMENT, a California partnership
("Grantor"), hereby grants to the COUNTY OF LOS ANGELES, a political
subdivision organized and existing under the laws of the State of
California ("Grantee"), that certain real property in the County of
Los Angeles, State of California ("Property"), described in Exhibit
"A," which is attached hereto and incorporated herein by this
reference.

        The Property is conveyed, and this conveyance is accep-
ted, subject to:

        1.   Non-delinquent general and special real property
taxes and personal property taxes for the current fiscal year;

**85 277980**

**EXHIBIT** C

2.   Covenants, conditions, restrictions, easements, reservations, rights, and rights-of-way of record; and

3.   The following express covenants, conditions, and restrictions (collectively, the "Restrictions") which are made for the benefit of Grantor and that certain real property owned by Grantor ("Benefitted Property") located near the Property, described more fully in Exhibit "B," which is attached hereto and incorporated herein by this reference. Grantee acknowledges that Grantor has substantial interest in ensuring compliance with the Restrictions which are imposed for the benefit of Grantor and the Benefitted Property. Therefore, Grantee, by acceptance and recordation of this Deed, expressly and specifically accepts and agrees to be bound by and to assume performance of all of the Restrictions which are acknowledged to be reasonable. The Restrictions are hereby imposed as equitable servitudes on the Property as a servient tenament for the benefit of all of the Benefitted Property. The Restrictions shall run with, inure to the benefit of, and be binding upon all of the Property and the Benefitted Property, and shall be binding upon and inure to the benefit of all parties having or acquiring any right, title, or interest in all or any part of the Property or Benefitted Property.

I

## GENERAL RESTRICTIONS

1.01 Use. The Property shall be used solely for the uses authorized under that certain Development Agreement dated _____, 19___ between Grantor and Grantee, a copy of which is attached hereto as Exhibit "C," which provides for the development of the Property as a "Civic Center Complex."

1.02 Architectural Compatibility. The architectural design of all buildings or other improvements, including landscaping ("Improvements") constructed or installed upon the Property, shall be compatible as to quality, quantity, size, type, design, color, and architectural style with those improvements constructed on the Benefitted Property, as such compatibility is more fully described in the Development Agreement and Exhibits 12 through 27 of Conditional Use Permit No. 2913, approved by the Los Angeles County Board of Supervisors on March 24, 1983.

1.03. Utilities. All utilities shall be constructed and maintained underground.

1.04. Antennae. There shall be no television, radio, citizens band, shortwave, or other antennae constructed on the outside of any structure on the Property and visible from any portion of the Benefitted Property, except as approved by Grantor in writing.

**85  277980**                    -2-

1.05. <u>Maintenance</u>. The entire Property shall, at all times, be kept in a clean and well maintained condition. All weeds and debris shall be promptly removed and all landscaped areas shall be well groomed and maintained at all times. No building or structure on the Property shall be permitted to fall into disrepair; and each such building and structure shall, at all times, be kept in good condition and repair, adequately painted or otherwise finished; provided, however, that nothing herein shall be construed to restrict Grantee or Grantee's successors or assigns from remodeling, altering, modifying, or moving the Improvements on the Property in accordance with plans and specifications approved by Grantor, pursuant to Article II hereof. In the event of damage or destruction to any such building or structure, such building or structure shall be repaired or reconstructed in accordance with previously approved plans and specifications submitted to Grantor for its approval or such alternative plans and specifications as Grantor may approve in writing.

1.06. <u>Nuisances</u>. No rubbish or debris of any kind shall be placed or permitted to accumulate on or adjacent to the Property, and no unreasonable odors shall be permitted to arise therefrom so as to render any portion of the Property unsanitary, unsightly, offensive, or detrimental to the Benefitted Property or to the occupants or owners thereof. No activity shall be permitted to exist or operate on any portion of the Property so as to be offensive, hazardous, or detrimental to the Benefitted Property or to its occupants or owners. Without limiting the generality of the foregoing provisions and, with the exception of equipment used in connection with initial construction on the Property by Grantee, no exterior speakers, horns, whistles, bells, or other loud devices (other than security devices used exclusively for security purposes), noisy or smokey vehicles, large power equipment or large power tools, unlicensed off-road motor vehicles, or other items which may unreasonably interfer with television or radio reception shall be located, used, or placed on any portion of the Property.

