UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN,<br><br>  Plaintiff,<br><br>  v.<br><br>CLARK R. TAYLOR,<br><br>  Defendant. | Case No.:  2:22-cv-09203-MEMF-KS<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR JUDICIAL NOTICE [ECF NOS. 42, 59, 62, 65]** |

Before the Court are a Request for Judicial Notice (ECF No. 59) and several Motions for Preliminary Injunctions. ECF Nos. 42, 62, 65. For the reasons stated herein, the Court DENIES the Request for Judicial Notice and DENIES the Motions for Preliminary Injunctions.

///

///

///

///

///

1

**BACKGROUND**

I. **FACTUAL BACKGROUND**[1]

Plaintiff Clinton Brown ("Brown") is an individual residing in California. Compl. at 2.[2] Defendant Clark Taylor[3] ("Taylor") is an individual who works at the Los Angeles County Department of Regional Planning ("LACDRP"). *Id.* Taylor's title is "Senior Planner, Coastal Division Services." *Id.*

Brown sought to develop a solar farm on a property located at 27250 Agoura Road in unincorporated Los Angeles County ("the Agoura Property").[4] *Id.* at 3. The Agoura Property is 32.4 acres of currently vacant land. *Id.*

Brown submitted an application for the solar farm on the Agoura Property to the Los Angeles County Department of Building and Safety ("LACDBS") on November 28, 2020. *Id.* On August 31, 2021, LACDBS voided the original application and directed Brown[5] to submit a new application. *Id.* On September 1, 2021, LACDBS sent an "Agency Referral Form" which stated that other agencies would need to sign off on the permit for the proposed solar farm before the permit could be issued. *Id.* On September 1, 2021, Brown submitted his application to LACDRP. *Id.*

---

[1] Except as otherwise indicated, the following factual background is derived from Plaintiff Clinton Brown's Complaint. *See* ECF No. 1 ("Complaint" or "Compl."). The Court makes no finding on the truth of these allegations and includes them only as background.

[2] The Complaint does not contain numbered paragraphs and so the Court cites to page numbers within the complaint rather than paragraphs. Brown is reminded that, despite his *pro se* status, he is obligated to comply with the Federal Rules of Civil Procedure and the Local Rules. *See* C.D. Cal. L.R. 83-2.2.3 ("Any person appearing *pro se* is required to comply with these Local Rules, and with [the Federal Rules of Civil Procedure]"); *see also* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs").

[3] The named defendant in the caption is "Clark R. Taylor" while the Complaint references "Clark S. Taylor." Compl. at 3, 7. The Court assumes that these are the same person and will refer to this individual as "Taylor").

[4] The Agoura Property is at the center of another lawsuit by Brown against his alleged business partners in the proposed solar farm. *Clinton Brown v. Emil Assentato, et al*, Case No. 2:23-cv-02972-MEMF-KS.

[5] Brown's Complaint states that LACDBS directed "defendant" to submit a new application on August 31, 2021. *Id.* at 3. The Court assumes, in light of other facts discussed above, that this was a typo, and that Brown intended to allege that LACDBS directed Brown (not Taylor, the defendant in this action) to submit a new application on August 31, 2021. *See id.*

On October 12, 2022, Taylor, as Senior Planner for LACDRP, issued a letter, ECF No. 42 at 4 ("Rejection Letter") rejecting Brown's application for the proposed solar farm at the Agoura Property. *Id.* The grounds for denial stated in the Rejection Letter was that the Agoura Property is entirely within a designated Significant Ecological Area ("SEA"). *Id.* at 3–4. The Rejection Letter stated that Brown's application had been submitted on September 1, 2021. *Id.* at 4.

The parties dispute when the Agoura Property became part of a designated SEA. Brown alleges that this designation occurred June 3, 2021. *Id.* at 4. Taylor avers that the area has been an SEA for far longer and was an SEA at the time Brown purchased the Agoura Property. *See* ECF No. 71 at 4.

After the rejection on October 12, 2022, Brown continued working with other agencies to receive a permit for the proposed solar farm at the Agoura Property. Compl. at 4. Brown submitted to LACDBS an environmental review, prepared in June 2021, which showed that "with mitigations, the project would have less than significant impacts." *Id.* All agencies directed Brown back towards LACDRP. Brown incurred significant expense in pursuing this permit. *Id.* at 5. To date, Brown has not received approval for the proposed solar farm at the Agoura Property.