1.07. <u>Rubbish Removal</u>. Trash, garbage, or other waste shall be disposed of only by depositing same into trash containers, which containers shall be located in such a manner so as not to be visible from any portion of the Benefitted Property. No portion of the Property shall be used for the storage of building materials, refuse, or other materials (other than in connection with the initial construction approved by Grantor).

1.08. <u>Sign Control</u>. No billboards, signs, posters, shades, flags, banners, awnings, searchlights, lighting systems, or similar devices shall be displayed to public view on, from, or over the Property, other than (a) signs identifying the businesses or services conducted on the Property, (b) signs offering the Property for sale or lease, and (c) signs as are required by law. Signs and identifying markings on buildings in the Property shall only be of such size, design, material, color, and location as approved by

85 277980                    -3-

Grantor in writing, which approval shall not be unreasonably withheld. There shall be no additional free-standing signs on the Property without prior written approval of Grantor.

1.09. Heliport. No portion of the Property or any Improvement located thereon shall be used as a heliport for the landing and taking-off of helicopters or other flying devices.

II

DESIGN CONTROL

2.01. Architectural Control. Prior to the commencement of any grading, construction, alteration (including painting), addition, or reconstruction of any Improvement on the Property, plans and specifications showing the nature, kind, shape, height, width, color, materials, and location of same shall be submitted by Grantee to Grantor for approval thereof in writing, which approval shall not be unreasonably withheld. Grantee shall obtain a receipt for the plans and specifications from an authorized representative or agent of Grantor. Grantor shall approve plans and specifications submitted for its approval only if it deems, in its reasonable discretion that (a) the construction, alteration, addition, or reconstruction contemplated thereby and the locations indicated will not be detrimental to the Benefitted Property; (b) the architectural design of any structure thereby will be compatible with the surrounding structures, and (c) the construction thereof will not detract from the beauty, wholesomeness, and attractiveness of the Benefitted Property. Grantor may condition its approval of proposals or plans and specifications upon such changes therein as it deems appropriate, and may require submission of additional plans and specifications or other information prior to approving or disapproving materials submitted. Grantor may require such detail in plans and specifications submitted for its review as it deems proper, including, without limitation, grading plans, site plans, drainage plans, floor plans, elevation drawings, and descriptions or samples of exterior materials and colors. Until receipt by Grantor of any required plans and specifications, Grantor may postpone review of any plans submitted to approval. Decisions of Grantor and the reasons therefor shall be transmitted by Grantor to Grantee within sixty (60) days after receipt by Grantor of all materials required by Grantor. Upon completion of the contemplated Improvement, Grantee shall give a notification of completion ("Notice of Completion") of work to Grantor and, for purposes hereof, date of receipt of such Notice of Completion by Grantor shall be deemed to be the date of completion of such Improvement.

2.02. Exceptions and Waivers. Nonstructural improvements which are located within structures constructed on the Property and which cannot be seen from the exterior of the structure shall not require the approval of Grantor. Grantor may also exempt

85 277980                    -4-

other types of Improvements under the provisions of this Article II under written guidelines of Grantor, from time to time.

2.03.  No Waiver of Future Approvals.  The approval by Grantor of any proposals or plans and specifications or drawings for any work done or proposed to be done in connection with any other matter requiring the approval or consent of Grantor shall not be deemed to constitute a waiver of any right to withhold approval of or to consent to any similar approval of plans and specifications, drawings, or any matter whatsoever that is subsequently or additionally submitted for approval or consent.