## II. PROCEDURAL HISTORY

Brown filed suit in this Court on December 17, 2022, against Taylor in Taylor's official capacity. *See* Compl. Brown brings one cause of action: that the denial of a permit for the proposed solar farm is a violation of the Takings Clause of the United States Constitution. *Id.* at 6. Brown seeks either compensation for the taking, an order directing Taylor to approve the permit, or other relief the Court deems just and proper. *Id.* at 7. Taylor filed an Answer on January 30, 2023. ECF No. 10 ("Answer").

Brown filed a Motion for Injunctive Relief on April 2, 2023. ECF No. 42 ("First Motion" or "1st Mot."). Brown's First Motion sought a "writ of injunction to inviolate" the purported constitutional violation. *Id.* at 2.

Brown filed a Request for Judicial Notice on June 22, 2023. ECF No. 59 ("Request" or "RJN"). The Request seeks judicial notice of a nuisance letter Brown received from the Los Angeles

County Department of Agricultural Commissioner ("LACDAC"), which warned Brown he might be charged $37,414 by the county for weed removal if he did not clear weeds at the Agoura Property.

Brown filed an additional Motion for Injunctive Relief on July 19, 2023. ECF No. 62. Brown explained that the items at ECF Nos. 42 and 59 (the First Motion and RJN described above) were each "requests for preliminary injunctive relief," and thus Brown described the new motion as the "Third" Motion for Injunctive Relief. *See id.* at 1. Brown also filed a proposed order that explained the relief Brown seeks. ECF No. 63. On July 21, 2023, Brown refiled the Third Motion with a corrected hearing date and no other changes. ECF No. 65 ("Third Motion" or "3rd Mot").

Taylor filed an Opposition to the Third Motion on August 31, 2023. ECF No. 71 ("Opposition" or "Opp'n"). Brown filed a Reply in support of the Third Motion on September 3, 2023. ECF No. 72 ("Reply").

The Court held a hearing on the Motions on September 21, 2023. *See* ECF No. 79.

## REQUEST FOR JUDICIAL NOTICE (ECF NO. 59)

For the reasons discussed below, Brown's Request for Judicial Notice will be DENIED, but the Court will nevertheless consider the nuisance letter Brown submitted as if it were an exhibit.

### I. APPLICABLE LAW

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may take judicial notice of "undisputed matters of public record," but generally may not take judicial notice of "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

### II. DICUSSION

Brown seeks judicial notice of a nuisance letter sent to him by LACDAC. *See* RJN at 3 ("Nuisance Letter"). The Nuisance Letter informed Brown that weeds and brush at the Agoura Property were a public nuisance and needed trimming. *See id.* The Nuisance Letter warned that if Brown did not "abate the nuisance" and bring the property "into compliance with the applicable fire

code," the County of Los Angeles would perform the work necessary to do so and would charge Brown for the cost of this work. *See id.* Per the Nuisance Letter, the work was estimated to cost $37,414. *See id.*

The Court finds that the Nuisance Letter is not appropriate for judicial notice. First, the Nuisance Letter's existence and the truth of its contexts are plainly not "generally known" within the Court's jurisdiction. *See* Fed. R. Evid. 201(b). So, to be judicially noticeable, the facts Brown seeks notice of would need to be capable of being "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See id.* This part of the rule is often applied to matters of public record. *See e.g.*, *Lee,* 250 F.3d at 690. This was the case in *United States v. 14.02 Acres*, which Brown cites in his RJN. *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 530 F.3d 883, 894 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 547 F.3d 943 (9th Cir. 2008) (finding no error in judicial notice of a Department of Energy Study that was a public record). Here, the Court sees no evidence that the Nuisance Letter Brown received is a public record.[6] The facts in the Nuisance Letter, and the Nuisance Letter's existence, cannot be easily verified from any source whose accuracy cannot be questioned. *See* Fed. R. Evid. 201(b). Accordingly, it does not meet the standards for judicial notice. The Request for Judicial Notice is DENIED.