2.04.  Correction of Defects.  Inspection of work and correction of defects shall proceed as follows:

(a)  Grantor or its duly authorized representative may, at any time, inspect any Improvement or change or alteration thereof for which the approval of plans and specifications is required under this Article II; provided, however, that Grantor's right of inspection shall terminate sixty (60) days after Grantee shall have given a Notice of Completion of work to Grantor; provided, further that such Improvement was actually completed as of the date of such Notice of Completion.  If, as a result of such inspection, Grantor finds that such Improvement or change or alteration thereof was done without obtaining approval of the plans and specifications therefor or was not done in substantial compliance with the plans and specifications approved by Grantor, it shall notify Grantee in writing of failure to comply with this Article II within thirty (30) days after the inspection, specifying the particulars of noncompliance (the "Notice of Noncompliance").  Grantor shall have the authority to require Grantee to take such action as may be necessary to remedy the noncompliance.

(b)  If, upon the expiration of thirty (30) days from the date of such Notice of Noncompliance, Grantee shall have failed to remedy such noncompliance, then Grantor may take whatever action is available to it at law or in equity to remedy such noncompliance; Grantee shall reimburse Grantor, upon demand, for all expenses incurred in connection therewith.

2.05.  Liabilities.  Grantor shall not be liable for any damage, loss, or prejudice incurred or claimed on account of (a) its approval or disapproval of any plans and specifications; (b) the construction or installation of any Improvements on the Property; provided, however, that Grantor has acted in good faith on the basis of actual knowledge possessed by it.  By approving plans and specifications, Grantor assumes no liability or responsibility therefor or for any defect in an Improvement constructed or installed from such plans and specifications; and Grantee and it successors and assigns shall indemnify and hold Grantor free and harmless from any damage, loss, or prejudice claim, and from all costs, expenses, and other charges arising therefrom.

85  277980                              -5-

III

ENFORCEMENT

     3.01.  Legal Proceedings.  The result of every action or omission whereby any of the Restrictions are violated, in whole or in part, is hereby declared to be and constitutes a nuisance; and every remedy allowed by law or equity against Grantee shall be applicable against such result.  In any legal or equitable proceeding for the enforcement of or to restrain the violation of the Restrictions or any provisions hereof, the losing party or parties shall pay reasonable attorneys' fees and costs or expenses to the prevailing party in such amount as may be fixed by the court in such proceedings.  All remedies provided herein at law or in equity shall be cumulative and not exclusive.

     3.02.  Inspection.  Grantor may, from time to time, during business hours, enter in and inspect the Property to ascertain compliance with the Restrictions.

     3.03.  Failure to Enforce Not a Waiver of Rights.  The failure of Grantor to enforce any of the Restrictions contained herein shall in no event be deemed a waiver of the right to do so thereafter, nor the right to enforce any other covenants, conditions, or restrictions.

85 277980

-6-

Grantor and Grantee have caused this Partnership Grant Deed to be executed on the dates set forth below.

Dated: _____, 19__    LOST HILLS INVESTMENT, a
California partnership

By: _____

Its: _____

"Grantor"

Dated: _____, 19__    COUNTY OF LOS ANGELES, a political
subdivision organized and existing
under the laws of the State of
California

By: _____

Its: Chairman of the
Board of Supervisors

"Grantee"

Attest: Larry J. Monteilh,
Executive Officer
and Clerk of the
Board of Supervisors

By: _____
Deputy

Approved as to Form:

DeWitt W. Clinton
County Counsel

By: _____
Deputy

85 277980       -7-

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF _____  )

    On _____, 19__, before me, the undersigned, a Notary Public in and for said State, personally appeared _____,
personally known to me or proved to me on the basis of satisfactory evidence to be the person[s] that executed the within instrument on behalf of LOST HILLS INVESTMENT, the partnership therein named, and acknowledged to me that the partnership executed it.

    WITNESS my hand and official seal.

                                          _____
                                      Notary Public in and for said State

    [SEAL]

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF _____  )

    On _____, 19__, before me, the undersigned, a Notary Public in and for said State, personally appeared _____,
personally known to me or proved to me on the basis of satisfactory evidence to be the person[s] that executed the within instrument on behalf of the COUNTY OF LOS ANGELES, the political subdivision organized and existing under the laws of the State of California, and acknowledged to me that said organization executed it.

    WITNESS my hand and official seal.

                                          _____
                                      Notary Public in and for said State

    [SEAL]

85 277960

-8-