However, the Court may still consider the Nuisance Letter through a different procedure. In filing for a preliminary injunction, parties are permitted to submit exhibits or other evidence. *See* Fed. R. Civ. P. 65(a)(2) (describing "evidence that is received" on a motion for preliminary injunction). If Brown had submitted the Nuisance Letter as an exhibit, the Court would consider the Nuisance Letter, but would not take judicial notice of it. Although Brown's RJN did not specifically

---

[6] The County of Los Angeles maintains a website (https://www.lafd.org/fire-prevention/brush/view_pacel) where a property owner may check the "Brush Clearance Status" of a property. However, the site appears to require non-public information sent by mail to check the status of a given property. *See View Your Parcel for Brush Clearance* Status, County of Los Angeles, https://www.lafd.org/fire-prevention/brush/view_pacel, last visited September 13, 2023 (instructing property owners to "use the APN and PIN located on the INDEX CARD provided with your Owner Notification" to check their property's status). So, even if Brown's letter could be found on this website, which the Court has been unable to confirm, the Letter would still not be a public record, because it would only be possible to find it using non-public information.

1  verify the authenticity of the Nuisance Letter (that is, Brown did not submit a sworn declaration
2  attesting to the Nuisance Letter's accuracy), the Court has no reason to question the authenticity of
3  the Nuisance Letter.  Under the circumstances, the Court will treat the Nuisance Letter as an exhibit
4  to Brown's various motions and will consider the letter as evidence in ruling on Brown's motions.
5  The Court's decision to consider the Nuisance Letter for this Order is without prejudice as to
6  Taylor's right to object to the Nuisance Letter's authenticity at a later stage if Taylor so desires.

**MOTIONS FOR PRELIMINARY INJUNCTION (ECF NO. 42, 62, 65)**

I.  **APPLICABLE LAW**

A. **Motion for Preliminary Injunction**

A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that [he] is likely to succeed on the merits, that [he] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [his] favor, and that an injunction is in the public interest." *Id.* at 20 ("*Winter* Test").

The Ninth Circuit also recognizes a "serious questions" variation of the *Winter* Test. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Under this variation, "a preliminary injunction is proper if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the balance of the hardships tips sharply in favor of plaintiff; and injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

A preliminary injunction is "an extraordinary and drastic remedy" and "should not be granted unless the movant, *by clear showing*, carries the burden of persuasion." *Lopez,* 680 F.3d at 1072 (9th Cir. 2012) (quotations omitted). At this stage, the Court is only determining whether Brown has met his burden for a preliminary injunction. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). Accordingly, as stated above, this Order is not a final decision on the merits of Brown's claims, nor is it a decision on the merits of the factual assertions either party made. *See id.*

/ / /

### B. The Takings Clause

"The Takings Clause, applicable to the States through the Fourteenth Amendment, provides that 'private property [shall not] be taken for public use, without just compensation.'" *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 637 (2023) (quoting U.S. Const., Amdt. 5). The Takings Clause is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978). Determining what constitutes a taking is "a problem of considerable difficulty," and there is no "set formula." *Id.* at 124.

In certain contexts, government restrictions on the use of property may constitute a taking, even if title to the property is not seized. *See Penn Cent.*, 438 U.S. at 124. Whether a restriction is a taking "depends largely upon the particular circumstances." *Id.* Several factors should be considered. *See id.* One relevant consideration is the "economic impact of the regulation," particularly "the extent to which the regulation has interfered with distinct investment-backed expectations." *Id.* But not all regulations that "adversely affect recognized economic values" qualify as takings. *Id.* If a regulation prohibits a certain a certain type of land use in order to promote "health, safety, morals, or general welfare," the regulation will generally not be a taking. *Id.* at 125. But a regulation that amounts to a "complete destruction of [a property owner's] rights" is generally a taking. *Id.* at 127–28. If a regulation "deprives land of all economically beneficial use," the regulation will be a taking unless the prohibited uses "were not part of [the property owner's] title to begin with." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027 (1992). Another relevant factor is the "character of the governmental action." *Penn Cent.*, 438 U.S. at 124. If the government action amounts to a "physical invasion" of the land, it may be a taking. *Id.* Finally, if the government "acqui[res] resources" or uses the land in some way that destroys value, this may also qualify as a taking. *Id.* at 128.

### II. DICUSSION

The First Motion and Third Motion appear to raise the same issues, so the Court will consider them as one. The Court understands Brown to be seeking an injunction that would require Taylor to grant the approval for the proposed solar farm at the Agoura Property and sign paperwork to that effect, and to deposit money to compensate for the alleged taking. *See* ECF No. 63; *see also*

Compl. at 7 (requesting in the Prayer for Relief that the Court "[o]rder Clark S. Taylor to sign the Agency Referral document based on the facts in this case"); 1st Mot. at 2 (at the conclusion of the First Motion, Brown requests a "writ of injunction to inviolate, *ad interim*, the Fifth Amendment violation."); 3rd Mot. at 5 (at the conclusion of the Third Motion, Brown writes "this Court is implored to provide a prompt hearing on this third notice of application for injunctive relief in the controversy at bar.").

In order to prevail and win a preliminary injunction, Brown must show: (1) "that [he] is likely to succeed on the merits;" (2) "that [he] is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "that the balance of equities tips in [his] favor;" (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 24. Alternatively, Brown may prevail by showing (1) that "there are serious questions going to the merits;" (2) there is a likelihood of irreparable injury to the plaintiff;" (3) "the balance of the hardships tips sharply in favor of plaintiff;" and (4) "injunction is in the public interest." *Lopez*, 680 F.3d at 1072.

### A. Brown has not shown a likelihood of prevailing on the merits nor has he raised serious questions going to the merits.

In order to show a likelihood of prevailing on the merits, Brown must show that Taylor's denial of a permit for Brown to build a solar farm on the Agoura Property likely constitutes a taking.[7] Brown has not met his burden of making the required showing.

At the outset, the Court notes that while the Rejection Letter states that the permit was denied because the proposed facility is not permitted in an SEA, Brown asserts that the County has taken the position that Brown "has no right to occupy *his own land with his own structure and that the*

---

[7] In the hearing, Brown pointed to the United States Supreme Court's recent decision in *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), which Brown argued supersedes *Lucas* and defines a new standard for takings claims. Brown argued that *Knick* holds that states may not limit property owner's rights, and that because *Lucas* discussed whether the restricted use was "part of [the property owner's] title to begin with," *Lucas* is no longer good law. *See Lucas*, 505 U.S. at 1027. The Court disagrees with Brown's reading of *Knick*—*Knick* held that a property owner may bring a constitutional takings claim without first bringing a claim through state law procedures, overruling *Williamson County. Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), but did not otherwise alter the Supreme Court's jurisprudence on what constitutes a taking. The Court understands that *Lucas* and *Penn Central* are still binding law, and will apply *Lucas* and *Penn Central* to determine whether the conduct alleged here constitutes a taking.

*government has an absolute right to prohibit any structure on his private property without Just Compensation.*" 3rd Mot. at 2. In the hearing, Taylor clarified the County's position on this issue—Taylor argued that while the County would have the right to prohibit the construction of any structure on the Agoura Property, it has not done so, and at present only prohibits Brown from constructing a solar farm. This is consistent with the position Taylor took in his Opposition. *See* Opp'n at 4 ("A December 21, 1987 recorded tract map reflects that the land that Plaintiff ultimately acquired was dedicated to the County, expressly giving the County 'the right to prohibit the construction of residential and/or commercial structures' upon the property."). In response to this, Brown argued that public records show that the County actually prohibits more than just solar farms. But nothing in the record before the Court supports this argument, and Brown has not alleged as such in his Complaint. *See* Compl. The Court will therefore only consider whether the denial of a permit for a solar farm constitutes a taking and will not consider whether denial of the right to construct all structures would be a taking.

        i. <u>Brown has not shown a likelihood of prevailing on a takings claim based upon the SEA designation.</u>

With respect to the reason stated in the Rejection Letter, Brown has not shown that he is likely to prevail on a takings claim on this basis. Prohibition of solar farms only on the Agoura Property would almost certainly not be a taking. Prohibiting solar farms while allowing some other uses would resemble a form of zoning, which is generally not considered a taking. *See Penn Cent.*, 438 U.S. at 125 (explaining that restrictions on specific uses of land in certain areas, including "zoning laws," are generally held not to be takings). Given the stated purpose in the cited Municipal Code, Brown has failed to meet his burden at this stage to show that he is likely to succeed with respect to whether the restriction was not intended to promote "health, safety, morals, or general welfare." *See id.*

It appears that Brown may also be contending that the SEA-based denial constitutes a taking because the SEA designation was made after he purchased the property. But besides his assertions as to the timing, Brown has not adduced any additional facts—supported by evidence—to show a likelihood of success. For instance, Brown has not adduced any facts or otherwise shown that he is

likely to succeed in proving that the SEA designation was made when he says it was made. Similarly, he has failed to present the Court with any authority tending to support his contention that making the SEA designation (which appears per the Rejection Letter to prohibit only a small number of specific uses, including solar farms) after his purchase would constitute a taking. To the contrary, it appears to the Court that such a designation—if otherwise lawful—would not constitute a taking. *See Penn Cent.*, 438 U.S. at 125 ("zoning laws"—which prohibit specific uses of land to promote general welfare—are "the classic example" of regulations that do not constitute a taking).

The Court also notes, as Taylor argued in the hearing, that documents Brown filed in separate litigation before the Court between Brown and his business partners suggests that Brown was aware when he purchased the Agoura Property that the Property would require "rezoning." *See Clinton Brown v. Emil Assentato, et al*, Case No. 2:23-cv-02972-MEMF-KS (C.D. Cal. 2023), ECF No. 27 at 13 (Operating Agreement states that "The Partnership's primary purpose is to provide working capital to complete the entitlement [and] rezoning of the [the Agoura Property]"). This further supports the Court's conclusion that Brown has failed to make the required showing, as it suggests that the County's decision to enforce (rather than change) pre-existing zoning should not be construed as interfering with any "distinct investment-backed expectations" of Brown's that solar farms would be permitted on the Agoura Property. *See Penn Cent.*, 438 U.S. at 124.

In sum, Brown has failed to meet his burden of showing that the County's prohibition on solar farms is likely to constitute a taking. The facts suggest that Brown knew that solar farms were prohibited when he purchased the property, but even if this were not the case, a prohibition on solar farms that does not prohibit other uses resembles zoning and is very unlikely to constitute a taking.

### B. The Court need not reach the other factors.

Because this Court finds that Brown has failed to show a likelihood of prevailing on the merits, nor has he raised "serious questions" as to the merits, the Court need not reach the other

factors.[8] *See Lopez*, 680 F.3d at 1072. Brown failed to show irreparable harm,[9] and failed to show the balance of equities tips in his favor. *See id.* The Court need not reach the final factor.

Brown may yet prevail in his claim that what occurred constituted a taking. But Brown has failed to make the "clear showing" required for a preliminary injunction. *Lopez*, 680 F.3d at 1072. The Motions will be DENIED.

## CONCLUSION

For the reasons stated herein, Brown's Request for Judicial Notice (ECF No. 59) is DENIED, and the Motions for a Preliminary Injunction (ECF Nos. 42, 62, 65) are DENIED.

IT IS SO ORDERED.

Dated: December 5, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[8] The Court notes, however, that the harms that Brown points to do not appear to be irreparable as "monetary injury is not normally considered irreparable." *Los Angeles Mem'l Coliseum Comm'n*, 634 F.2d at 1202. Without diminishing the harm that Brown alleges will occur, if Brown loses money because construction of the solar farm is delayed, or even if he faces foreclosure or taxes, it appears that money will compensate him adequately for his injuries once the litigation is ended. *See id.* The same is true of any monetary harm Brown may suffer from the County charging him for brush clearance. *See* RJN. Brown has not submitted any evidence suggesting otherwise. Although Brown mentioned possible bankruptcy, he has not submitted any evidence indicating that he is on the verge of insolvency, or explained how a preliminary injunction will rescue him from whatever irreparable harm might come from bankruptcy. It therefore appears that the harms Brown faces are not irreparable, and that a monetary award at the conclusion of litigation would compensate for them. Were the Court to reach this factor, therefore, it would likely find against Brown on this factor.

[9] In the hearing, Brown argued that the loss of use of his property constitutes irreparable harm. This does not appear correct, for the reasons described above—the temporary loss of use of property would very likely constitute monetary injury that could be later compensated with damages. *See Los Angeles Mem'l Coliseum Comm'n*, 634 F.2d at 1202.

11