

SACHI A. HAMAI
Chief Executive Officer

## County of Los Angeles
# CHIEF EXECUTIVE OFFICE
Kenneth Hahn Hall of Administration
500 West Temple Street, Room 713, Los Angeles, California 90012
(213) 974-1101
http://ceo.lacounty.gov

*"To Enrich Lives Through Effective And Caring Service"*

Board of Supervisors
HILDA L. SOLIS
First District

MARK RIDLEY-THOMAS
Second District

SHEILA KUEHL
Third District

JANICE HAHN
Fourth District

KATHRYN BARGER
Fifth District

November 07, 2018

The Honorable Board of Supervisors
County of Los Angeles
383 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, California 90012

Dear Supervisors:

# ADOPTED
BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES

13   November 7, 2018

CELIA ZAVALA
EXECUTIVE OFFICER

**RECOMMENDATION TO ACCEPT ARBITRATOR'S DECISION REGARDING THE PROPOSED ANNEXATION OF TERRITORY INTO THE CITY OF CALABASAS, ADOPT A JOINT RESOLUTION WITH THE CITY OF CALABASAS TO EXCHANGE PROPERTY TAX REVENUES AND TO APPROVE AN AGREEMENT TO SHARE SALES TAX REVENUES, AND TO SUBMIT COMMENTS AND CONCERNS TO THE LOCAL AGENCY FORMATION COMMISSION FOR THE COUNTY OF LOS ANGELES (ANNEXATION NO. 2014-04) (THIRD DISTRICT) (4 VOTES)**

## SUBJECT

This is to recommend the Board accept the offer to share sales and property tax revenues proposed by the City of Calabasas (City), and recommended by an arbitrator, to resolve a dispute over the City's proposed annexation of territory, and to proceed with the arbitrator's recommendation by: 1) approving and adopting a joint resolution to exchange property taxes and approving a sales tax sharing agreement with the City; and 2) submitting comments and concerns regarding the City's proposed annexation to the Local Agency Formation Commission for the County of Los Angeles (LAFCO).

## IT IS RECOMMENDED THAT THE BOARD:

1.  Accept the City's offer to share sales and property tax revenues with the County of Los Angeles (County), as recommended by an arbitrator, by adopting and directing the Chair to sign a Joint Resolution that:  a) provides for an exchange of property tax revenues, and b) approves an Agreement Between the City and the County for Sharing City Sales Tax Revenues; and

2.  Direct the Chief Executive Officer (CEO) and County Counsel to submit comments and concerns regarding the City's proposed annexation to LAFCO.

The Honorable Board of Supervisors
11/7/2018
Page 2

## PURPOSE/JUSTIFICATION OF RECOMMENDED ACTION

In 2014, the City applied to LAFCO to annex a small portion of unincorporated territory (Annexation Area) located between the cities of Agoura Hills and Calabasas.  In Fiscal Year 2014-15, the annexation area generated approximately $485,000 in sales tax revenue for the County.

Before LAFCO may proceed with the required hearings on the proposed annexation, State law requires the Board and the governing body of the City to negotiate and agree to a resolution that includes, but is not limited to, an exchange of property tax revenue between the County and City. After the City applied to annex the area in 2014, the County and the City commenced negotiations. After such negotiations did not result in an agreement, the City filed a lawsuit against the County to force the annexation to proceed.  However, the Court stayed the City's litigation and ordered the County and City to follow a dispute resolution process required by law before proceeding with litigation.

The dispute resolution process included conducting an analysis of the annexation's fiscal impact, mediation, and arbitration.  After the conclusion of arbitration, the County and the City each proposed "last and best" offers to the arbitrator, who was required to select one to recommend to the Board and the Calabasas City Council (City Council).  In this case, the arbitrator selected the City's offer (Attachment 1).

The City's offer calls for the City to share with the County a declining percentage of the approximately $485,000 in annual sales tax revenues generated in the Annexation Area over a 10-year period.  After the 10-year period, the sales tax sharing will cease and the City will retain all sales tax revenues.  The offer also requires the County to transfer, indefinitely, a base of $7,438 in property tax revenues to the City, along with the revenues and service obligations associated with three special districts, including the LA County Library.

The City Council approved the offer, as recommended by the arbitrator, on August 8, 2018.  It is now the Board's option to either accept or reject the City's offer.  The Board may approve the arbitrator's recommendation by adopting the Joint Resolution of the County of Los Angeles and the City of Calabasas for the Negotiated Exchange of Property Tax Revenues Related to Annexation No. 2014-04 (Joint Resolution) (Attachment 2).  Adoption of the Joint Resolution will:

1.  Approve an exchange of property taxes with the City; and

2.  Approve, and authorize the Chair to sign, the Agreement Between the City and the County for Sharing City Sales Tax Revenues (Sales Tax Sharing Agreement) (Attachment 3).

If the above actions are taken, LAFCO may then proceed with hearings to determine whether to approve the annexation.  Public statements by City officials indicate the annexation was intended, at least in part, to acquire the sales tax revenues generated from the Annexation Area.  Whether the annexation process is appropriate for a city to use to capture sales tax revenue is a policy issue for LAFCO to consider. Recommendation Number 2 will authorize the CEO and County Counsel to submit comments and concerns to LAFCO over the City's use of the annexation process to acquire sales tax revenues.

If LAFCO approves the City's annexation, then the terms of the City's offer, including the Joint Resolution and Sales Tax Sharing Agreement, will go into effect.  If LAFCO denies the City's

The Honorable Board of Supervisors
11/7/2018
Page 3

annexation, the annexation process will be terminated, and the Joint Resolution and Sales Tax Sharing Agreement will be void.

## FISCAL IMPACT/FINANCING

If the Board adopts the Joint Resolution (Recommendation Number 1) and LAFCO approves the City's annexation, the area will then fall under the City's jurisdiction and the City will begin receiving sales tax revenue from the area.  Under the terms of the Sales Tax Sharing Agreement, the City will transfer to the County, commencing with the fiscal year after the effective date of the annexation, 50 percent of the sales tax revenues generated from the area in the first year, with the County's share declining 5 percent per year thereafter for ten years until the County receives no sales tax revenues. Assuming the same revenue is generated for the ten years after the Sales Tax Sharing Agreement is in effect, the County's sales tax revenue from the area will decline as follows:

| YEAR | COUNTY REVENUE FROM ANNEXATION AREA |
|------|-------------------------------------|
| 0 | $485,000 (revenue before annexation) |
| 1 | $242,500 |
| 2 | $218,250 |
| 3 | $194,000 |
| 4 | $169,750 |
| 5 | $145,500 |
| 6 | $121,250 |
| 7 | $97,000 |
| 8 | $72,750 |
| 9 | $48,500 |
| 10 | $24,250 |
| 11 | $0.00 |

The County will also transfer $7,438 in base property tax revenue from the County General Fund to the City, and will allocate a share of the annual property tax increment in each of the affected Tax Rate Areas from the County to the City, as provided for in the Joint Resolution.  In addition, the County will transfer $3,751 in base property tax from the LA County Library to the City of Calabasas Library, and will allocate a share of the annual property tax increment in each of the affected Tax Rate Areas from the LA County Library to the City of Calabasas Library.  These transfers would take effect in the fiscal year following the filing of the statement of boundary change for Annexation No. 2014-04 with the California State Board of Equalization.

The County also has a Landscape and Lighting Act District (LLAD) in the area with an assessment of approximately $2,200 per parcel.  The assessment generates around $11,000 per year, and has a fund balance of approximately $134,000.  Upon approval of the annexation by LAFCO, the assessment revenue and any remaining fund balance will be transferred to the City, along with responsibilities for providing landscape and lighting service to the area, as provided for in the Joint Resolution.

The City of Agoura Hills, which is immediately adjacent to the annexation area, opposes the City's annexation.  In a letter submitted to LAFCO, Agoura Hills expressed concern that the City may not appropriately maintain a hillside located within the annexation area that has previously suffered from landslides.  The City of Agoura Hills also indicated a preference that the area remain unincorporated and under the County's jurisdiction.  A copy of the City of Agoura Hills' objection letter to LAFCO is attached as Attachment 4.

The Honorable Board of Supervisors
11/7/2018
Page 4

## FACTS AND PROVISIONS/LEGAL REQUIREMENTS

Pursuant to Part 3, Division 3, Title 5 of the California Government Code, commencing with Section 56000, the City adopted a resolution and filed an application with LAFCO in 2014 to initiate proceedings for annexation of the Annexation Area to the City.  The territory proposed for annexation covers approximately 57 acres of uninhabited territory that will be annexed to the City, generally located along Agoura Road, between Liberty Canyon Road and Malibu Hills Road.  The Annexation Area is composed of five parcels that include commercial/industrial uses, open space and roads right-of-way, and does not contain any residential areas.

Section 99 of the Revenue and Taxation Code (R&T Code) requires that prior to the effective date of any jurisdictional change, the governing body of all agencies whose service area and service responsibilities will be altered by such change must negotiate a reallocation of property tax revenue between the affected agencies, and approve and accept such reallocation by resolution.  In the event the affected agencies do not reach an agreement over the reallocation of property tax revenues, Section 99(e) of the R&T Code provides for affected agencies to follow a dispute resolution process, which begins with performing a comprehensive analysis of the fiscal impact of the annexation, then includes mediation and arbitration, and finally concludes with each agency presenting a "last and best" offer to resolve the impasse.  The arbitrator then selects one of the offers to recommend to the agencies' governing bodies, and the governing bodies must then approve or reject the arbitrator's recommendation.

To approve an agreement to share sales taxes, a resolution of the County and City is required pursuant to Article 13, Section 29(b) of the California Constitution and Government Code sections 55700-55707.  These laws also require that a sales tax sharing agreement be approved by a two-thirds vote of the governing body of each jurisdiction that is a party to the contract.  The City Council adopted the Joint Resolution and Sales Tax Sharing Agreement on August 8, 2018.

Approval of the Joint Resolution will allow LAFCO to proceed with scheduling the required public hearings on the proposed annexation.  LAFCO will subsequently take action to approve, approve with changes, or disapprove the proposal for annexation.  If the Board rejects the arbitrator's recommendation, it must do so at a public hearing with findings of fact supporting the decision to reject the arbitrator's decision.

## ENVIRONMENTAL DOCUMENTATION

The proposed Joint Resolution and Sales Tax Sharing Agreement is not a project pursuant to the California Environmental Quality Act (CEQA) because it is an activity that is excluded from the definition of a project by Section 15378(b) of the State CEQA Guidelines.  This proposed action is an administrative activity of the government, which will not result in direct, or indirect changes to the environment.

## IMPACT ON CURRENT SERVICES (OR PROJECTS)

Upon the effective date of the annexation, the City will become responsible for providing municipal services to the area within its jurisdiction, as well as landscape and lighting service previously provided by the LLAD.

The Honorable Board of Supervisors
11/7/2018
Page 5

## CONCLUSION

At such time as the recommended actions are approved by the Board, please return one approved copy of the letter and four signed originals of the Joint Resolution and Sales Tax Sharing Agreement to LAFCO, one approved copy of this letter and a copy of the Joint Resolution and Sales Tax Sharing Agreement to the CEO, one copy of the approved letter and a copy of the Joint Resolution to the Auditor-Controller, Tax Division, and one copy of this letter to the County Counsel, Government Services Division.

Respectfully submitted,

SACHI A. HAMAI

Chief Executive Officer

SAH:JJ
DSB:acn

Enclosures

c:   Executive Office, Board of Supervisors
     County Counsel
     Auditor Controller

# ATTACHMENT 1

## ADVISORY RECOMMENDATION AFTER ARBITRATION PURSUANT TO CALIFORNIA REVENUE & TAXATION CODE SECTION 99(e)(1)(C)

## JAMS ARBITRATION CASE REFERENCE NO. 1220056278

**City of Calabasas**
      **Petitioner/Plaintiff,**

    vs.

**Sachi Hamai, in her official capacity as
Interim Chief Executive Officer for the
County of Los Angeles; County of Los
Angeles,**
      **Respondents/Defendants.**

---

## ADVISORY RECOMMENDATION AFTER ARBITRATION
## PURSUANT TO CALIFORNIA REVENUE & TAXATION CODE SECTION 99(e)(1)(C)

**Parties and Counsel:**  The parties to this arbitration are identified in the caption and are represented as follows:

Holly O. Whatley Esq.
Ms. Megan Knize
Colantuono, Highsmith & Whatley, PC
790 E. Colorado Blvd., Suite 850
Pasadena, CA    91101-2109
Tel: 213-542-5700

Counsel for City of Calabasas

Judy Whitehurst Esq.
Michael S. Buennagel, Esq.
County of Los Angeles
648 Kenneth Hahn Hall of Administration
500 W. Temple Street
Los Angeles, CA    90012-
Tel: 213-974-1940

Counsel for County of Los Angeles and Sachi Hamai

Stephen P. Wiman Esq.
Lloyd W. Pellman Esq.
Nossaman LLP
777 S. Figueroa St., 34th Floor
Los Angeles, CA    90017
Tel: 213-612-7800

Counsel for County of Los Angeles and Sachi Hamai

1

**Arbitrator**:

> Hon. Richard J. McAdams (Ret.)
> 160 West Santa Clara Street, Suite 1600
> San Jose, CA 95113
> 408-346-0737      408-295-5267(fax)

**Date of Recommendation**:

> September 19, 2017

THE UNDERSIGNED ARBITRATOR, having been duly appointed by JAMS and having fully considered the allegations, submissions, and evidence of the parties, the written and oral arguments of counsel and the last best offer of each party, finds, concludes and issues this Advisory Recommendation as follows:

**I.**      **Introduction and Procedural Statement**

**(a)**      **Procedural History**

> *(1)  The Agreement to Arbitrate*

In May 2017, in accordance with the order of the Superior Court of the County of Los Angeles in *City of Calabasas v. Sachi Hamai, et al.* (Case No. BS157268), the parties stipulated to arbitration under California Revenue and Taxation Code section 99(e) and submitted their Joint Claim re: Non-Binding Statutory Arbitration to JAMS.

> *(2) Pleadings and Arbitrability*

On September 2, 2015, the City of Calabasas (City) filed a Petition for Writ of Mandate and Related Relief in the above-described matter against Sachi Hamai, in her official capacity as Interim Chief Executive Officer for the County of Los Angeles, and the County of Los Angeles (hereafter collectively, County) seeking court intervention in relation to the statutory tax revenue sharing agreement process arising from a proposed City annexation of property within the County.   The County filed a general demurrer and

motion to compel mediation and advisory arbitration pursuant to Revenue and Taxation Code section 99 and on December 31, 2015, the court granted the motion to compel and sustained the demurrer with leave to amend following exhaustion of the alternative dispute resolution proceedings.

An Appointment of Arbitrator letter was issued by JAMS on June 5, 2017, appointing this Arbitrator.

A Preliminary Conference was held on July 7, 2017 and the claims were determined to be arbitrable under the advisory arbitration process set forth in Revenue and Taxation Code section 99.

    *(3)  Proceedings Before JAMS*

At the Preliminary Conference, a simultaneous briefing schedule was established.   The parties timely filed and served their opening briefs, responses and replies.

Oral argument was heard on September 12, 2017, in a telephonic conference and the matter was submitted for the advisory recommendation.

**(b)  Format of the Advisory Recommendation**

The parties stipulated that, in the interest of economy, it was unnecessary for the arbitrator to recite a detailed statement of the proposed annexation, the history of the negotiations and the issues raised by the two entities in their attempt to resolve any dispute through negotiation and mediation.

**II.       The Respective Last Best Offers**

The last best offer of each party as required under Section 99 was submitted in their individual reply briefs.   The descriptions of the offers below are arbitrator's summaries and are not intended to be a substitute for the actual offers formally submitted by the parties in their respective reply briefs.

3

### (a)   The City of Calabasas

#### (1)   Property tax

Without waiving its argument that "the law does not permit the County to demand the City acquiesce to the County's demand to share sales tax before the County will negotiate a property tax sharing agreement," the City is prepared to accept as transfers from the County the following annual property tax-related revenue "identified in Table 2 of the consultant's [EPS] Report:

> County Property Tax: $7,438
> Public Library Special Fund: $3,905
> Lighting District #1687: $690
> LLAD #32: $11,000"

The offer further sets forth the specifics of the transfers to the library fund, the Lighting District No. 1687 and LLAD No. 32 and any "then-existing' fund balance for LLAD No. 32 (estimated to be $183,000) and concludes that the total annual property tax-related revenue transfer would be $23,033 plus the "one-time transfer" of LLAD No. 32 funds (with the City's "caveat" concerning this figure and what the City understands could be the "actual assessment and fund balance...for LLAD No. 32 at the time of annexation.").

#### (2)   Sales Tax

Again without waiving its argument as noted above, the City's offer proposes a sharing of the actual sales tax revenues collected in the annexed area for a ten year period, "beginning with a 50% split in year one" and then declining 5% each year from City to County thereafter.

### (b)   The County of Los Angeles

#### (1) Property Tax

Without waiving any opposition to the annexation, the County offers that the City can receive

"all property taxes from the [annexed] Property."

  *(2) Sales Tax*

   The County's offer proposes that the County would "retain sales tax attributable to Spirent [the major sales tax generating business entity within the proposed annexation] (and any [legal] successor business entity)…up to $500,000 so long as Spirent…occupies the building on the Property." Under this proposal, the City would be "entitled to any increase in annual sales taxes" over $500,000.

**III.  Arbitrator's Recommendation**

   Pursuant to Revenue and Taxation Code section 99(e)(1)(C), Arbitrator recommends the proposal by the City to the governing bodies of the City and the County:

   1. The City's offer presents a balanced sharing of tax revenues spread out over a time period that allows substantial time for any necessary adjustments and fiscal planning as a result of the annexation.

   2. The anticipated sales tax revenue derived from Spirent is miniscule in relation to the County's overall budget.

   3. The County has presented no evidence that the loss of anticipated sales tax revenue would have a significant impact on the County's ability to provide services or would "contradict orderly growth and development - two of the factors in the County's own policies on evaluating proposed annexations (Los Angeles County Policy, section 3.095).

   4. The County provides no justification for setting a $500,000 level for sharing sales tax revenue for an unlimited time period.

   5. The City's proposal acknowledges that Spirent has been located in both the City and County over the past years.

   It should be noted that the parties agreed that in light of the last best offers, the arbitrator need not incorporate into this recommendation any analysis, findings or conclusions concerning the issue of whether sales taxes can be the subject of the negotiations under Section 99.

IV.      Conclusion

Arbitrator recommends the proposal by the City to the governing bodies of the City and the County.

This recommendation addresses all claims between the parties submitted to Arbitrator in this proceeding.

Dated: _Sept. 19, 2017_.

Hon. Richard J. McAdams (Ret.)
Arbitrator

6

**ATTACHMENT 2**

**JOINT RESOLUTION NO. 2018-1602
EXECUTED BY THE CITY OF CALABASAS**

**RESOLUTION NO. 2018-1602**

**JOINT RESOLUTION OF THE BOARD OF SUPERVISORS OF THE COUNTY OF LOS ANGELES AND THE CITY COUNCIL OF THE CITY OF CALABASAS, APPROVING THE NEGOTIATED EXCHANGE OF PROPERTY TAX REVENUE RESULTING FROM THE ANNEXATION OF TERRITORY KNOWN AS ANNEXATION 2014-04 (WEST AGOURA ROAD) TO THE CITY OF CALABASAS, WITHDRAWAL FROM COUNTY LIGHTING MAINTENANCE DISTRICT 1687, TRANSFER OF JURISDICTION OVER AND ACCEPTING THE NEGOTIATED EXCHANGE OF BENEFIT ASSESSMENT PROCEEDS FOR COUNTY LIGHTING AND LANDSCAPING ACT DISTRICT #2-32 FROM THE COUNTY TO THE CITY, DETACHMENT FROM COUNTY ROAD DISTRICT NO. 3, WITHDRAWAL FROM THE COUNTY PUBLIC LIBRARY SYSTEM, AND APPROVING AN AGREEMENT FOR SHARING CITY SALES TAX REVENUES PURSUANT TO ANNEXATION 2014-04.**

**WHEREAS**, the City of Calabasas initiated proceedings with the Local Agency Formation Commission for Los Angeles County (LAFCO) for the annexation of territory to the City of Calabasas (Annexation 2014-04); and

**WHEREAS**, the area proposed for annexation under Annexation 2014-04 consists of approximately 57 acres of unincorporated territory known as "West Agoura Road" generally located along Agoura Road between Liberty Canyon Road and Malibu Hills Road (Annexation Area); and

**WHEREAS,** the Annexation Area is located within the boundaries of County Lighting Maintenance District 1687; and

**WHEREAS,** pursuant to Section 5853 of the California Streets and Highway Code, upon annexation, the City and County consent to the withdrawal of the Annexation Area from the County Lighting Maintenance District 1687; and

**WHEREAS,** the Annexation Area is also located within Zone 32 of County Lighting and Landscaping Act District (LLAD) #2 (LLAD #2-32); and

**WHEREAS,** pursuant to Section 22613 of the California Streets and Highways Code, upon annexation, the City and County consent to the transfer of jurisdiction over the LLAD #2-32 from the County to the City; and

**WHEREAS,** the Annexation Area is located within County Road District No. 3; and

**WHEREAS,** upon annexation, the City and County consent to the detachment of the Annexation Area from the County Road District No. 3; and

**WHEREAS,** the Annexation Area is part of the County Public Library system; and

**WHEREAS,** upon annexation, the City and County consent to the withdrawal of the Annexation Area from the County Public Library system; and

**WHEREAS,** pursuant to Section 99 of the California Revenue and Taxation Code (Section 99), for specified jurisdictional changes, the governing bodies of affected agencies shall negotiate and determine the amount of property tax revenue to be exchanged between the affected agencies; and

**WHEREAS**, on September 2, 2015, the City initiated litigation by filing a petition for writ of mandate and related relief (petition) against the County in Los Angeles County Superior Court in the case *City of Calabasas v. Sachi Hamai, et al.*, Case Number BS157268;

**WHEREAS**, the City, in its petition, seeks a writ ordering the County to negotiate the property tax revenue sharing agreement in good faith and to refrain from demanding a sales tax sharing agreement as a condition of negotiating a property tax sharing agreement; the City also seeks a judicial declaration that sharing sales tax revenue cannot be a good faith requirement for negotiations of a property tax revenue sharing agreement and that the County acted in excess of their authority by making demand unrelated to a property tax revenue sharing agreement under Section 99; and

**WHEREAS**, the County demurred to the City's petition and moved to compel the City to follow the dispute resolution procedure required for annexations by subdivision (e) of Section 99; and

**WHEREAS**, on December 31, 2015, the court granted the County's motion to compel, sustained the demurrer with leave to amend, and stayed the City's litigation pending exhaustion of the dispute resolution procedure mandated in Section 99 for resolving annexation disputes; and

**WHEREAS**, on September 19, 2017, in accordance with the arbitrator's duties set forth in Section 99, the arbitrator issued a decision wherein he selected the City's "last and best" offer to recommend to the governing bodies of the County and City to resolve the Parties' litigation; and

R2018-1602

**WHEREAS**, the arbitrator's recommendation provides for the City and County to share sales and property tax revenues generated from the annexation area, upon approval of the annexation application by LAFCO; and

**WHEREAS**, the Parties seek to implement the arbitrator's recommendation to share the property tax and sales tax revenues generated, if any, from the Annexation Area; and

**WHEREAS,** the Board of Supervisors of the County of Los Angeles, as governing body of the County and the County of Los Angeles Road Maintenance District No. 3, County Lighting Maintenance District 1687, County LLAD #2-32, and the County Public Library, and the City Council of the City of Calabasas, have determined the amount of property tax revenue to be exchanged between their respective agencies as a result of Annexation 2014-04, detachment from County Road District No. 3, withdrawal from County Lighting Maintenance District 1687, transfer of jurisdiction over County LLAD #2-32 from the County to the City, and withdrawal from the County Public Library system, is as set forth below:

**NOW, THEREFORE, BE IT RESOLVED AS FOLLOWS:**

1. The City of Calabasas agrees that it will bear the full responsibility for the street lighting and lighting maintenance services in the proposed annexation area upon the withdrawal of the annexation territory from County Lighting Maintenance District 1687 and transfer of jurisdiction over County LLAD #2-32 to the City.

2. The negotiated exchange of property tax revenue between the County of Los Angeles and the City of Calabasas, resulting from Annexation 2014-04 is approved and accepted.

3. For the fiscal year commencing in the year after the filing of the statement of boundary change for Annexation 2014-04 with the Board of Equalization pursuant to Government Code sections 54902 and 57204, the tax-sharing ratio received by County Lighting Maintenance District 1687 attributable to Annexation 2014-04 in the Annexation Area shall be reduced to zero.

4. For County LLAD #2-32, the City and County agree:

(a) To transfer jurisdiction over County LLAD #2-32 from the County to the City effective upon on the first day of the fiscal year following the filing of the statement of boundary change for Annexation 2014-04 with the Board of Equalization pursuant to Government Code sections 54902 and 57204 ("LLAD #2-32 Transfer Effective Date");

3

(b) During the fiscal years prior to the LLAD #2-32 Transfer Effective Date, the County shall continue to levy, receive, and/or expend all assessment proceeds relating to LLAD #2-32; and

(c) Upon the transfer of LLAD #2-32, the County shall provide to the City all assessment proceeds relating to LLAD #2-32 levied, received, but unspent ("LLAD #2-32 Fund Balance") pursuant to the following schedule:

(i) On or about 90 days after the LLAD #2-32 Transfer Effective Date, the County shall transfer to the City sixty (60) percent of the amount of the LLAD #2-32 Fund Balance at that time.  This transfer shall constitute the first installment of the funds in the LLAD #2-32 Fund Balance.

(ii) On or about one hundred eighty (180) days after the payment of the first installment of the LLAD #2-32 Fund Balance, the County shall transfer all remaining funds in the LLAD #2-32 Fund Balance.  This transfer shall constitute the second installment of funds in the LLAD #2-32 Fund Balance and shall include all prior unspent funds, including any assessment proceeds which have been received to date, less any invoices to be paid by the County from these funds and less LLAD #2-32 pro-rata share of administrative expenses, if any.  Copies of any invoices paid by the County from these funds shall be provided to the City upon request.  The County and City may amend the amount of payment and/or the date of payment pursuant to written agreement.

(iii) If for any reason after payment of the second installment of the LLAD #2-32 Fund Balance there are any remaining assessment proceeds or other funds in the LLAD #2-32 Fund Balance, the County shall forward those funds to the City within sixty (60) days of the County's knowledge of those remaining assessment proceeds or other funds.

5.     For the fiscal year commencing in the year after the filing of the statement of boundary change for Annexation 2014-04 with the Board of Equalization pursuant to Government Code sections 54902 and 57204, property tax revenue received by County Road District No. 3, attributable to Annexation 2014-04, shall be transferred to the County of Los Angeles, and the County Road District No. 3 share in the Annexation Area shall be reduced to zero.

6.     For the fiscal year commencing in the year after the filing of the statement of boundary change for Annexation 2014-04 with the Board of Equalization pursuant to Government Code sections 54902 and 57204, a base of Three Thousand, Seven Hundred and Fifty-One ($3,751) in property tax revenue attributable to the County Public Library within the Annexation Area shall be transferred to the City of Calabasas Library Fund 28, and the County Public Library's share in the Annexation Area shall be reduced to zero.

R2018-1602

7. For the fiscal year commencing in the year after the filing of the statement of boundary change for Annexation 2014-04 with the Board of Equalization pursuant to Government Code sections 54902 and 57204, the following ratios of annual property tax increment attributable to the County Public Library for each respective Tax Rate Area within the Annexation Area shall be transferred from the County to the City as shown below and the County's share shall be reduced accordingly:

| Tax Rate Area | Annual Tax Increment Ratio Transfer to the City |
| --- | --- |
| 01756 | 0.024229894 |
| 04971 | 0.023953544 |
| 15776 | 0.024229894 |

8. For the fiscal year commencing in the year after the filing of the statement of boundary change for Annexation 2014-04 with the Board of Equalization pursuant to Government Code sections 54902 and 57204, Seven Thousand and Four Hundred, Thirty-Eight Dollars ($7,438) in base property tax revenue shall be transferred from the County of Los Angeles to the City of Calabasas.

9. For the fiscal year commencing in the year after the filing of the statement of boundary change for Annexation 2014-04 with the Board of Equalization pursuant to Government Code sections 54902 and 57204, the following ratios of annual property tax increment attributable to each respective Tax Rate Area within the Annexation Area shall be transferred from the County to the City as shown below and the County's share shall be reduced accordingly:

| Tax Rate Area | Annual Tax Increment Ratio Transfer to the City |
| --- | --- |
| 01756 | 0.046924162 |
| 04971 | 0.058815960 |
| 15776 | 0.046924162 |

10. If any provision or any portion of this joint resolution or the Agreement Between the City of Calabasas and the County of Los Angeles for Sharing City Sales Tax Revenues Pursuant to Annexation 2014-04 ("Tax Sharing Agreement") are held to be unconstitutional, illegal, invalid or unenforceable, the remainder of this joint resolution and the Tax Sharing Agreement shall be void and unenforceable unless the Parties mutually agree in writing that such provisions shall remain effective and enforceable.

11. The City Council of the City of Calabasas and the Board of Supervisors of the County of Los Angeles, as authorized by article 13, Section 29(b) of the California Constitution and Government Code sections 55700-55707, hereby approve the attached "Agreement Between the City of Calabasas

5

and the County of Los Angeles for Sharing City Sales Tax Revenues Pursuant to Annexation 2014-04," and authorize and direct the Mayor of the City and Chair of the County Board, respectfully, to sign it in substantially the same form as attached hereto as Exhibit A.

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

6

R2018-1602

**PASSED, APPROVED AND ADOPTED this 8th day of August, 2018.**

Fred Gaines, Mayor
City of Calabasas, California


ATTEST:                                    APPROVED AS TO FORM:


Maricela Hernandez, MMC                    Scott H. Howard
City Clerk                                 Colantuono Highsmith & Whatley
City of Calabasas                          City Attorney

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

(Signed in Counterpart)

7

R2018-1602

The foregoing resolution was on the _7th_ day of _November_, 2018, adopted by the Board of Supervisors of the County of Los Angeles and ex officio the governing body of all other special assessment and taxing districts, agencies and authorities for which said Board so acts.



CELIA ZAVALA, Executive Officer
Clerk of the Board of Supervisors
of the County of Los Angeles


By _LaChelle Smitherman_
          Deputy

APPROVED AS TO FORM:
MARY C. WICKHAM
County Counsel


BY _____
          Deputy

8

R2018-1602

**ATTACHMENT 3**

**SALES TAX REVENUE SHARING AGREEMENT
EXECUTED BY THE CITY OF CALABASAS**

**AGREEMENT BETWEEN THE CITY OF CALABASAS AND THE COUNTY OF LOS ANGELES FOR SHARING CITY SALES TAX REVENUES PURSUANT TO ANNEXATION 2014-04**

This sales tax sharing agreement ("Agreement") is entered into between the City of Calabasas ("City"), and the County of Los Angeles ("County"), and effective on the date set forth herein.  The City and the County are sometimes individually referred to in this Agreement as "City" or "County" or "Party" and collectively as "Parties."

**RECITALS**

**Whereas,** on March 14, 2014, the City submitted annexation application number 2014-04 ("annexation application") to the Local Agency Formation Commission for Los Angeles County ("LAFCO") pursuant to the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (Division 3, Title 5 commencing with Section 5600, of the California Government Code);

**Whereas,** the area the City applied to annex ("annexation area") consists of approximately 57 acres of unincorporated territory generally located along Agoura Road, between Liberty Canyon Road and Malibu Hills Road, in the unincorporated County area, as described in City Resolution No. 2014-1418, attached hereto as Exhibit "A", which is the amended resolution initiating the annexation application;

**Whereas**, the annexation area is composed of five parcels that include commercial/industrial uses, open space and roads right-of-way, and does not contain any residential areas;

**Whereas**, pursuant to California Revenue and Taxation Code section 99 ("Section 99"), the parties commenced negotiations for a property tax transfer in connection with the annexation application;

**Whereas**, on September 2, 2015, the City initiated litigation by filing a petition for writ of mandate and related relief ("petition") against the County (also named is Sachi Hamai, in her official capacity as the County's Chief Executive Officer) in Los Angeles County Superior Court in the case *City of Calabasas v. Sachi Hamai, et al.*, Case Number BS157268;

**Whereas**, the City, in its petition, seeks a writ ordering the County to negotiate the property tax revenue sharing agreement in good faith and to refrain from demanding a sales tax sharing agreement as a condition of negotiating a property tax sharing agreement; the City also seeks a judicial declaration that sharing sales tax revenue cannot be a good faith requirement for negotiations of a property tax revenue sharing agreement and that the County acted in excess of their authority by making demand unrelated to a property tax revenue sharing agreement under Section 99;

**Whereas**, the County demurred to the City's petition and moved to compel the City to follow the dispute resolution procedure required for annexations by subdivision (e) of Section 99;

**Whereas**, on December 31, 2015, the court granted the County's motion to compel, sustained the demurrer with leave to amend, and stayed the City's litigation pending exhaustion of the dispute resolution procedure mandated in Section 99 for resolving annexation disputes;

**Whereas**, on September 19, 2017, in accordance with the arbitrator's duties set forth in Section 99, the arbitrator issued a decision wherein he selected the City's "last and best" offer to recommend (the "arbitrator's recommendation") to the governing bodies of the City and County to resolve the dispute between the parties (the arbitrator's recommendation is attached as Exhibit "B"); and

**Whereas**, the City's "last and best" offer, as recommended by the arbitrator and set forth in Exhibit B and incorporated herein, provides for the City and County to share sales and property tax revenues generated from the annexation area;

**Whereas,** article 13, Section 29(b) of the California Constitution and Government Code sections 55700-55707 authorizes cities and counties to enter into a contract to share between them the revenue derived from any sales or use tax imposed by them and collected for them by the State under the Bradley-Burns Uniform Local Sales and Use Tax Law, when the resolution or ordinance proposing such contract is approved by two-thirds (2/3) vote of the governing body of each jurisdiction that is a party to the contract.

**WHEREAS,** the Parties seek to implement the arbitrator's recommendation to share sales and property tax revenues generated from the area proposed for annexation by entering into this Agreement to share sales tax revenues, and concurrently approving a resolution entitled "Joint Resolution of the Board of Supervisors of the  County of Los Angeles and the City Council of the City of Calabasas, Approving and Accepting The Negotiated Exchange Of Property Tax Revenue Resulting From The Annexation Of Territory Known As Annexation 2014-04 (West Agoura Road) To The City Of Calabasas, Withdrawal From County Lighting Maintenance District 1687, Transfer Of Jurisdiction Over And Accepting The Negotiated Exchange Of Benefit Assessment Proceeds For County Lighting And Landscaping Act District #2-32 From The County To The City, Detachment From County Road District No. 3, And Approving An Agreement For Sharing City Sales Tax Revenues Pursuant To Annexation 2014-04", which provides for an exchange of property tax-related revenues, with both to be effective after the filing of the statement of boundary change for Annexation 2014-04 by the executive officer of LAFCO with the Board of Equalization pursuant to California Government Code sections 54902 and 57204.

**NOW, THEREFORE**, the Parties hereby agree as follows:

## Section 1. Purpose of Agreement

The purpose of the Agreement is to implement the arbitrator's recommendation with regard to sharing of sales tax revenue between the County and the City generated from the annexation area as recommended by the arbitrator on September 19, 2017, with the property tax-related provisions of the arbitrator's recommendations to be implemented with a concurrent Joint Resolution of the Board of Supervisors of Los Angeles and the City Council of the City of Calabasas.

## Section 2:    Definitions

A. **Effective Date** means the date of the filing of the statement of boundary change for Annexation 2014-04 with the State Board of Equalization pursuant to California Government Code sections 54902 and 57204.

B. **Fiscal Year** means any year commencing on July 1 of any calendar year and ending on June 30 of the subsequent year.

C. **City Sales Tax** means tax imposed by the City under the Bradley-Burns Uniform Local Sales and Use Tax Law, California Revenue and Taxation Code sections 7200 *et seq.*

D. **City Sales Tax Revenue** means revenues collected by the California Board of Equalization (hereinafter "BOE") and transmitted to City as City Sales and Use Taxes. City Sales Tax Revenue excludes the portion of City Sales Tax that is retained by the BOE as reimbursement for expenses incurred in collecting and administering the City Sales Tax.

E. **Sales Quarter** means the calendar year quarter commencing on January 1, April 1, July 1, or October 1, and ending the following March 31st, June 30th, September 30th, or December 31st, respectively in which the sale is made and tax revenue is accrued.

F. **Payment Period** means each six-month period occurring twice per Fiscal Year from (1) January 1 through June 30, and (2) July 1 through December 31.

## Section 3.    Agreement to Share Sales Tax Revenues

A. The City shall share actual City Sales Tax Revenue collected in the annexation area for a ten year period, beginning with a 50% split in year one and then declining the County's share by an additional 5% each year thereafter for the next 10 years until Year 11, at which time the City's share of the Sales Tax Revenue will be 100%. Year one shall begin on the first day of the next Sales Quarter following the Effective Date, unless LAFCO establishes an effective date for Annexation 2014-04, in which case year one shall begin on the first day of the next Sales Quarter following the effective date set by LAFCO.

B.  The City will pay the County the agreed upon share of the sales tax revenue after the end of each Payment Period as set forth in Section 3.A. of this Agreement and within 20 business days of end of each Payment Period.

C.  The Parties agree that there may be changes in the facts and/or amendments to the current law subsequent to the execution date of this Agreement that may change the distribution of sales tax to the County or City under this Agreement. The Parties recognize that legislation may be enacted or a court may issue an order that affects or changes the revenues from the subject area which may impact the type of revenues, the percentage of taxes or fees, the person or entity subject to the taxes and fees, or the manner in which the revenues are distributed to entities.  Therefore, if either of the Parties believes that any change in law, whether by legislation or Court decision has occurred that is inconsistent with the Parties' intent, that Party may request and negotiate in good faith a revision of the Agreement to conform with the intent of this Agreement.

**Section 4.    Reconciliation of Sales Tax Revenue and Payments to County**

A.  As soon as possible following the end of each Fiscal Year, the County's Chief Executive Office and City's Director of Finance, shall reconcile the amount of the sales tax payments made to the City based on (1) the actual amount received by the City from the BOE attributable to the annexation area; and (2) the allocation percentages enumerated in this Agreement between the County and the City.  If at any time this reconciliation shows an overpayment was made to the County, the City shall notify the County of the overpayment.  The County and the City shall work together to determine the true overpayment.  The City shall make an adjustment for the overpayment from the next payment due to the County.  If the City makes an underpayment to the County, the County and the City shall work together to ascertain the true amount of the underpayment to the County, and the City shall include the under paid amount in the next payment due to County.

B.  If at any time during or after the term of this Agreement, the BOE discovers that any portion of County Sales Tax Revenue attributed to the annexation area was inaccurately allocated and paid to the City, and the BOE requires repayment or offsets against future distribution of City Sales Tax Revenue, the City shall make a written request for repayment from the County of any amount that was improperly paid to the County.  If the County fails to make such repayment within 90 calendar days after the City's written demand, the repayment obligation of the County shall accrue simple interest of 2% per annum as of the 91st day from the City's written request.

C.  The County Chief Executive Office shall work with the City's Director of Finance to make a final reconciliation of the City's Sales Tax Revenue received by City attributable to the annexation area and the payments made to the County

4

pursuant to this Agreement.  The City and County shall notify each other of any over or under payment amounts.  The Parties agree to reimburse each other for any and all underpayments or overpayments identified in the final reconciliation within 3 (three) months of the date of the notification to the City or the County.  Should either party fail to make a required reimbursement within three months, the reimbursement obligation shall accrue interest commencing on the 91st day after the notification to City or County as the case may be at a two percent (2%) interest rate on the outstanding obligation, compounded monthly, until paid.

## Section 5.  Entire Agreement.

With respect to the subject matter hereof only, this Agreement supersedes any and all previous negotiations, proposals, commitments, writings, and understanding of any nature whatsoever between the County and the City, except as otherwise provided herein.

## Section 6.  Indemnification

Each Party shall indemnify, hold harmless, save and defend the other party, its officials, agents and employees from and against any and all claims, demands, damages, causes of action, liens, liabilities, losses, damages, costs and expenses, including reasonable attorney's fees, arising out of or in connection with this Agreement, and/or the sharing of Sales Tax Revenues.  The foregoing shall not apply to claims or liabilities caused by the sole negligence of either the City or County or their officers or employees.

## Section 7.  Notices

Any notices, requests, certifications or other correspondence required to be provided by the parties under this Agreement shall be in writing and shall be personally delivered or delivered by first class United States mail to the respective parties at the following addresses:

TO COUNTY:                                    TO CITY:

Chief Executive Office                        City Manager
County of Los Angeles                         City of Calabasas
500 W. Temple, Street, Rom 713                100 Civic Center Way
Los Angeles, CA  90012                        Calabasas, CA 91302
**Attention**: Office of Unincorporated
        Area Services

## Section 8.  Severability

If any provision or any portion of this Agreement or the Joint Resolution of the Board of Supervisors of Los Angeles and the City Council of the City of Calabasas for

5

Annexation 2014-04 ("Joint Resolution") are held to be unconstitutional, illegal, invalid or unenforceable, the remainder of the Agreement and the Joint Resolution shall be void and unenforceable unless the Parties mutually agree in writing that such provisions shall remain effective and enforceable.

## Section 9. No Waiver

A waiver of any of the terms and conditions of this Agreement shall not be construed as a general waiver by either Party, and either Party shall be free to enforce any term or condition of this Agreement with or without notice notwithstanding any prior waiver of that term or condition.

## Section 10. Assignment

Neither Party may assign any rights or delegate any duties under this Agreement without the written consent of the other Party and any attempt to make such an assignment shall be null and void for all purposes.

## Section 11. Counterpart

This Agreement may be executed in one (1) or more counterparts, all of which together shall constitute a single agreement, and each of which shall be an original for all purposes.

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

IN WITNESS WHEREOF, the Parties hereto execute this Agreement:

**CITY OF CALABASAS**

By: _____     Dated: 8/8/18

    Fred Gaines, Mayor

Attest:

_____

Maricela Hernandez, MMC
City Clerk

APPROVED AS TO FORM:

By: _Matthew T. Summers, Assistant City Attorney for_

    Scott H. Howard
    Colantuono Highsmith & Whatley
    City Attorney

I hereby certify that pursuant to
Section 25103 of the Government Code,
delivery of this document has been made.

CELIA ZAVALA
Executive Officer
Clerk of the Board of Supervisors

By _____
             Deputy   NOV 0 7 2018

**COUNTY OF LOS ANGELES**

By: _____     Dated: 11/7/18

    Chair, Board of Supervisors

Attest:

_____

Executive Officer of the Board of Supervisors

ATTEST: CELIA ZAVALA
EXECUTIVE OFFICER
CLERK OF THE BOARD OF SUPERVISORS

By _____, Deputy   NOV 0 7 2018

APPROVE AS TO FORM
County Counsel

By _____

Deputy County Counsel

ADOPTED
BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES

13        NOV 0 7 2018

CELIA ZAVALA
EXECUTIVE OFFICER

78853

7

EXHIBIT A

### RESOLUTION NO. 2014-1418

**AN AMENDED RESOLUTION OF THE CITY COUNCIL OF THE CITY OF CALABASAS, CALIFORNIA INITIATING PROCEEDINGS AND REQUESTING THE LOCAL AGENCY FORMATION COMMISSION OF LOS ANGELES COUNTY TO AMEND THE SPHERE OF INFLUENCE AND TO CONSIDER APPROVAL OF A REORGANIZATION OF TERRITORY WHICH INCLUDES ANNEXATION OF APPROXIMATELY 57.5 ACRES OF UNINCORPORATED TERRITORY TO THE CITY OF CALABASAS.**

**WHEREAS,** Resolution No. 2014-1399 was passed and approved on March 12, 2014 by the City Council to initiate annexation proceedings for an area comprising approximately 43.17 acres; and

**WHEREAS,** After conferring with LAFCO staff it was determined that the annexation initiated under Resolution 2014-1399 failed to include adjoining rights-of-way, and had incorrectly included a sixth parcel (APN 2064-005-018); and

**WHEREAS,** The City Council desires to amend resolution 2014-1399 and initiate proceedings pursuant to the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000, commencing with Section 56000 of the California Government Code, to annex the original and additional territory to the City of Calabasas; and

**WHEREAS,** The total area to be annexed, consisting of approximately 57.5 acres of developed commercial properties, protected open space lands, and public rights-of-way, is located immediately west of the City and represents an island of unincorporated territory between the City of Agoura Hills and the City of Calabasas; and

**WHEREAS,** Policy No. II-3 in the 2030 General Plan states: "Pursue annexation of those areas where residents (in inhabited areas) or landowners (in uninhabited areas) desire to become part of the City of Calabasas"; and

**WHEREAS,** Both the original and additional area to be annexed includes two existing developed commercial properties, open space lands, and public right-of-way but no residential dwellings or inhabitants, and the property owners have expressed a desire to become part of the City of Calabasas; and

**WHEREAS,** The Los Angeles County North Area Plan, as adopted by the Los Angeles County Board of Supervisors On October 24, 2000, supports the annexation of lands directly adjacent to incorporated cities, where primary access and services, such as parks, are provided through the city (NAP Policy No. III-9); and

**WHEREAS,** The area to be annexed is contiguous to the City of Calabasas, and secures access and services, including transit, parks and library services, primarily from the City of Calabasas; and

**WHEREAS,** The reasons for this proposal are to provide municipal services to this area, allow participation in municipal affairs, and promote orderly governmental boundaries, consistent with the provisions of California law and the land use and development policies of the County of Los Angeles and the City of Calabasas; and

**WHEREAS,** The area to be annexed is now precisely described and mapped, inclusive of five privately owned parcels (Assessor Parcel Numbers 2064-005-009, 2064-005-010, 2064-005-011, 2064-005-015, and 2064-005-017), and adjoining public rights-of-way.

**NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF CALABASAS DOES HEREBY RESOLVE AND ORDER AS FOLLOWS:**

Section 1. The City Council hereby requests the Local Agency Formation Commission of Los Angeles County amend the Sphere of Influence for the City of Calabasas to include the territory described herein and illustrated on Exhibit A.

Section 2. The City Council hereby requests the Local Agency Formation Commission of Los Angeles County process a reorganization encompassing the City of Calabasas and the unincorporated territory of the County of Los Angeles, such that approximately 57.5 acres of territory, comprised of five parcels and attendant local street and state highway rights-of-way, which territory is currently within the unincorporated Los Angeles County, be annexed to the City of Calabasas, as shown on Exhibit A.

Section 3. Based on the foregoing statements of findings and conclusions, the City Council hereby initiates the annexation of the West Agoura Road Territory, as shown on Exhibit A, attached hereto and made a part hereof, and requests the Local Agency Formation Commission of Los Angeles County to take proceedings as authorized and in the manner provided by the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000, as amended.

R2014-1418

**Section 4.** This resolution should be considered an amendment of and supplement
to Resolution 2014-1399.

**Section 5.** The City Clerk shall certify to the adoption of this resolution and shall
cause the same to be processed in the manner required by law.

**PASSED, APPROVED AND ADOPTED** this 25th day of June, 2014.

David J. Shapiro, Mayor

ATTEST:

Maricela Hernandez, MMC
City Clerk

APPROVED AS TO FORM:

Scott H. Howard, City Attorney

*Exhibit A:*        *West Agoura Road Territory Map*

3

R2014-1418



| SEGMENT # | LENGTH | DIRECTION/ DELTA | RADIUS |
|---|---|---|---|
| L1 | 627.35' | N0°22'43"E | |
| L2 | 505.69' | N80°12'34"E | |
| C3 | 682.42' | 6°31'00" | 6000.00' |
| L4 | 139.72' | N88°43'34"E | |
| L5 | 396.75' | N0°21'35"E | |
| L6 | 381.66' | S55°26'51"E | |
| L7 | 161.32' | S70°18'56"E | |
| L8 | 129.92' | N78°06'30"E | |
| L9 | 85.54' | S83°52'23"E | |

| SEGMENT # | LENGTH | DIRECTION/ DELTA | RADIUS |
|---|---|---|---|
| L10 | 25.65' | N75°10'33"E | |
| L11 | 37.01' | N49°40'25"E | |
| L12 | 74.95' | N77°11'58"E | |
| L13 | 254.80' | N84°23'27"E | |
| L14 | 141.65' | N81°11'21"E | |
| L15 | 83.94' | S64°23'45"E | |
| L16 | 38.90' | N64°17'08"E | |
| L17 | 272.08' | S0°14'49"W | |
| L18 | 51.32' | N78°35'04"W | |

| SEGMENT # | LENGTH | DIRECTION/ DELTA | RADIUS |
|---|---|---|---|
| L19 | 312.01' | S82°48'33"W | |
| L20 | 10.00' | S7°11'27"E | |
| C21 | 254.07' | 9°23'30" | 1560.00' |
| L22 | 108.44' | S78°29'01"E | |
| L23 | 753.01' | S0°13'54"W | |
| L24 | 1319.76' | N89°49'21"W | |
| L25 | 1307.25' | S89°41'27"W | |
| L26 | 101.85' | N0°22'43"E | |

PROFESSIONAL LAND SURVEYOR DAVID G. KNELL No. 5301 EXP. 12-31-15 STATE OF CALIFORNIA

WILLDAN Engineering
13191 CROSSROADS PARKWAY NORTH, SUITE 405, INDUSTRY, CA 91746-3497 (562)908-6200 (800)499-4484 FAX (562)695-2120

**REORGANIZATION NO. __**
**TO THE CITY OF CALABASAS**
(AMENDMENT TO CALABASAS SPHERE OF INFLUENCE)
**"WEST AGOURA ROAD"**

| SCALE: 1"=300' | DATE: 04-12-2014 |
|---|---|
| DRAWN BY: SB | CHECKED BY: DK |

**STATE OF CALIFORNIA** )
**COUNTY OF LOS ANGELES** ) SS
**CITY OF CALABASAS** )

I, **MARICELA HERNANDEZ, MMC**, City Clerk of the City of Calabasas, California, **DO HEREBY CERTIFY** that the foregoing resolution, being **Resolution No. 2014-1418** was duly adopted by the City Council of the City of Calabasas, at a regular meeting of the City Council held June 25, 2014, and that it was adopted by the following vote, to wit:

AYES:      Mayor Shapiro, Mayor pro Tem Martin and Councilmembers Bozajian, Gaines and Maurer.

NOES:      None.

ABSTAIN:   None.

ABSENT:    None.

Maricela Hernandez, MMC
City Clerk
City of Calabasas, California

STATE OF CALIFORNIA          )
COUNTY OF LOS ANGELES    ) §
CITY OF CALABASAS            )


I, **MARICELA HERNANDEZ, MMC,** City Clerk of the City of Calabasas, California, **DO HEREBY CERTIFY** that the foregoing resolution, being **Resolution No. 2018-1602** was duly adopted by the City Council of the City of Calabasas, at their regular meeting held August 8, 2018, and that it was adopted by the following vote, to wit:

AYES:       Mayor Gaines, Mayor pro Tem Shapiro, Councilmembers Bozajian, Maurer and Weintraub.

NOES:       None.

ABSTAIN:   None.

ABSENT:    None.


Maricela Hernandez, MMC
City Clerk
City of Calabasas, California

JAMS ARBITRATION CASE REFERENCE NO. 1220056278

City of Calabasas
       Petitioner/Plaintiff,

    vs.

Sachi Hamai, in her official capacity as
Interim Chief Executive Officer for the
County of Los Angeles; County of Los
Angeles,
       Respondents/Defendants.

---

## ADVISORY RECOMMENDATION AFTER ARBITRATION
### PURSUANT TO CALIFORNIA REVENUE & TAXATION CODE SECTION 99(e)(1)(C)

    **Parties and Counsel:**   The parties to this arbitration are identified in the caption and are represented as follows:

Holly O. Whatley Esq.
Ms. Megan Knize
Colantuono, Highsmith & Whatley, PC
790 E. Colorado Blvd., Suite 850
Pasadena, CA    91101-2109
Tel: 213-542-5700

Counsel for City of Calabasas

Judy Whitehurst Esq.
Michael S. Buennagel, Esq.
County of Los Angeles
648 Kenneth Hahn Hall of Administration
500 W. Temple Street
Los Angeles, CA    90012-
Tel: 213-974-1940

Counsel for County of Los Angeles and Sachi Hamai

Stephen P. Wiman Esq.
Lloyd W. Pellman Esq.
Nossaman LLP
777 S. Figueroa St., 34th Floor
Los Angeles, CA    90017
Tel: 213-612-7800

Counsel for County of Los Angeles and Sachi Hamai

1

**Arbitrator:**

Hon. Richard J. McAdams (Ret.)
160 West Santa Clara Street, Suite 1600
San Jose, CA 95113
408-346-0737    408-295-5267(fax)

**Date of Recommendation:**

September 19, 2017

THE UNDERSIGNED ARBITRATOR, having been duly appointed by JAMS and having fully considered the allegations, submissions, and evidence of the parties, the written and oral arguments of counsel and the last best offer of each party, finds, concludes and issues this Advisory Recommendation as follows:

I.        **Introduction and Procedural Statement**

(a)        **Procedural History**

(1)  *The Agreement to Arbitrate*

In May 2017, in accordance with the order of the Superior Court of the County of Los Angeles in *City of Calabasas v. Sachi Hamai, et al.* (Case No. BS157268), the parties stipulated to arbitration under California Revenue and Taxation Code section 99(e) and submitted their Joint Claim re: Non-Binding Statutory Arbitration to JAMS.

*(2) Pleadings and Arbitrability*

On September 2, 2015, the City of Calabasas (City) filed a Petition for Writ of Mandate and Related Relief in the above-described matter against Sachi Hamai, in her official capacity as Interim Chief Executive Officer for the County of Los Angeles, and the County of Los Angeles (hereafter collectively, County) seeking court intervention in relation to the statutory tax revenue sharing agreement process arising from a proposed City annexation of property within the County.  The County filed a general demurrer and

motion to compel mediation and advisory arbitration pursuant to Revenue and Taxation Code section 99 and on December 31, 2015, the court granted the motion to compel and sustained the demurrer with leave to amend following exhaustion of the alternative dispute resolution proceedings.

An Appointment of Arbitrator letter was issued by JAMS on June 5, 2017, appointing this Arbitrator.

A Preliminary Conference was held on July 7, 2017 and the claims were determined to be arbitrable under the advisory arbitration process set forth in Revenue and Taxation Code section 99.

### (3)   Proceedings Before JAMS

At the Preliminary Conference, a simultaneous briefing schedule was established.   The parties timely filed and served their opening briefs, responses and replies.

Oral argument was heard on September 12, 2017, in a telephonic conference and the matter was submitted for the advisory recommendation.

### (b)   Format of the Advisory Recommendation

The parties stipulated that, in the interest of economy, it was unnecessary for the arbitrator to recite a detailed statement of the proposed annexation, the history of the negotiations and the issues raised by the two entities in their attempt to resolve any dispute through negotiation and mediation.

## II.      The Respective Last Best Offers

The last best offer of each party as required under Section 99 was submitted in their individual reply briefs.   The descriptions of the offers below are arbitrator's summaries and are not intended to be a substitute for the actual offers formally submitted by the parties in their respective reply briefs.

3

**(a)   The City of Calabasas**

*(1)   Property tax*

Without waiving its argument that "the law does not permit the County to demand the City acquiesce to the County's demand to share sales tax before the County will negotiate a property tax sharing agreement," the City is prepared to accept as transfers from the County the following annual property tax-related revenue "identified in Table 2 of the consultant's [EPS] Report:

County Property Tax: $7,438
Public Library Special Fund: $3,905
Lighting District #1687: $690
LLAD #32: $11,000"

The offer further sets forth the specifics of the transfers to the library fund, the Lighting District No. 1687 and LLAD No. 32 and any "then-existing' fund balance for LLAD No. 32 (estimated to be $183,000) and concludes that the total annual property tax-related revenue transfer would be $23,033 plus the "one-time transfer" of LLAD No. 32 funds (with the City's "caveat" concerning this figure and what the City understands could be the "actual assessment and fund balance…for LLAD No. 32 at the time of annexation.").

*(2)   Sales Tax*

Again without waiving its argument as noted above, the City's offer proposes a sharing of the actual sales tax revenues collected in the annexed area for a ten year period, "beginning with a 50% split in year one" and then declining 5% each year from City to County thereafter.

**(b)   The County of Los Angeles**

*(1) Property Tax*

Without waiving any opposition to the annexation, the County offers that the City can receive

4

"all property taxes from the [annexed] Property."

### (2)  Sales Tax

The County's offer proposes that the County would "retain sales tax attributable to Spirent [the major sales tax generating business entity within the proposed annexation] (and any [legal] successor business entity)…up to $500,000 so long as Spirent…occupies the building on the Property."   Under this proposal, the City would be "entitled to any increase in annual sales taxes" over $500,000.

## III.    Arbitrator's Recommendation

Pursuant to Revenue and Taxation Code section 99(e)(1)(C), Arbitrator recommends the proposal by the City to the governing bodies of the City and the County:

1.  The City's offer presents a balanced sharing of tax revenues spread out over a time period that allows substantial time for any necessary adjustments and fiscal planning as a result of the annexation.

2.  The anticipated sales tax revenue derived from Spirent is miniscule in relation to the County's overall budget.

3.  The County has presented no evidence that the loss of anticipated sales tax revenue would have a significant impact on the County's ability to provide services or would "contradict orderly growth and development - two of the factors in the County's own policies on evaluating proposed annexations (Los Angeles County Policy, section 3.095).

4.  The County provides no justification for setting a $500,000 level for sharing sales tax revenue for an unlimited time period.

5.  The City's proposal acknowledges that Spirent has been located in both the City and County over the past years.

It should be noted that the parties agreed that in light of the last best offers, the arbitrator need not incorporate into this recommendation any analysis, findings or conclusions concerning the issue of whether sales taxes can be the subject of the negotiations under Section 99.

IV.     **Conclusion**

Arbitrator recommends the proposal by the City to the governing bodies of the City and the County.

**This recommendation addresses all claims between the parties submitted to Arbitrator in this proceeding.**

Dated: SEPT. 19 2017.

Hon. Richard J. McAdams (Ret.)
Arbitrator

6

## ATTACHMENT 4

## CITY OF AGOURA HILLS OBJECTION LETTER



CITY OF

**AGOURA HILLS**

*"Gateway to the Santa Monica Mountains National Recreation Area"*

RECEIVED

2018 APR 30 AM 8:07

April 16, 2018

Paul Novak, AICP
Executive Director
Los Angeles LAFCO
80 South Lake Avenue, Ste. 870
Pasadena, CA 91101

SUBJECT:     CITY OF CALABASAS APPLICATION TO LAFCO FOR ANNEXATION OF PARCELS
             ALONG AGOURA ROAD – ANNEXATION NO. 2014-04

Dear Mr. Novak:

This letter is written in regard to the proposed annexation of several parcels along Agoura Road at or east of Liberty Canyon Road by the City of Calabasas. The Local Agency Formation Commission (LAFCO) has identified this request as Annexation No. 2014-04. We understand that the application is gradually moving through the LAFCO process, and will be heard by the Commission sometime in the near future. Attached are two previous letters from the City of Agoura Hills to LAFCO. One dated April 18, 2014 from the City of Agoura Hills staff identifies concerns with the proposed annexation of these parcels by the City of Calabasas (Attachment A); and one position letter, dated May 6, 2014 and from the Mayor, reflects the Agoura Hills City Council's vote of 4-0 opposing the annexation (Attachment B). The City Council maintains that position based on the following.

You may be aware that one area of the proposed annexation on the south side of Agoura Road, Tract 33128, has a history of geologic failure. We understand that the County currently maintains this slope, and, as recently as the past few weeks, has conducted maintenance on the slope. The City of Agoura Hills retained Geodynamics, Inc., a geologic/geotechnical consulting firm, to conduct analysis of the slope's stability by studying reports on file at the County offices and visiting the site for brief visual checks. Attached for your consideration is a *Geotechnical Reconnaisance Report* for this Tract 33128, prepared by Geodynamics, Inc. and dated March 2018, summarizing the firm's research to date and preliminary opinion on the slope (Attachment C). The report's conclusion is that the slope was constructed at a steep gradient that the original geotechnical consultant for the development of the nearby commercial lots indicated would be problematic. Despite subsequent repairs of the slope, this fundamental deficiency remains. The graded repairs are dependent on several surface and subsurface drainage systems to avoid future failures, which would need to be protected and maintained to function properly.

Mr. Paul Novak
April 16, 2018
Page 2

The City of Agoura Hills is extremely concerned about the future maintenance of the slope should the City of Calabasas annex the property. The future repairs and long-term maintenance are critical to avoid any potential failure, especially one that may cause the closure of Agoura Road for a period of time. As you know, Agoura Road is a regional roadway that provides key access through the City of Agoura Hills. However, should the slope fail, not a single Calabasas resident would be impacted, rather only residents of the entire Conejo Valley attempting to reach the San Fernando Valley and points east, including the cities of Agoura Hills and Westlake Village. We are mindful of the costs of repairs and maintenance of such a precarious slope, and, as such, strongly request that the County retain jurisdiction over Agoura Road. The maintenance/repairs may not be economically feasible for the City of Calabasas, or may not be as high a priority item as it would be to its neighbors to the west.

The slope's stability is critically important from a regional transportation perspective, as well as a local safety perspective. We would be happy to meet with you to discuss this issue in further detail. Please also note that the cities of Calabasas and Agoura Hills have recently agreed to work together on a comprehensive study of Spheres of Influence in the areas west of Calabasas and east of Agoura Hills, as recommended by LAFCO. We hope this study encourages greater coordination of annexation issues in the future.

Please contact Greg Ramirez, City Manager, at gramirez@ci.agoura-hills.ca.us or at (818) 597-7311, or contact Allison Cook, Assistant Planning Director, at acook@ci.agoura-hills.ca.us or at (818) 597-7310 for further coordination. Thank you for your consideration.

Sincerely,

William Koehler, Mayor
Annexation Subcommitee

Illece Buckley Weber, Councilmember
Annexation Subcommittee

Attachments:

  A. Letter to LAFCO from Mike Kamino, dated 4-18-14
  B. Letter to LAFCO from Mayor Koehler, dated 5-6-14
  C. Geotechnical Reconnaissance Report, Geodynamics, Inc., dated March 2018

cc:     Sheila Kuehl, Los Angeles County Supervisor, District 3

Attachment A



CITY OF

## AGOURA HILLS

*"Gateway to the Santa Monica Mountains National Recreation Area"*

April 18, 2014

LAFCO
80 South Lake Avenue, Suite 870
Pasadena, CA 91101

SUBJECT:   ANNEXATION NO. 2014-04 TO THE CITY OF CALABASAS (WEST AGOURA ROAD)

Dear Sir/Madam:

Thank you for the ability to comment on the proposed annexation of approximately 43 acres of uninhabited territory to the City of Calabasas (Annexation No. 2014-14). This is pursuant to LAFCO's Notice of Filing dated March 20, 2014, which we received. Based on our understanding of the proposed annexation, obtained in part from discussions with the City of Calabasas (Calabasas), the proposal includes annexing five (5) parcels totaling 43 acres (APNs 2064-005-017; 2064-005-009; 2064-005-015; 2064-005-011; and 2064-005-010), including the Agoura Road right-of-way:

- ✓ APNs 2064-005-017 and – 009 contain an existing office building (Spirent) and are zoned "commercial – manufacturing development program (CMDP)" currently and would be pre-zoned by the City of Calabasas as "Commercial, Office (CO)."

- ✓ APN 2064-005-010 contains an existing office building (Kythera), is currently zoned "unlimited commercial (C-3)" and would be pre-zoned by the City of Calabasas as "Commercial, Office (CO)."

- ✓ APN 2064-005-015 is currently vacant, has been the location of landslide remediation, and would be pre-zoned by the City of Calabasas as "Open Space – Development Restricted (OS-DR)."

- ✓ APN 2064-005-011 is currently vacant and open space, and would be pre-zoned by the City of Calabasas as "Open Space – Development Restricted (OS-DR)."

LAFCO
April 18, 2014
Page 2

Calabasas has indicated to the City of Agoura Hills that upon annexation, the following would occur:

- Once the parcels are acquired (assuming purchase at Los Angeles County's sale of tax defaulted properties), it would convey APNs 2064-005-015 and -011 to the Santa Monica Mountains Conservancy (SMMC)/Mountains Restoration and Conservation Authority (MRCA), if amenable by that agency, for permanent open space preservation, and place permanent conservation easements on both parcels to prohibit any future development, particularly in consideration of the use of these lands as a corridor for wildlife.
- Maintain and enforce the existing conditions of approval of the Los Angeles County Conditional Use Permit for the office building at the northeast quadrant of the intersection of Agoura and Liberty Canyon Roads (i.e., Spirent building), APNs 2064-005-017 and -009. These conditions address hours of operation, delivery and receiving hours, notification to the City of Agoura Hills about changes to ownership and proposed changes to conditions, and limitations on permitted uses (e.g., high technology and office uses, not heavy manufacturing or general retail), among others.
- Apply the following City of Calabasas provisions to the annexed parcels: Ridgeline Ordinance, Dark Sky Ordinance, Scenic Corridor Overlay Zone, Sign Ordinance, and Oak Tree Ordinance.
- Maintain Agoura Road in the annexation area as a two-lane road (one lane in each direction), with the Calabasas General Plan amended to reflect this.
- Provide median landscaping; and consider reducing the number of street light poles and intensity of lighting.
- Include the annexed area in the City of Calabasas Landscape Maintenance District.
- Prohibit overnight parking of commercial vehicles on the annexed portion of Agoura Road, consistent with current overnight parking prohibition on Agoura Road within Calabasas city limits.

The City of Agoura Hills has expressed its concerns regarding the annexation to Calabasas, some of which Calabasas has indicated it would address. In summary, the concerns of Agoura Hills are the following:

- Maintaining the original 1999 County issued CUP conditions for the building at the northeast corner of Agoura and Liberty Canyon Roads. These conditions include hours of operation, hours of delivery and shipment, limitation on the type of permitted uses, and notification to the City of Agoura Hills regarding future changes in ownership and use. Any changes to these conditions would require a CUP amendment.
- Not allowing an expansion or intensification of the uses or operations, nor change in use to more industrial/manufacturing, of each of the two existing buildings.

LAFCO
April 18, 2014
Page 3

- Prohibiting development on Parcels 3 and 4, but instead preserve as permanent open space and ensure the viability of the wildlife corridor.
- Reducing the number of light poles, or otherwise reduce the effects of lighting/glare, on Agoura Road to be more appropriate to the semi-natural setting.
- Maintaining the existing two vehicle travel lanes, bike lanes and sidewalks on Agoura Road, and do not re-stripe the right-of-way to add vehicle travel lanes.
- Providing median landscaping along Agoura Road compatible with the natural setting of the area.

At its meeting on April 23, 2014, the Agoura Hills City Council will be reviewing and considering the proposed Calabasas annexation, and will notify LAFCO of any additional comments from our Council regarding the proposed annexation shortly thereafter.

We would appreciate being kept informed of this proposed annexation as it moves through the LAFCO process. If you have questions, please contact me at (818) 597-7321 or Principal Planner Allison Cook at (818) 597-7310.

Sincerely,

Mike Kamino
Mike Kamino
Director of Planning and Community Development

cc:  Greg Ramirez, City Manager

Attachment B



CITY OF

## AGOURA HILLS

*"Gateway to the Santa Monica Mountains National Recreation Area"*

May 6, 2014

Mr. Paul A. Novak, AICP
Executive Officer
LAFCO
80 South Lake Avenue, Suite 870
Pasadena, CA 91101

Re: Annexation No. 2014-04 to the City of Calabasas

Dear Mr. Novak:

This letter will serve as follow-up to our April 18, 2014 letter (enclosed) in which we provided comments regarding the proposed Annexation and Sphere of Influence ("SOI") amendment application by the City of Calabasas on a 43.3 acre territory along Agoura Road between the cities of Agoura Hills and Calabasas. Please be advised that at its April 23, 2014 meeting, the Agoura Hills City Council indicated that it opposed Calabasas's Annexation and SOI amendment application, but also indicated a desire to continue to work with the City of Calabasas to address our concerns.

While we will continue our discussions with Calabasas, I am forwarding the following concerns, which is the basis for our opposition at this time. As you know, in considering an annexation application, LAFCO must consider factors "a" through "o" in California Government Code Section 56665. The City of Agoura Hills respectfully requests that LAFCO consider the City of Agoura Hills's comments below as it relates to factor (c) and (i), particularly regarding the effect of the proposed action on adjacent areas and comments by other public agency. Factors (c) and (i) of Government Code Section 56665 are noted below and our analysis of the factors as it relates to the subject application follows.

> "(c)    The effect of the proposed action and of alternative actions, on adjacent areas, on mutual social and economic interests, and on the local governmental structure of the county"; and

> "(i)    The comments of any affected local agency or other public agency."

By way of background, the proposed 43.3-acre annexation territory, currently in Los Angeles County, serves as a buffer area between the cities of Agoura Hills and Calabasas. Of the 43.3 acres, approximately 30 acres is currently open space with 27.4 acres zoned Open Space – Deed Restricted and 2.6 currently zoned CPD. To the south of the territory is the Liberty Canyon community in the City of Agoura Hills and contains an exclusively residential area of approximately 400 primarily single family homes. In fact, 13 single family homes in the Liberty Canyon community in Agoura Hills directly abut the proposed annexation territory. The area to the west is also in the City of Agoura Hills and contains a small office building, single family homes, and town homes in a semi-rural setting, but the area primarily consists of the county-designated wildlife movement corridor which Agoura Hills, the County of Los Angeles, and other local agencies in the area, including the City of Calabasas and state and federal parkland agencies, have endeavored to protect and enhance over the years. Properties to the east of the territory in the City of Calabasas, on the other hand, are more densely developed with commercial uses.

Therefore, permanently maintaining the current low intensity character of the proposed annexation territory is important in maintaining the effectiveness of the buffer between the Cities of Agoura Hills and Calabasas. The Agoura Hills City Council believes that this buffer area should remain low intensity. The assurance of low intensity commercial/office development in the territory proposed for annexation would also provide an important land use transition from businesses mostly in Calabasas to residential neighborhoods mostly in Agoura Hills, and would help to minimize conflicts between these two types of land uses in terms of compatibility of uses and operations.

At the April 23, 2014 Agoura Hills Council meeting, 15 Agoura Hills residents, many residents of the Liberty Canyon community, opposed the proposed annexation and many cited the importance of maintaining the effectiveness of the current low intensity development buffer between the two cities. Whereas the proposed annexation territory is directly adjacent to Agoura Hills residences, the proposed annexation territory is not directly adjacent to Calabasas residences. Therefore, any negative impacts from uses in the proposed annexation territory would be borne by Agoura Hills residents, not Calabasas residents.

The westerly border of the proposed annexation area is also adjacent to the Liberty Canyon Road on-ramp and off-ramps of the 101 Freeway, and thus serves as a gateway to the Liberty Canyon residential community. Therefore, the Liberty Canyon residents want to ensure that this gateway remains in character with their community. Moreover, Liberty Canyon Road in Agoura Hills is the closest access point to the 101 Freeway and therefore is the main access portal to the proposed annexation area. Moreover, all the traffic going in and out of the 81,000 square foot commercial-manufacturing building at the westerly end of the territory would be going through Agoura Hills because of its adjacency to the Liberty Canyon Road freeway on-ramp and off-ramp, which is also located in Agoura Hills. Again, all negative traffic impacts would be borne only by the residents of the City of Agoura Hills.

Currently, Agoura Hills residents' concerns are considered and protected by the County Board of Supervisors, because the proposed annexation territory is located in the County of Los Angeles. In contrast, if the proposed territory is annexed to Calabasas, Agoura Hills residents would have no recourse if they are negatively impacted by uses in the proposed territory. The City is concerned that any intensification of uses within the proposed annexation area would impact the integrity of

2

the Liberty Canyon residential community. Therefore, the proposed annexation action could affect adjacent areas in the City of Agoura Hills unless assurances are in place to maintain this area as a low density, low development buffer between the two cities.

The City of Calabasas has indicated that, if annexed to Calabasas, the two vacant parcels totaling approximately 30 acres, currently in tax default, will be acquired by Calabasas when they become available and will be zoned Open Space – Development Restricted with all development rights retired. The properties will be deeded either to the Santa Monica Mountains Conservancy (SMMC)/Mountains Recreation and Conservation Authority (MRCA) or will be retained by Calabasas, but in either case, a conservation easement will be recorded to further prohibit development. If this territory is annexed by the City of Calabasas, Calabasas must act swiftly to permanently protect open space as it would help maintain, more permanently, the effectiveness of the buffer area, thus implementing the mutual desire of both jurisdictions to preserve the land in open space in perpetuity.

Cypress Land Company's building, at the northeast corner of Liberty Canyon and Agoura Road, encompasses 75% of the current building area in the proposed annexation territory, and is located just across the street from Agoura Hills. It should be noted that many of the residents who spoke at the April 23rd City Council meeting expressed the importance of retaining the development and operational restrictions placed on the Cypress Land Company building (APN 2064-005-009 and 017) which were adopted as part of the County-issued Conditional Use Permit. These restrictions were actually negotiated between the developer and the Liberty Canyon neighborhood and placed as conditions of approval to ensure that any use of the property does not cause undue burden on the residential neighborhood. If the City of Calabasas is successful in annexing the proposed territory, Calabasas must continue to work with the City of Agoura Hills to ensure that the integrity of these conditions will be maintained in the future.

Thank you for this opportunity to provide LAFCO with additional comments at this time. We look forward to participating in the annexation hearings process. If you should have any questions, please contact City Manager Greg Ramirez at (818) 597-7311 or Director of Planning and Community Development Mike Kamino at (818) 597-7321.

Sincerely,

William D. Koehler, Mayor
City of Agoura Hills

Enclosure

Attachment C

 **GeoDynamics, Inc.**

**Applied Earth Sciences**
*Geotechnical Engineering & Engineering Geology Consultants*

# GEOTECHNICAL RECONNNAISSANCE REPORT

**City of Agoura Hills
Annexation Options
Tract 33128**

**March 2018**



FOR

**City of Agoura Hills**



**Applied Earth Sciences**
*Geotechnical Engineering & Engineering Geology Consultants*



**AGOURA HILLS**

**GeoDynamics, Inc.**

Applied Earth Sciences
Geotechnical Engineering & Engineering Geology Consultants

March 20, 2018

Project No. 17.00103.0217

Ms. Allison Cook
30001 Ladyface Court
Agoura Hills, CA 91301

Subject:   Geotechnical Reconnaissance Report; City of Agoura Hills Annexation Option;
Tract 33128 (Agoura Road); Los Angeles County, California

Dear Ms. Cook:

At your request and authorization, Geodynamics, Inc. (GDI) provides in the attached report our preliminary geotechnical assessment of developments along Agoura Road under consideration for annexation by the City of Agoura Hills. Our work was conducted in March of 2017. This report is based on data and information included in our report of May 2017 and summarizes the scope of our assessment along with the development history and general geologic condition of the site, and provides a brief assessment of geotechnical issues that should be considered in evaluating the suitability of the area for annexation by the City of Agoura Hills. Specific assessments of geotechnical conditions and hazards are outside the scope of this report, but can be provided upon your request.

Please do not hesitate to contact us if you have any questions or if we may be of any additional assistance. We look forward to assisting you again in the future.

Sincerely yours,
**GEODYNAMICS, INC.**

Ali Abdel-Haq, GE 2308
Principal Geotechnical Engineer

Christopher J. Sexton, CEG 1441
Principal Engineering Geologist

Enclosures
References & Aerial Photographs Reviewed
Figure 1 – Location Map

<u>Introduction</u>

This report provides results of a limited geotechnical assessment of a land parcel being evaluated for possible annexation by the City of Agoura Hills. The purpose of this assessment is to provide the city with basic geologic and geotechnical information that may bear on the annexation decision. The scope of our work was limited to review of existing, readily available geologic reference publications and aerial photographs available in our files, preliminary review of development records on file with the County of Los Angeles, and limited site reconnaissance from areas that appeared to be reasonably available for public access.

The land parcel is identified as Tract 33128. The parcel is located along Agoura Road between Liberty Canyon Road and Los Angeles County Sheriffs facility in Los Angeles County, California. The property extends about 650 feet south of the 101 Freeway between Liberty Canyon Road and a point about ½ miles to the east. The approximate boundaries of the parcel are depicted on Figure 1. The following report provides an overall description and broad development history of the parcel, a discussion of the underlying geologic conditions, and brief assessment of the impacts those conditions may have on existing or proposed future developments as appropriate.

Note that the development history for this parcel is complex. The record for Tract 33128 includes nearly 150 geotechnical letters and reports by various consultants, and a similar number of geotechnical review letters issued by the County of Los Angeles spanning a period of nearly 32 years. We have reviewed these records (some very briefly) to the degree necessary to develop a reasonable understanding of the development chronology and to gain a preliminary grasp of the issues involved. Developing independent professional opinions regarding the technical details of the development issues would require a far greater effort. If requested, GDI can provide this service as a separate scope of work. Note that References cited at the end of this report include only selected references directly pertinent to the current discussion.

<u>Tract 33128</u>

Site Description

Tract 33128 includes about 35 acres located south of the 101 Freeway between Liberty Canyon Road and the Los Angeles County Sheriffs facility located about ½-mile to the east. The property includes two commercial developments and road cuts created to extend Agoura Road eastward from Liberty Canyon Road. The remainder of the property is open space hillsides that extend from Liberty Canyon Road and residences along Provident Road to the west edge of the Los Angeles County Sheriffs facility. This open space remains essentially undeveloped except for an area upslope of residences at the intersection of Provident Road and Jim Bowie Road where grading was conducted to repair a landslide in the late 1990's.

Geologic Conditions

Published geologic references (Dibblee, 1992; Weber, 1984) describe bedrock below Tract 33128 as gray claystone of the upper Topanga Formation. The claystone is described as gray,

thinly-bedded, and crumbly, and is commonly associated with slope instability where bedding planes are unsupported in natural and constructed slopes.

Bedrock is overlain beneath developed areas by certified fill placed to create two commercial building pads and to stabilize slopes. Groundwater was reported in alluvial areas and as localized seepages in bedrock. An extensive system of horizontal drains has been installed in attempts to control one such seepage.

Geologic structure is complex, with easterly dips at highly variable inclinations, local faults and folds. The hillside area that rises above the sheriff's station is mapped as a large landslide.

The tract is not located within a State Earthquake Fault Zone for mapped active faulting. Parts of the property are within State Seismic Hazard Zones for either liquefaction or seismically induced slope failures as shown on a map of "Seismic Hazard Zones" on the Calabasas Quadrangle, published by the California Geological Survey (1998). Because the site is located in the seismically active southern California region, moderate to very strong ground shaking can be anticipated.

## Development History

The original development included two commercial lots (Lots 1 & 2) and an open-space lot (Lot 3). An existing freeway cut would be moved about 80 feet to the south to make room for an extension of Agoura Road (referred to at that time as "Rondell Road"). Development of this tract and resolution of two associated major slope stability issues involved at least six different consultants and extended over a period of nearly 20 years. The summary provided below is based on a relatively cursory review of the record, and as such, it should be understood that the following summary is necessarily incomplete. Should you desire a more detailed assessment of the record, or development of a detailed technical opinion, this service can be provided at your request.

### Tentative Map Approval (1982)

The project was initially submitted in April of 1982, with a second submittal in June of 1982 supported with a preliminary investigation completed by GeoSoils, Inc. (GSI) for the Currey-Riach Company (GSI 1982a). Major elements of the proposed grading included a combination of cutting the nose of a ridge and filling the surrounding canyons to create a building pad on Lot 1 (currently 27349 Agoura Road), creating a northeasterly facing cut-slope and filling a small canyon to create the building pad for Lot 2 (currently 27200 Agoura Road) and creating a series of high cut-slopes to allow an extension of Agoura Road eastward from Liberty Canyon Road.

The highest cut-slope proposed on the project would be about 145 feet high and inclined at a gradient of approximately 1.5:1 (H:V). This cut would essentially be a regrading of an existing freeway cut to allow the eastward extension of Agoura Road. Preliminary reports by GSI discuss the condition of the existing cut. The cut is assessed to have performed reasonably well with the exception of small surficial failures that were attributed to degradation of rock due to persistent seepage at the toe. GSI noted that re-design of the cut at a gradient of 2:1 would reduce the potential for these sorts of problems, and stated that retaining the steeper configuration would likely result in continued surficial failures and a need for ongoing maintenance. Calculations were included in these early documents to demonstrate that the slope had an adequate factor of safety against gross failure at a gradient of 1.5:1. The seepage at the

toe was considered to be detrimental, and as such a series of horizontal drains extending 100 feet into the slope was recommended.

Other major cut-slopes were discussed as well. The 100 foot high, 1.5:1 cut-slope proposed south of Lot 1 was recommended to be flattened to 2:1, and the 50 foot high, 1.5:1 cut proposed on the south side of Lot 2 was recommended to be stabilized. Several smaller slopes were anticipated to be generally stable, but would require careful observation during grading to assess any unfavorable geologic conditions.

The Los Angeles County Environmental Development Division issued a review letter in June of 1982, requesting that the Tentative Map be modified to reflect the consultant's recommendations for cut-slopes, and that some minor errors in the report be corrected. In July of 1982, GSI issued a response to the review letter recommending that "the slope" be redesigned at 2:1 (GSI, 1982b). The context of the discussion suggests that "the slope" refers to the new 100 foot high cut to be located south of Lot 1 rather than the re-located freeway cut. The re-located freeway cut does not appear to be discussed in the July GSI report

The July GSI report was reviewed by the Los Angeles County Environmental Development Division, and the Tentative Map was approved with a list of seven soils engineering conditions. Among these was a condition to *"Decide regarding design of existing freeway cut slope (for proposed Rondell St.).    Verify or amend recommendations for horizontal drains.    Make recommendations for elimination of potential surficial failures and maintenance problems"*.

Grading Plan Approval (1984)

Initial grading on Tract 33128 was conditionally approved by The County of Los Angeles in October of 1982 when bulk grading was approved to complete alluvial removals for four tracts, including Tract 33128. This was not an approval of the grading plan for Tract 33128.

In January of 1984, GSI submitted a geotechnical review of the 40-scale grading plan for Tract 33128 (GSI 1984a). This report reiterates the recommendation for horizontal drains in the regraded, 150-foot high freeway slope, but does not repeat the recommendation to redesign the slope at a 2:1 gradient. Instead the consultant presents a discussion that a 10-foot high crib wall will be needed at the top of the slope: *"This wall is necessary to provide the utility easements at the top of the slope for 30 inch waterline, 24 inch reclaimed waterline and Pacific Telephone and Telegraph Cable"*. It is not clear whether these utilities already existed or were proposed.

The 115-foot high cut-slope south of Lot 1 is discussed as remaining at a gradient of 1.5:1 and to be expected to expose favorable geologic conditions; however, preliminary stabilization recommendations are provided in the event stabilization becomes necessary. The northeast facing cut-slope proposed behind Lot 2 is discussed as possibly needing stabilization as well. Discussions of stability fill construction include special recommendations to construct even the finished fill slopes at gradients of 1.5:1.

Grading was underway under the bulk grading permit by at least March of 1984 (GSI, 1984b). Grading Plans involving several tracts (including Tract 33128) were approved by the County in June and September of 1984.

Change of Ownership and Consultant (1985)

GSI prepared a "Project Status" report in June of 1985 (GSI, 1985). This report was addressed to Cabot, Cabot and Forbes, rather than Currey-Riach. This appears to represent a change in ownership of the project, and appears to have been written after grading had been suspended for

some time. The report summarizes alluvial removals, subdrain installations, the need for settlement monitoring and provides some limited discussion of "corrective grading".

Pacific Soils Engineering, Inc. (PSE) appears to have replaced GSI shortly after the Project Status report was completed, as PSE issued "Grading Progress Report No. 1" in July of 1985 (PSE, 1985a). This report was also addressed to Cabot, Cabot & Forbes. Geologic and Soils Engineering Review Letters pertaining to this report were issued on August of 1985. These letters request clarification regarding the consultant of record for the project, and also indicated that numerous GSI reports referenced in the GSI "Project Status" report had never been submitted to the county. The review letter requests that these reports be submitted. The soils engineering review letter expressly requests: *"Either (a) the geotechnical consultant should state his agreement with the recommendations of the previous consultant and the approved grading plans or (b) the consultant should make other recommendations and revised plans should be submitted."* PSE provided a letter stating that they had been contracted to be the geotechnical consultant for the four tracts known as the "Lost Hills Business Center" (PSE 1985b). They state that they have reviewed the referenced reports by GSI. They neither specifically state agreement nor provide alternative recommendations as requested. Nearly 1½ years later, PSE prepared a letter in January of 1987 that expanded their earlier statement and accepted the findings of the earlier consultant (PSE 1987a).

Tract Grading (1987)

Tract 33128 was graded in conjunction with three other tracts. Based on Grading Progress Reports prepared by PSE, grading appears to have continued through 1987. Various statements in these reports indicate the following items of interest pertaining to the grading for Tract 33128:

- The slope south of Agoura Road, east of Lot 2 was constructed as a stabilization fill.
- The slope above Lot 2 was constructed as a cut-slope inclined at a gradient of 1½:1.
- The slope south of Agoura Road above Lot 1 was constructed as a cut-slope inclined at a gradient of 1½:1.

The first indication of difficulty with the high cut-slope being graded south of Agoura Road is noted in PSE Grading Progress Report No. 6 (PSE, 1986a). This report notes that removal of an old line belonging to the Las Virgenes Water District (LVWD) undercut portions of the slope. Remedial actions included replacing the upper 15 feet of the cut as compacted fill, and reconfiguring the upper slope to be below the base of the old trench. There are no maps or cross sections included with this report, so it is difficult to envision exactly what has been implemented. The lack of any discussion of the crib wall previously proposed to support the utility easement is notable.

Grading continued through the fall of 1987. PSE prepared a report in October that indicated that rough grading on Tract 33128 was complete and that there were no Restricted Use Areas on the tract (PSE, 1987b). We did not recover a specific review letter approving rough grading on Tract 33128 at that time. We did recover a letter dated November 20, 1987 from the Engineering Geology Group of Los Angeles County that approves the Final Map to be filed. We recovered no record that the horizontal drains recommended by GSI were installed.

Continuing Slope Instability (1988 – 1989)

In August of 1988, PSE prepared a report to address remedial work proposed for the north-facing cut slope above Agoura Road (PSE 1988a). The slope is reported to be experiencing difficulties between the toe and the lower bench between about 1100 and 1200 feet east of Liberty Canyon Road. The slope is affected and the curb and sidewalk are indicated to be experiencing cracking and uplift. The consultant attributes the distress to a combination of bedrock expansion in a sheared bentonite bed, and buildup of hydrostatic pressure behind the bed. PSE proposed minimization of irrigation water, repair of damaged drainage structures, and installation of horizontal drains into the face of the slope to extend behind the bentonite bed.

In December of 1988, PSE issued a report to address continuing distress in the slope (PSE 1988b). This report indicates that distress has advanced up the slope to the second terrace drain, that the hydraugers (horizontal drains) recommended in August had been installed, but had produced very little water, and that interaction between a toe of slope trench drain and a previously unrecognized fault was providing structural control of the displacement. They recommended remedial grading to remove and reconstruct the lower section of the slope. Upon review of the new plan of action, and clarification of a few technical items, the proposed remedial grading was approved by Los Angeles County in early February of 1989. GDI recovered no clear documentation of the remedial grading.

Staal, Gardner & Dunne, Inc. (SGD) was the geotechnical consultant for the Las Virgenes Water District (LVWD). In April of 1989, SGD issued a report discussing a February rupture in a 30-inch water line located on the ridge just behind the top of the Agoura Road slope. That report alludes to a landslide repair being performed at the toe of the slope, and draws a connection between the landslide repair at the toe of the slope, and the distress to the water line at the top of the 150 foot–high slope. This would be significant because it would indicate earth movement was translating through the full height of the slope rather than being limited to the lower two benches. SGD reports their understanding that PSE disputed the possible connection between the repair and the water line.

Evaluation and Debate (1989- 1991)

PSE issued a report in October of 1989 to document the slope repair. Therein they discount the notion of gross slope displacement or a connection between the repair and water line rupture. Throughout 1990, PSE produced a series of reports responding to comments from the County of Los Angeles geotechnical reviewers requesting additional data, additional analysis to demonstrate adequate factors of safety for the slope, and in particular requesting an unambiguous "Section 309" statement. This is a statement required in Los Angeles County to the effect that a development will be safe from landslide settlement and slippage, and will not adversely affect adjacent properties. The county requires that these statements be provided without qualifiers or caveats. PSE was reluctant to provide such a statement regarding the repaired slope.

Meanwhile, SGD installed three inclinometers into the slope and a series of survey points on the surface of the slope. SGD reports that these monitoring devices are indicating movement. PSE contends that the slope movements above the repair are the result of expansive soils and "rebound" of the highly deformed rock.

PSE issued a response report in October of 1990. This report appears to be a defense of the remedial grading completed in 1989 and includes discussions of shear strengths used in analyses, dewatering efforts, concerns held by PSE regarding the inclinometer installation and monitoring completed by SGD, and a variety of other topics. PSE also provides the Section 309 statement

requested by the county. A review letter by Los Angeles County issued on October 10 of 1990 titled "Final Grading Review" and referencing the PSE report of October 5, 1990 includes the "Action" finding that *"Plans and Reports are approved from a geotechnical standpoint"*. It is not clear exactly what is being approved in this letter. SGD issued their own review of the PSE report in which, among other issues, they contend that PSE seems unsure of the mechanism of distress affecting the slope, question PSE interpretations and conclusions regarding some of their subsurface exploration, question shear strengths used in analyses, and question the PSE understanding of groundwater conditions.

Regardless of the approval letter from Los Angeles County, the issue of the slope was clearly not resolved. In early 1991, the City of Agoura Hills requested independent review of the situation with the Agoura Road slope from Slosson and Associates and from Bing Yen and Associates, Inc. Both of these consultants expressed concern regarding the state of understanding of the mechanism of failure affecting the slope, and recommended that monitoring continue.

By July of 1991, additional distress was noted in the vicinity of the slope. PSE continued to attribute the distress to expansive soils and rebound. In April of 1991 SGD reported up to seven inches of movement on the western side of the slope.

Final Resolution of the Agoura Road Cut Slope (1991-1994)

These debates, investigations and reviews continued through May of 1993 when it appears that a plan to install piles along the toe of the slope along with a series of hydraugers was accepted by the County of Los Angeles. In June of 1994, PSE issued a report describing the installation of 60 cast-in-place, 36-inch diameter piles to a depth of 40 feet below grade, grading repair of several surficial failures, installation of 20 hydraugers in two tiers near the toe of the slope - to depths of 100 to 150 feet, and a number of other measures. PSE seems to continue to consider that the mechanism of distress to the slope is related to expansive soils and rebound. They consider that these mechanisms will continue to act on the slope, and as such once again express a reluctance to issue an unqualified statement relative to Section 309. The repair was approved by the County of Los Angeles in October of 1994 using on a negotiated Section 309 statement provided by PSE.

Provident Road Landslide (1993-2001)

The file appears to be incomplete regarding this failure and repair. One of the earliest documents recovered is a claim for damages filed against the County of Los Angeles dated May 26, 1993. The claim is filed on behalf of the residents at 27301 Provident Road in the City of Agoura Hills, and cites that *"Within the last twelve months, the subject property has been subject to landslides, earth related failure, subsidence, soil consolidation, surface and subsurface drainage problems and other problems with upslope soils"*.

This failure was complicated by the fact that it failed from the County of Los Angeles, into the City of Agoura Hills and also involved an area within the City of Calabasas. The earliest county review letter recovered regarding this site is dated February 22 1994, and cites geotechnical reports dated February 17, 1994 and "Addenda" dated January 14, 1993 and November 23, 1993. The nature of these "addenda" is not known, and in any event, none of these documents were recovered as part of our research.

Based on the information available, it appears that after the failure in 1993, emergency remedial grading was undertaken in 1994. Brief review of the in-grading reports indicates that landslide

movement continued as the grading was underway. Installation of hydraugers as part of this remedial work is inferred from comments in some of the Los Angeles County review letters, but the record of consultant reports appears to be incomplete and details of these installations are not known.

Renewed movement was reported in 1995. The consultant for the remedial grading returned in August of 1996 and performed additional studies and subsurface exploration to gain a better understanding of the subsurface conditions. In September of 1997, a different consultant prepared analyses of the subsurface conditions and slope stability. After review of the initial report and several response reports, a plan to complete the repair was approved in late 1998. Approvals were also required from the City of Agoura Hills, the City of Calabasas and the Las Virgenes Water District. No records of those approvals were recovered in our file review.

Grading for the repair began in October of 1999 and continued at least through March of 2000. Based on review of two "In-Grading Geotechnical Progress Reports" prepared by Ninyo & Moore (1999, 2000) we surmise that the repair included installation of a significant buttress with five levels of backdrains. Some sections of the fill face were constructed at gradients exceeding 1½:1 and were reinforced with geogrid. A total of seven hydraugers were originally planned for the repair, but this number was reduced to three during grading.

The record indicates that grading for this project was most likely completed in early to middle 2000. Several rounds of review and response indicate county concerns regarding the consultant's incorporation of field data obtained during grading into revised slope stability analyses, and also with reluctance on the part of the consultant to provide an acceptable "Section 309" statement. The grading was ultimately approved in January of 2001.

Approval and Development of Lot 1 (27349 Agoura Road), Tract 33128 (1999-2000)

PSE provided a Final Geologic Report for Lots 1 and 2 of Tract 33128 in March of 1990. The county appears to have rejected approval of these lots until issues with the Agoura Road cut-slope were resolved.

In March of 1999, Neblett & Associates (NA) submitted an evaluation of Lot 1 relative to construction of a warehouse building. That report included subsurface exploration to characterize the depth of fill and underlying alluvium, groundwater conditions and to support a limited liquefaction analysis. After a second submittal, the project appears to have been approved in February of 2000. A geotechnical report of grading to overexcavate a building footprint was submitted by Leighton and Associates (L&A) in July of 2000. Rough Grading was approved in November of 2000.

Approval and Development of Lot 2 (27200 Agoura Road), Tract 33128 (1996-1999?)

PSE provided a Final Geologic Report for Lots 1 and 2 of Tract 33128 in March of 1990. The county appears to have rejected approval of these lots until issues with the Agoura Road cut-slope were resolved.

In October of 1996, PSE submitted an evaluation of Lot 2 relative to construction of a two-story commercial building. That report notes that an oil well was capped and buried during grading of Lot 2. Based on the content of certain review letters, it appears that the disposition of this well developed as an issue during the review process. Similarly, there is an allusion to "pop-outs" in the upper part of the steep slope graded above the lot during the original tract grading. After

numerous rounds of review, the grading plan for the project was ultimately approved by Los Angeles County in May of 1998.

There are numerous review letters in early 1999 that specifically deny approval of rough grading on this lot for various reasons. Although the lot is currently occupied, we were not able to locate review letters from Los Angeles County specifically approving grading on this lot.

<center>Geologic Hazards Assessment</center>

The most pertinent element of the grading for Tract 33128 appears to be the slope failures along Agoura Road that delayed project approval for many years. Also pertinent are the landslide repair above Provident Road and (possibly) the cut-slope repair above Lot 2 and the oil well buried below Lot 2.

The landslide repair along Agoura Road was a very contentious undertaking. The primary consultant appears to have maintained the opinion that the distress of concern was not related to a slope failure per se, and to have designed the ultimate repair based largely upon subsurface conditions that were poorly understood at best. Despite the very expensive repair that was ultimately installed, there does not appear to have ever developed a consensus among the involved professionals regarding the most likely mechanism of failure. The slope was constructed at a steep gradient that the original (1982) consultant indicated would be problematic. Despite the repair; this fundamental deficiency remains, and in fact, some areas of the slope appear to be inclined at gradients even steeper than 1½:1.

Both of the landslide repairs (Agoura Road and Provident Road) include surface and subsurface drainage systems of various types. The graded repairs are dependent on these systems to avoid future failures; the systems must be protected and maintained in order to function properly. Based on a cursory review of the Agoura Road slope, we consider that these systems have not been maintained properly. Bench drains are blocked, uplifted, cracked and completely offset in some cases. Downdrains are bowed and lifted off the slope. Subsurface drain outlets are broken away from manifolds intended to control the discharge. GDI was not able to gain access to the Provident Road landslide repair to assess the condition of those drainage installations.

There is an existing failure on the Agoura Road cut-slope in roughly the same area of the original failure. Whether this is indicative of renewed movement deep in the slope, or simply the foreseeable result of constructing a fill slope at such a steep gradient is difficult to assess. In any case, the current failure will require significant grading in an area of highly complex subsurface conditions that remains under suspicion of deep slope instability.

Also of concern are references to difficulties during development of Lot 2. County review letters allude to pop-outs in the 1½:1 slope graded during the original tract grading. Again, the original consultant for the tract identified this slope as an area that might require stabilization. Ultimately the slope was graded as a cut. An oil well was discussed as having been buried during the original grading for the tract. Both of these issues will need to be researched in greater detail to understand what constraints they may impose.

## Conclusions

Tract 33128 carries significant administrative and/or technical challenges for the City to consider. Records concerning the parcels discussed in this report include hundreds of pages of information. While we have strived to provide sufficient and complete information to assist the City with a decision regarding annexation of these parcels, the task far exceeded the specified

budget and scope of work. Additional effort would be necessary to better understand the history and delineate technical issues associated with these parcels; however, GDI strongly recommends that this effort be completed should the City decide to move forward with annexation of either one.

Closure

This report was prepared for the exclusive use of the City of Agoura Hills for the purpose referenced project site. It may not contain sufficient information for other uses or the purpose of other parties. Any person using this report for bidding or construction purposes should perform such independent investigations as they deem necessary to satisfy themselves as to the surface and subsurface conditions to be used encountered and the procedures to be used in the performance of their work on this project. The services of the geotechnical consultant should not be construed to relieve the owner or contractor of their responsibilities or liabilities.

Professional judgments presented in this report are based on evaluations of the information available, on GDI's understanding of the required scope of work, and general experience in the field of geotechnical engineering. GDI does not guarantee the interpretations made, only that the geotechnical work and judgment rendered meet the standard of care of the geotechnical profession at this time. In view of the general geology and our limited observation of the site, the possibility of different conditions cannot be totally discounted. A review of geotechnical data (if available) obtained during previous investigations at the site and during grading and construction of existing developments may be performed if so desired.

## REFERENCES

California Division of Mines and Geology, Department of Conservation, 1998, "State of California Seismic Hazard Zones, Calabasas Quadrangle", Official Map released:February 1, 1998, scale 1:24,000.

Dibblee, T.W. and Ehrenspeck, H.E., ed., 1992, Geologic map of the Calabasas quadrangle, Los Angeles and Ventura Counties, California: Dibblee Geological Foundation, Dibblee Foundation Map DF-37, scale 1:24,000.

GeoDynamics, Inc.; 2017; Geotechnical Reconnaissance Report, City of Agoura Hills Annexation Options, Tracts 53100 and 331281; Consultant Report dated May 16, 2017; Project No. 17.00103.0217.

GeoSoils Inc.; 1982a; Preliminary Geotechnical Study, Tentative Tract 33128, Lost Hills, Calabasas, California; Consultant Report dated May 14, 1982; W. O. 1182-VN.

GeoSoils Inc.; 1982b; Addendum to Preliminary Geotechnical Study, Tentative Tract 33128, Lost Hills, Calabasas, California; Consultant Report dated July 9, 1982; W. O. 1182-VN.

GeoSoils Inc.; 1984a; Review of 1"=40' Scale Grading Plan, Tentative Tract 33128, Lost Hills, Calabasas, California; Consultant Report dated January 17, 1984; W. O. 1182-VN.

GeoSoils Inc.; 1984b; Progress Report #2, Tracts 32952, 32953, 32954, and 33128, Lost Hills, Calabasas, California; Consultant Report dated April 3, 1984; W. O. 1182-VN.

GeoSoils Inc.; 1985; Project Status, Lost Hills Business Park, Tracts 32952, 32953, 32954, and 33128, Calabasas, Los Angeles County, California; Consultant Report dated June 20, 1985; W. O. 1182-VN.

Leighton & Associates; 2000; As-Graded Geotechnical Report of Building Footprint Overexcavation, Lot 1, Tract 33128, Northeast Corner of Agoura and Liberty Canyon Roads, County of Los Angeles, California; Consultant Report dated July 7, 2000.

Neblett & Associates; 1999; Review of 40-Scale Grading Plan, Proposed Warehouse Building, Lot 1, Tract 33128, City of Calabasas, California; Consultant Report dated March 29, 1999; Project No. 128.

Ninyo & Moore; 1999; In-Grading Geotechnical Progress Report; Slope repair at 27301 Provident Road, and 4136 Jim Bowie Road, and 27250 Agoura Road, Tract 33128, City of Agoura Hills, City of Calabasas and County of Los Angeles, California, County Grading Plan Check No. 9710200004; Consultant Report dated December 7, 1999; Project No. 200939.02.

Ninyo & Moore; 2000; In-Grading Geotechnical Progress Report; Slope repair at 27301 Provident Road, and 4136 Jim Bowie Road, and 27250 Agoura Road, Tract 33128, City of Agoura Hills, City of Calabasas and County of Los Angeles, California, County Grading Plan Check No. 9710200004; Consultant Report dated March 10, 2000; Project No. 200939.02.

Pacific Soils Engineering Inc.; 1985a; Grading Progress Report No. 1, Tract Nos. 33128, 32952, 32953 and 32954, Lost Hills, County of Los Angeles, California; Consultant Report dated July 18, 1985; W. O. 10925.

Pacific Soils Engineering Inc.; 1985b; Geotechnical Responsibility, Tract Nos. 33128, 32952, 32953, and 32954, Calabasas Area, County of Los Angeles, California; Consultant Report dated July 26, 1985.

Pacific Soils Engineering Inc.; 1986a; Grading Progress Report No. 6, Tract Nos. 33128, 32952, 32953 and 32954, Lost Hills, County of Los Angeles, California; Consultant Report dated November 14, 1986; W. O. 10925.

Pacific Soils Engineering Inc.; 1987a; Addendum Remarks to Geotechnical Responsibility Letter dated 7/26/1985, Tract Nos. 33128, 32952, 32953, and 32954, Lost Hills-Agoura, County of Los Angeles, California; Consultant Report dated January 23, 1987: W. O. 10925.

Pacific Soils Engineering Inc.; 1987b; Tract 33128, Geologic Restricted Use, Agoura, County of Los Angeles, California; Consultant Report dated October 16, 1987: W. O. 10925.
Pacific Soils Engineering Inc.; 1988a; Results of Geotechnical Investigation and Recommendations for Remedial Work on North Facing 1-1/2:1 Cut Slope Above Agoura Road, County of Los Angeles, California; Consultant Report dated August 31, 1988: W. O. 10925.

Pacific Soils Engineering Inc.; 1988b; Recommendations for Remedial Repair of Distressed Slope on a Portion of North Facing Slope Above Agoura Road; Consultant Report dated December 1, 1988: W. O. 10925.

Pacific Soils Engineering Inc.; 1989a; Soil Engineering and Geologic Report, Lot 3, Tract No. 33128, Lost Hills Area, County of Los Angeles, California; Consultant Report dated October 2, 1989: W. O. 10925.

Pacific Soils Engineering Inc.; 1990a; Geotechnical Responses to Los Angeles County, Geolgoic and Soils Engineering Review Sheets dated 9-19-1990 and 9-20-1990; Consultant Report dated October 5, 1990: W. O. 10925.

Staal, Gardner & Dunne, Inc. 1989; LVMWD 30" Water Line Between Liberty Canyon and Lost Hills, Los Angeles County, California; Consultant Report dated April 12, 1989; Reference 89028.

Staal, Gardner & Dunne, Inc. 1991; Summary of Incllnometer and Survey Monument Monitoring of 1.5:1 Cut Slope on Agoura Road Between Liberty Canyon Road and Lost hills Road, Los Angeles County, California for the Period Between March 9, 1990 and April 1, 1991; consultant report dated April 23, 1991; Reference 89028.

Weber, 1984, Geology of the Calabasas-Agoura-Eastern Thousand Oaks Area, Los Angeles and Ventura Counties, California, California Division of Mines and Geology Open File Report 84-01, scale 1:24,000

## AERIAL PHOTOGRAPHS REVIEWED

| Date | Source | Flight | Frames | Scale |
|------|--------|--------|--------|-------|
| 1928 | Fairchild Aerial Surveys | C-300 | J-27, 28, & 39-41 | 1"=1,500 |
| 1954 | United States Dept. Agriculture | AXJ-14K | 31 - 34 | 1"=1,800 |
| 1-10-65 | Los Angeles County Flood Control District | 1933-01 | 156-158 | 1"=3,000 |
| 1973 | United States Government | U-2 73-036 | 39 & 40 | 1"=3,000 |
| 9-21-78 | United States Dept. Agriculture | 06111-178 | 24, 25, 51 & 52 | 1"=3,000 |
| 1-9-1990 | Unknown | Calabasas | 1 | 1'=1,000' |
| 11-29-94 | Pacific Western Aerial Surveys | PW VEN 11 | 45 & 46 | 1"=1,800 |



| | |
|---|---|
| **GeoDynamics, Inc.**<br>*Applied Earth Sciences* | **Project:** City of Agoura Hills<br>Annexation Project - 2018<br>**Project #:** 17.00103.0217<br>**Date:** March, 2018 |

Figure 1
Location Map



*Office of the City Clerk*
*30001 Ladyface Court*
*Agoura Hills, CA 91301*

# CERTIFICATION

STATE OF CALIFORNIA          )
COUNTY OF LOS ANGELES     ) SS
CITY OF AGOURA HILLS          )

I, Kimberly M. Rodrigues, City Clerk of the City of Agoura Hills, California, do hereby certify that the attached 13 pages of **Resolution No. 18-1885;** *A Resolution of Application by the City Council of the City of Agoura Hills, California, Requesting that the Local Agency Formation Commission of Los Angeles County take Proceedings to Amend the City's Sphere of Influence and Annex Certain Inhabited Territory to the City of Agoura Hills in the Liberty Canyon Area Totaling Approximately 84 Acres;* are a full, true and correct copy of the Resolution adopted by the City Council at its Regular Meeting held at 6:00 p.m. on Wednesday, November 14, 2018, and is duplicate original of the resolution on file and of record in the Office of the City Clerk.

Kimberly M. Rodrigues, MPPA, MMC
City Clerk

Dated:  November 15, 2018

RESOLUTION NO. 18-1885

**A RESOLUTION OF APPLICATION BY THE CITY COUNCIL OF THE CITY OF AGOURA HILLS, CALIFORNIA, REQUESTING THAT THE LOCAL AGENCY FORMATION COMMISSION OF LOS ANGELES COUNTY TAKE PROCEEDINGS TO AMEND THE CITY'S SPHERE OF INFLUENCE AND ANNEX CERTAIN INHABITED TERRITORY TO THE CITY OF AGOURA HILLS IN THE LIBERTY CANYON AREA TOTALING APPROXIMATELY 84 ACRES**

THE CITY COUNCIL OF THE CITY OF AGOURA HILLS DOES RESOLVE, DETERMINE, AND ORDER AS FOLLOWS:

**Section 1**.   The City Council of the City of Agoura Hills does hereby find, determine and declare that:

A.    The City of Agoura Hills ("City") desires to initiate proceedings pursuant to the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000, commencing with Section 56000 of the California Government Code, for a Sphere of Influence amendment and annexation of 83.63 acres of unincorporated County territory.

B.    The territory proposed to be annexed is inhabited, and a legal description and map of the boundaries, as set forth in Exhibits A and B, respectively, is attached and by this reference incorporated herein.

C.    Of the proposed territory, 57.24 acres are privately owned; 9.74 acres are public right-of-way; 7.12 acres are owned by the State of California Mountains Recreation and Conservation Authority; and 9.53 acres are owned by the State of California Department of Transportation.

D.    The subject territory consists of privately-owned land occupied by single-family residences and commercial uses; privately-owned vacant land; the public rights-of-way of segments of Agoura Road, Liberty Canyon Road, and Parkview Court; the public rights-of-way of Revere Way and Tiffany Court; and a portion of California Department of Transportation U.S. Highway 101 right-of-way.

E.    Although the affected territory is not currently within the Sphere of Influence of the City of Agoura Hills,  an application for a Sphere of Influence amendment will be filed concurrently with the application for annexation  with the Los Angeles County Local Agency Formation Commission ("LAFCO").

F.    The reasons for this proposed annexation are to create a logical and orderly extension of City boundaries; allow participation in municipal affairs; ensure compatibility of land uses in a portion of the territory occupied by commercial uses with

adjacent residential uses in the City of Agoura Hills; to ensure vehicle access to and from the City is maintained on Agoura Road in an emergency, and to accommodate the desire of inhabitants in a portion of the territory consisting of single-family residences to be annexed to the City of Agoura Hills.

      G.     Approval of the Resolution of Annexation is exempt from the California Environmental Quality Act (CEQA) pursuant to CEQA Guidelines Section 15319 Annexations of Existing Facilities and Lots for Exempt Facilities.

      H.     On October 31, 2018, the City gave written notice to LAFCO that the City Council would be considering the adoption of this proposed Resolution of Application of Annexation to LAFCO, requesting that it take proceedings for the annexation and Sphere of Influence amendment of the proposed territory in Liberty Canyon described above and identified in Exhibits A and B.

      I.     On November 14, 2018, the City Council held a duly noticed public meeting to consider the proposed application of annexation and Sphere of Influence amendment, at which time all persons interested in the proposed Resolution of Application of Annexation to LAFCO had the opportunity to and did comment on and testify about such items. After considering all the testimony and comments and the entire record concerning the proposed actions, the City Council approved Resolution No. 18-1885.

      **Section 2.**    The City Council of the City of Agoura Hills hereby: 1) approves this resolution; 2) authorizes the City Manager to initiate and submit an application of annexation and Sphere of Influence amendment to LAFCO; and 3) requests LAFCO to take all proceedings necessary to amend the City's Sphere of Influence and annex certain inhabited territory to the City of Agoura Hills totaling 83.63 acres in the Liberty Canyon area, as described in Exhibit A and shown on a map in Exhibit B, pursuant to and in the manner provided by the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000.

      **Section 3.**    The City Council hereby directs and authorizes the City Clerk of the City of Agoura Hills to forward a certified copy of this Resolution to the Executive Officer of the Local Agency Formation Commission of Los Angeles County.

      **PASSED, APPROVED AND ADOPTED** this 14th day of November 2018, by the following vote to wit:

     AYES:        (3)  Northrup, Buckley Weber, Schwarz
     NOES:       (2)  Koehler, Weber
     ABSENT:   (0)
     ABSTAIN:  (0)

BY:

_____
William D. Koehler, Mayor

ATTEST:

_____
Kimberly M. Rodrigues, City Clerk, MMC

APPROVED AS TO FORM:

_____
Candice K. Lee, City Attorney

EXHIBIT A

# EXHIBIT A

## ANNEXATION NO. 2018-12 TO THE CITY OF AGOURA HILLS

### AREA A DESCRIPTION:

THAT PORTION OF FRACTIONAL SECTION 25, TOWNSHIP 1 NORTH, RANGE 18 WEST, SAN BERNARDINO MERIDIAN, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WESTERLY LINE OF TRACT NO. 33128, RECORDED IN BOOK 1098, PAGES 93 THROUGH 97, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AT THE INTERSECTION OF SAID WESTERLY LINE WITH THE CENTERLINE OF AGOURA ROAD AS SHOWN ON SAID TRACT NO. 33128, SAID POINT LYING ON THE CITY LIMITS OF AGOURA HILLS; THENCE

1. NORTH 00°22'43" EAST ALONG SAID WESTERLY LINE OF TRACT NO. 33128 AND ITS NORTHERLY PROJECTION AND CITY LIMITS OF AGOURA HILLS 677.35 FEET TO AN INTERSECTION WITH THE CENTERLINE OF THE VENTURA FREEWAY (U.S. HIGHWAY 101) AS SHOWN ON CALTRANS R/W MAP NO. 4221-7-C; THENCE,

2. LEAVING SAID CITY LIMITS OF AGOURA HILLS, NORTH 80°15'34" EAST ALONG SAID CENTERLINE, 529.99 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHERLY AND HAVING A RADIUS OF 6000.00 FEET; THENCE

3. EASTERLY ALONG SAID CURVE OF THE CENTERLINE THROUGH A CENTRAL ANGLE OF 06°31'05", AN ARC DISTANCE OF 683.42 FEET TO THE POINT OF TANGENCY OF SAID CURVE; THENCE,

4. NORTH 86°46'34" EAST ALONG SAID CENTERLINE 967.03 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHERLY AND HAVING A RADIUS OF 3000.00 FEET; THENCE,

5. EASTERLY ALONG SAID CURVE OF THE CENTERLINE THROUGH A CENTRAL ANGLE OF 10°32'15", AN ARC DISTANCE OF 551.74 FEET TO AN INTERSECTION WITH THE CITY LIMITS OF CALABASAS; THENCE

6. LEAVING SAID CENTERLINE SOUTH 02°14'49" WEST ALONG SAID CALABASAS CITY LIMITS, 178.84 FEET; THENCE

7. NORTH 79°39'04" WEST ALONG SAID CALABASAS CITY LIMITS, 51.32 FEET; THENCE:

8. SOUTH 80°48'33" WEST ALONG SAID CALABASAS CITY LIMITS, 212.05 FEET; THENCE,

9. SOUTH 31°17'27" EAST ALONG SAID CALABASAS CITY LIMITS, 13.75 FEET TO THE BEGINNING OF A NON-TANGENT CURVE CONCAVE SOUTHERLY AND HAVING A RADIUS OF 1550.00 FEET, A RADIAL LINE TO SAID POINT BEARS NORTH 22°52'23" EAST; THENCE,

10. EASTERLY ALONG SAID CURVE AND SAID CALABASAS CITY LIMITS THROUGH A CENTRAL ANGLE OF 09°03'30", AN ARC DISTANCE OF 264.57 FEET TO THE POINT OF TANGENCY OF SAID CURVE; THENCE,

11. SOUTH 78°04'07" EAST ALONG SAID CALABASAS CITY LIMITS, 175.44 FEET TO THE EASTERLY LINE OF SAID TRACT NO. 33128. THENCE ALONG THE EASTERLY LINE OF SAID TRACT NO. 33128 AND THE CALABASAS CITY LIMITS

12. SOUTH 10°43'54" WEST 452.21 FEET TO THE SOUTHEAST CORNER OF SAID TRACT NO. 33128; THENCE ALONG THE SOUTHERLY LINE OF SAID TRACT NO. 33128 AND THE CALABASAS CITY LIMITS

13. NORTH 89°49'31" WEST, 1229.79 FEET TO THE NORTHEASTERLY CORNER OF TRACT NO. 29673 AS RECORDED IN BOOK 724, PAGES 73 THROUGH 74 OF MAPS, IN THE RECORDS OF SAID COUNTY, AT AN ANGLE POINT IN THE CALABASAS CITY LIMITS AND AN ANGLE POINT OF THE CITY LIMITS OF AGOURA HILLS. THENCE ALONG SAID SOUTHERLY LINE OF TRACT NO. 33128 AND THE CITY LIMITS OF AGOURA HILLS

14. SOUTH 89°45'34" WEST, 187.73 FEET TO THE SOUTHWEST CORNER OF SAID TRACT NO. 33128 AT AN ANGLE POINT OF THE CITY LIMITS OF AGOURA HILLS. THENCE ALONG THE WESTERLY LINE OF SAID TRACT NO. 33128 AND THE CITY LIMITS OF AGOURA HILLS

15. NORTH 00°03'40" EAST 151.83 FEET TO THE SAID POINT OF BEGINNING.

THE ABOVE DESCRIPTION IS DELINEATED ON SHEET 1 ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF.

CONTAINING 52.6 ACRES MORE OR LESS

### AREA C DESCRIPTION:

THAT PORTION OF SECTION 36, TOWNSHIP 1 NORTH, RANGE 18 WEST, SAN BERNARDINO MERIDIAN, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWESTERLY CORNER OF TRACT NO. 34827, RECORDED IN BOOK 1101, PAGES 21 THROUGH 23, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AT AN ANGLE POINT OF THE CITY LIMITS OF AGOURA HILLS; THENCE,

1. SOUTH 00°47'31" EAST ALONG THE NORTHERLY LINE OF SAID TRACT NO. 34827 AND SAID CITY LIMITS OF AGOURA HILLS 132.03 FEET TO THE NORTHEASTERLY CORNER OF SAID TRACT NO. 34827 AT THE BEGINNING OF A NON-TANGENT CURVE IN THE EASTERLY BOUNDARY LINE OF SAID TRACT CONCAVE WESTERLY AND HAVING A RADIUS OF 180.52 FEET, A RADIAL LINE TO SAID POINT BEARS SOUTH 89°07'46" EAST; THENCE

2. LEAVING SAID CITY LIMITS OF AGOURA HILLS, SOUTHERLY ALONG SAID CURVE IN THE EASTERLY BOUNDARY LINE THROUGH A CENTRAL ANGLE OF 02°14'31", AN ARC DISTANCE OF 71.31 FEET TO THE POINT OF TANGENCY OF SAID CURVE; THENCE,

3. SOUTH 01°11'41" EAST ALONG SAID EASTERLY BOUNDARY LINE  328.71 FEET TO THE SOUTHEASTERLY CORNER OF SAID TRACT NO. 34827; THENCE

4. NORTH 86°49'31" WEST ALONG THE SOUTHERLY BOUNDARY LINE OF SAID TRACT NO. 34827, 5.91 FEET TO THE NORTHEASTERLY CORNER OF TRACT NO. 45282, RECORDED IN BOOK 1101, PAGES 43 THROUGH 45, INCLUSIVE OF MAPS; THENCE,

5. SOUTH 03°11'39" WEST ALONG THE EASTERLY BOUNDARY LINE OF SAID TRACT NO. 45282, 533.79 FEET TO THE SOUTHEASTERLY CORNER OF SAID TRACT NO. 45282; THENCE,

6. NORTH 86°49'59" WEST ALONG THE SOUTHERLY BOUNDARY LINE OF SAID TRACT NO. 45282, 130.68 FEET TO THE SOUTHWESTERLY CORNER OF SAID TRACT; THENCE,

7. NORTH 03°12'29" EAST ALONG THE WESTERLY BOUNDARY LINE OF SAID TRACT NO. 45282 AND THE WESTERLY BOUNDARY LINE OF SAID TRACT NO. 34827, 932.94 FEET TO THE SAID POINT OF BEGINNING.

THE ABOVE DESCRIPTION IS DELINEATED ON SHEET 1 ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF.

CONTAINING 20.1 ACRES MORE OR LESS

### PORTION OF LIBERTY CANYON ROAD DESCRIPTION:

THAT PORTION OF SECTION 36, TOWNSHIP 1 NORTH, RANGE 18 WEST, SAN BERNARDINO MERIDIAN, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF TRACT NO. 45282, RECORDED IN BOOK 1101, PAGES 43 THROUGH 45, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AT AN ANGLE POINT IN THE CITY LIMITS OF AGOURA HILLS. THENCE LEAVING SAID CITY LIMITS OF AGOURA HILLS ALONG THE EASTERLY BOUNDARY LINE OF SAID TRACT NO. 45282:

1. NORTH 3°11'39" EAST 585.79 FEET TO THE NORTHEASTERLY CORNER OF SAID TRACT NO. 45282 AT AN INTERSECTION WITH THE SOUTHERLY BOUNDARY LINE OF SAID TRACT NO. 34827, RECORDED IN BOOK 1101, PAGES 21 THROUGH 23 INCLUSIVE OF MAPS. THENCE ALONG SAID SOUTHERLY BOUNDARY LINE

2. SOUTH 86°49'31" EAST 5.91 FEET TO THE SOUTHEASTERLY CORNER OF SAID TRACT NO. 34827, THENCE ALONG THE EASTERLY BOUNDARY LINE OF SAID TRACT NO. 34827:

3. NORTH 01°11'41" WEST 328.71 FEET TO THE POINT OF CURVATURE OF A TANGENT CURVE ON THE EASTERLY BOUNDARY LINE OF SAID TRACT CONCAVE WESTERLY AND HAVING A RADIUS OF 1822.50 FEET, THENCE ALONG SAID CURVE

4. NORTHERLY THROUGH A CENTRAL ANGLE OF 02°14'31", AN ARC DISTANCE OF 71.31 FEET TO THE NORTHEASTERLY CORNER OF SAID TRACT NO. 34827 AND AN INTERSECTION WITH THE CITY LIMITS OF AGOURA HILLS. THENCE ALONG SAID CITY LIMITS OF AGOURA HILLS AND THE EASTERLY PROJECTION OF THE NORTHERLY BOUNDARY LINE OF SAID TRACT NO. 34827:

5. SOUTH 86°49'31" EAST, 79.25 FEET TO AN INTERSECTION WITH THE WESTERLY BOUNDARY LINE OF TRACT NO. 29675, RECORDED IN BOOK 728, PAGES 96 THROUGH 98 INCLUSIVE OF MAPS, AT AN ANGLE POINT IN SAID CITY LIMITS OF AGOURA HILLS AND THE BEGINNING OF A NON-TANGENT CURVE IN THE WESTERLY BOUNDARY LINE OF SAID TRACT NO. 29675 CONCAVE WESTERLY AND HAVING A RADIUS OF 1697.50 FEET, A RADIAL LINE TO SAID POINT BEARS SOUTH 88°57'34" EAST. THENCE ALONG SAID CURVE OF THE WESTERLY BOUNDARY LINE OF TRACT NO. 29675 AND SAID CITY LIMITS OF AGOURA HILLS:

6. SOUTHERLY THROUGH A CENTRAL ANGLE OF 02°09'15", AN ARC DISTANCE OF 21.34 FEET TO THE POINT OF TANGENCY OF SAID CURVE. THENCE CONTINUING ALONG THE WESTERLY BOUNDARY LINE OF TRACT NO. 29675 AND SAID CITY LIMITS OF AGOURA HILLS

7. SOUTH 3°11'45" WEST, 961.81 FEET TO THE SOUTHWESTERLY CORNER OF SAID TRACT NO. 29675. THENCE CONTINUING ALONG SAID CITY LIMITS OF AGOURA HILLS ON THE EASTERLY PROJECTION OF THE SOUTHERLY LINE OF SAID TRACT NO. 29675:

8. NORTH 86°51'30" WEST, 37.45 FEET TO THE SAID POINT OF BEGINNING.

THE ABOVE DESCRIPTION IS DELINEATED ON SHEET 1 ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF.

CONTAINING 1.68 ACRES MORE OR LESS



DATED: 11/1/2018



| PREPARED BY: | ANNEX AREA DESCRIPTIONS<br>ANNEXATION NO. 2018-12<br>TO THE CITY OF AGOURA HILLS | PREPARED FOR:<br>CITY OF AGOURA HILLS | JOB NO. 18-4748 |
| --- | --- | --- | --- |
| Chris nelson & Associates, inc. | | | SCALE: |
| | | | DATE: NOV. 2018 |
| | | | DRAFTED: THH |

SHEET 1 OF 2 SHEETS

# EXHIBIT A-1

## ANNEXATION NO. 2018-12 TO THE CITY OF AGOURA HILLS

### AREA A DESCRIPTION:

THAT PORTION OF FRACTIONAL SECTION 25, TOWNSHIP 1 NORTH, RANGE 18 WEST, SAN BERNARDINO MERIDIAN, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

**BEGINNING** AT A POINT IN THE WESTERLY LINE OF TRACT NO. 33128, RECORDED IN BOOK 1099, PAGES 94 THROUGH 97, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AT THE INTERSECTION OF SAID WESTERLY LINE WITH THE CENTERLINE OF AGOURA ROAD AS SHOWN ON SAID TRACT NO. 33128, SAID POINT LYING ON THE CITY LIMITS OF AGOURA HILLS, THENCE;

1. NORTH 00°22'43" EAST ALONG SAID WESTERLY LINE OF TRACT NO. 33128 AND ITS NORTHERLY PROJECTION AND CITY LIMITS OF AGOURA HILLS, 627.35 FEET TO AN INTERSECTION WITH THE CENTERLINE OF THE VENTURA FREEWAY (U.S. HIGHWAY 101) AS SHOWN ON CALTRANS R/W MAP NO. F2217-7, THENCE;

2. LEAVING SAID CITY LIMITS OF AGOURA HILLS, NORTH 80°12'34" EAST ALONG SAID CENTERLINE, 505.69 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHERLY AND HAVING A RADIUS OF 6000.00 FEET, THENCE;

3. EASTERLY ALONG SAID CURVE OF THE CENTERLINE THROUGH A CENTRAL ANGLE OF 06°31'00", AN ARC DISTANCE OF 682.42 FEET TO THE POINT OF TANGENCY OF SAID CURVE, THENCE;

4. NORTH 86°43'34" EAST ALONG SAID CENTERLINE, 907.03 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHERLY AND HAVING A RADIUS OF 3000.00 FEET, THENCE;

5. EASTERLY ALONG SAID CURVE OF THE CENTERLINE THROUGH A CENTRAL ANGLE OF 10°32'15", AN ARC DISTANCE OF 551.74 FEET TO AN INTERSECTION WITH THE CITY LIMITS OF CALABASAS, THENCE;

6. LEAVING SAID CENTERLINE SOUTH 00°14'49" WEST ALONG SAID CALABASAS CITY LIMITS, 179.84 FEET, THENCE;

7. NORTH 78°35'04" WEST ALONG SAID CALABASAS CITY LIMITS, 51.32 FEET, THENCE;

8. SOUTH 82°48'33" WEST ALONG SAID CALABASAS CITY LIMITS, 312.01 FEET, THENCE;

9. SOUTH 7°11'27" EAST ALONG SAID CALABASAS CITY LIMITS, 10.00 FEET TO THE BEGINNING OF A NON-TANGENT CURVE CONCAVE SOUTHERLY AND HAVING A RADIUS OF 1550.00 FEET, A RADIAL LINE TO SAID POINT BEARS NORTH 02°07'29" EAST, THENCE;

10. EASTERLY ALONG SAID CURVE AND SAID CALABASAS CITY LIMITS THROUGH A CENTRAL ANGLE OF 09°23'30", AN ARC DISTANCE OF 254.07 FEET TO THE POINT OF TANGENCY OF SAID CURVE, THENCE;

11. SOUTH 78°29'01" EAST ALONG SAID CALABASAS CITY LIMITS, 108.44 FEET TO THE EASTERLY LINE OF SAID TRACT NO. 33128, THENCE ALONG THE EASTERLY LINE OF SAID TRACT NO. 33128 AND THE CALABASAS CITY LIMITS;

12. SOUTH 00°13'54" WEST, 753.01 FEET TO THE SOUTHEAST CORNER OF SAID TRACT NO. 33128, THENCE ALONG THE SOUTHERLY LINE OF SAID TRACT NO. 33128 AND THE CALABASAS CITY LIMITS;

13. NORTH 89°49'21" WEST, 1319.76 FEET TO THE NORTHEASTERLY CORNER OF TRACT NO. 29674 AS RECORDED IN BOOK 734, PAGES 71 THROUGH 74 OF MAPS, IN THE RECORDS OF SAID COUNTY, AT AN ANGLE POINT IN THE CALABASAS CITY LIMITS AND AN ANGLE POINT OF THE CITY LIMITS OF AGOURA HILLS, THENCE ALONG SAID SOUTHERLY LINE OF TRACT NO. 33128 AND THE CITY LIMITS OF AGOURA HILLS;

14. SOUTH 89°41'27" WEST, 1307.25 FEET TO THE SOUTHWEST CORNER OF SAID TRACT NO. 33128 AT AN ANGLE POINT OF SAID CITY LIMITS OF AGOURA HILLS, THENCE ALONG THE WESTERLY LINE OF SAID TRACT NO. 33128 AND THE CITY LIMITS OF AGOURA HILLS;

15. NORTH 00°22'43" EAST, 101.85 FEET TO THE SAID **POINT OF BEGINNING**.

THE ABOVE DESCRIPTION IS DELINEATED ON SHEET 1 ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF.

CONTAINING 52.8 ACRES MORE OR LESS



DATED: 11/1/2018

NOTE: SEE SHEET 2 OF 2 FOR SKETCH.



| PREPARED BY: | AREA A | PREPARED FOR: | JOB NO. 18-4748 |
|---|---|---|---|
| **chris nelson & Associates, Inc.** PROFESSIONAL LAND SURVEYORS 31236 Via Colinas Suite H,  Westlake Village, CA. 91362 Voice: 818.991.1040   Fax 818.991.0614 | LOCATED IN SECTION 25, T. 1 N., R. 18 W., S.B.B.M. COUNTY OF LOS ANGELES, STATE OF CALIFORNIA | **CITY OF AGOURA HILLS** | SCALE: DATE: NOV. 2018 SHEET: 1 OF 2 |

*SHEET 1 OF 2 SHEETS*

# EXHIBIT A-2

## ANNEXATION NO. 2018-12 TO THE CITY OF AGOURA HILLS

### AREA C DESCRIPTION:

THAT PORTION OF SECTION 36, TOWNSHIP 1 NORTH, RANGE 18 WEST, SAN BERNARDINO MERIDIAN, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

**BEGINNING** AT THE NORTHWESTERLY CORNER OF TRACT NO. 34827, RECORDED IN BOOK 1101, PAGES 21 THROUGH 23, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AT AN ANGLE POINT IN THE CITY LIMITS OF AGOURA HILLS, THENCE;

1. SOUTH 86°49'31" EAST ALONG THE NORTHERLY LINE OF SAID TRACT NO. 34827 AND SAID CITY LIMITS OF AGOURA HILLS, 1312.80 FEET TO THE NORTHEASTERLY CORNER OF SAID TRACT NO. 34827 AT THE BEGINNING OF A NON-TANGENT CURVE IN THE EASTERLY BOUNDARY LINE OF SAID TRACT CONCAVE WESTERLY AND HAVING A RADIUS OF 1822.50 FEET, A RADIAL LINE TO SAID POINT BEARS SOUTH 89°02'48" EAST, THENCE;

2. LEAVING SAID CITY LIMITS OF AGOURA HILLS, SOUTHERLY ALONG SAID CURVE IN THE EASTERLY BOUNDARY LINE THROUGH A CENTRAL ANGLE OF 02°14'31", AN ARC DISTANCE OF 71.31 FEET TO THE POINT OF TANGENCY OF SAID CURVE, THENCE;

3. SOUTH 03°11'43" WEST ALONG SAID EASTERLY BOUNDARY LINE , 328.71 FEET TO THE SOUTHEASTERLY CORNER OF SAID TRACT NO. 34827 , THENCE;

4. NORTH 86°49'31" WEST ALONG THE SOUTHERLY BOUNDARY LINE OF SAID TRACT NO. 34827, 5.51 FEET TO THE  NORTHEASTERLY CORNER OF TRACT NO. 45262, RECORDED IN BOOK 1187, PAGES 46 THROUGH 50, INCLUSIVE OF MAPS, THENCE;

5. SOUTH 03°11'36" WEST ALONG THE EASTERLY BOUNDARY  LINE OF SAID TRACT NO. 45262, 535.79 FEET TO THE SOUTHEASTERLY CORNER OF SAID TRACT NO. 45262, THENCE;

6. NORTH 86°40'59" WEST ALONG THE SOUTHERLY BOUNDARY LINE OF SAID TRACT NO. 45262, 1308.65 FEET TO THE  SOUTHWESTERLY CORNER OF SAID TRACT, THENCE;

7. NORTH 3°10'29" EAST ALONG THE WESTERLY BOUNDARY LINE OF SAID TRACT NO. 45262 AND THE WESTERLY BOUNDARY LINE OF SAID TRACT NO. 34827, 932.54 FEET TO THE SAID **POINT OF BEGINNING**.

THE ABOVE DESCRIPTION IS DELINEATED ON SHEET 1 ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF.

CONTAINING 28.1 ACRES MORE OR LESS



DATED:<u>11/1/2018</u>

NOTE: SEE SHEET 2 OF 2 FOR SKETCH.



| PREPARED BY: | AREA C | PREPARED FOR: | JOB NO. 18-4748 |
|---|---|---|---|
| **chris nelson** & Associates, Inc. PROFESSIONAL LAND SURVEYORS 31228 Via Colinas Suite H.  Westlake Village, CA 91362 Voice: 818.991.1040   Fax: 818.991.0814 | LOCATED IN SECTION 36, T. 1 N., R. 18 W., S.B.B.M. COUNTY OF LOS ANGELES, STATE OF CALIFORNIA | *CITY OF AGOURA HILLS* | SCALE: DATE: NOV. 2018 SHEET: 1 OF 2 |

SHEET 1 OF 2 SHEETS

# EXHIBIT A-3

## ANNEXATION NO. 2018-12 TO THE CITY OF AGOURA HILLS

### PORTION OF LIBERTY CANYON ROAD DESCRIPTION:

THAT PORTION OF SECTION 36, TOWNSHIP 1 NORTH, RANGE 18 WEST, SAN BERNARDINO MERIDIAN, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

**BEGINNING** AT THE SOUTHEASTERLY CORNER OF TRACT NO. 45262, RECORDED IN BOOK 1187, PAGES 46 THROUGH 50, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AT AN ANGLE POINT IN THE CITY LIMITS OF AGOURA HILLS, THENCE LEAVING SAID CITY LIMITS OF AGOURA HILLS ALONG THE EASTERLY BOUNDARY LINE OF SAID TRACT NO. 45262;

1. NORTH 3°11'36" EAST, 535.79 FEET TO THE NORTHEASTERLY CORNER OF SAID TRACT NO. 45262 AT AN INTERSECTION WITH THE SOUTHERLY BOUNDARY LINE OF TRACT NO. 34827, RECORDED IN BOOK 1101, PAGES 21 THROUGH 23, INCLUSIVE OF MAPS, THENCE ALONG SAID SOUTHERLY BOUNDARY LINE;

2. SOUTH 86°49'31" EAST, 5.51 FEET TO THE SOUTHEASTERLY CORNER OF SAID TRACT NO. 34827, THENCE ALONG THE EASTERLY BOUNDARY LINE OF SAID TRACT NO. 34827;

3. NORTH 03°11'43" EAST, 328.71 FEET TO THE POINT OF CURVATURE OF A TANGENT CURVE IN THE EASTERLY BOUNDARY LINE OF SAID TRACT CONCAVE WESTERLY AND HAVING A RADIUS OF 1822.50 FEET, THENCE ALONG SAID CURVE ;

4. NORTHERLY THROUGH A CENTRAL ANGLE OF 02°14'31", AN ARC DISTANCE OF 71.31 FEET TO THE NORTHEASTERLY CORNER OF SAID TRACT NO. 34827 AND AN INTERSECTION WITH THE CITY LIMITS OF AGOURA HILLS, THENCE ALONG SAID CITY LIMITS OF AGOURA HILLS AND THE EASTERLY PROJECTION OF THE NORTHERLY BOUNDARY LINE OF SAID TRACT NO. 34827;

5. SOUTH 86°49'31" EAST, 75.05 FEET TO AN INTERSECTION WITH THE WESTERLY BOUNDARY LINE OF TRACT NO. 29675, RECORDED IN BOOK 738, PAGES 96 THROUGH 99, INCLUSIVE OF MAPS, AT AN ANGLE POINT IN SAID CITY LIMITS OF AGOURA HILLS AND THE BEGINNING OF A NON-TANGENT CURVE IN THE WESTERLY BOUNDARY LINE OF SAID TRACT NO. 29675 CONCAVE WESTERLY AND HAVING A RADIUS OF 1897.50 FEET, A RADIAL LINE TO SAID POINT BEARS SOUTH 88°57'34" EAST, THENCE ALONG SAID CURVE OF THE WESTERLY BOUNDARY LINE OF TRACT NO. 29675 AND SAID CITY LIMITS OF AGOURA HILLS;

6. SOUTHERLY THROUGH A CENTRAL ANGLE OF 02°09'15", AN ARC DISTANCE OF 71.34 FEET TO THE POINT OF TANGENCY OF SAID CURVE, THENCE CONTINUING ALONG THE WESTERLY BOUNDARY LINE OF TRACT NO. 29675 AND SAID CITY LIMITS OF AGOURA HILLS;

7. SOUTH 3°11'43" WEST, 864.31 FEET TO THE SOUTHWESTERLY CORNER OF SAID TRACT NO. 29675, THENCE CONTINUING ALONG SAID CITY LIMITS OF AGOURA HILLS ON THE EASTERLY PROJECTION OF THE SOUTHERLY LINE OF SAID TRACT NO. 29675;

8. NORTH 86°41'30" WEST, 80.45 FEET TO THE SAID **POINT OF BEGINNING**.

THE ABOVE DESCRIPTION IS DELINEATED ON SHEET 1 ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF.

CONTAINING 1.68 ACRES, MORE OR LESS.



DATED:11/1/2018

NOTE: SEE SHEET 2 OF 2 FOR SKETCH.



PREPARED BY:

**chris nelson & Associates, inc.**
PROFESSIONAL LAND SURVEYORS
31230 Via Colinas Suite H, Westlake Village, CA. 91362
Voice: 818.991.1040   Fax 818.991.0614

### LIBERTY CANYON ROAD AREA
LOCATED IN SECTION 36, T. 1 N., R. 18 W., S.B.B.M.
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

PREPARED FOR:

*CITY OF AGOURA HILLS*

| | |
|---|---|
| JOB NO. 18-4748 | |
| SCALE: 1" = 400 | |
| DATE: NOV. 2018 | |
| SHEET: 1 OF 2 | |

EXHIBIT B



## VICINITY MAP
### NO SCALE

# EXHIBIT B
### ANNEXATION NO. 2018-12 TO THE CITY OF AGOURA HILLS

AREA A
52.8 ACRES. +/-

LIBERTY CANYON ROAD
1.68 ACRES. +/-

AREA C
28.1 ACRES. +/-

SECTION 25
TOWNSHIP 1 NORTH, RANGE 18 WEST
SAN BERNARDINO MERIDIAN

SECTION 36
TOWNSHIP 1 NORTH, RANGE 18 WEST
SAN BERNARDINO MERIDIAN

## NOTES:
1. THIS IS NOT A MAP OF A BOUNDARY SURVEY. NO PROPERTY CORNERS HAVE BEEN SET AS A PART OF THIS WORK.
2. THE SUBJECT PROPERTY LINES SHOWN HEREON ARE COMPILED FROM RECORD DATA AND ARE FOR GRAPHICAL PURPOSES ONLY AND SHOULD NOT BE USED FOR CONSTRUCTION TIES. CHRIS NELSON & ASSOCIATES DID NOT PERFORM A BOUNDARY RESOLUTION. A FIELD SURVEY MAY INDICATE DIFFERENCES IN ACTUAL LOCATIONS.
3. THIS MAP WAS PREPARED WITHOUT THE BENEFIT OF A TITLE REPORT. EXISTING EASEMENTS (IF ANY) ARE NOT SHOWN HEREON.

DATED: 11/6/2018

GRAPHIC SCALE
SCALE: 1" = 600'

## LEGEND:
— AREA BOUNDARY
— RIGHT-OF-WAY LINE
— PARCEL LINE



PREPARED BY:
**Chris nelson**
**& Associates, Inc.**
PROFESSIONAL LAND SURVEYORS
31236 Via Colinas Suite H,  Westlake Village, CA. 91362
Voice: 818.991.1040    Fax 818.991.0614

AREA LOCATION MAP
ANNEXATION NO. 2018-12
TO THE CITY OF AGOURA HILLS

PREPARED FOR:
CITY OF AGOURA HILLS

JOB NO. 18-4748
SCALE: 1" = 600'
DATE: NOV. 2018
DRAFTED: TMH



EXHIBIT B-1

ANNEXATION NO. 2018-12 TO THE CITY OF AGOURA HILLS



SHEET 2 OF 2 SHEETS

# EXHIBIT B-2

## ANNEXATION NO. 2018-12 TO THE CITY OF AGOURA HILLS

VICINITY MAP
NO SCALE

SECTION 26
SECTION 25
CITY OF AGOURA HILLS
COUNTRY GLEN ROAD
LIBERTY CANYON ROAD

SECTION 35
SECTION 36
TRACT 31551
M.B. 1029, P. 96

UNINCORPORATED AREA

S86°49'31"E 1312.80'
TARRYTOWN

POINT OF BEGINNING

TRACT 34827
M.B. 1101, P. 21

REVERE WAY

CITY OF AGOURA HILLS
PATRICK HENRY PLACE

TRACT 29675
M.B. 738, P. 96

AREA C
28.1 ACRES, +/-

TRACT 45262
M.B. 1187, P. 46

UNINCORPORATED AREA

N86°40'59"W 1308.65'

SECTION 36
TOWNSHIP 1 NORTH
RANGE 18 WEST
S.B.B.M.

TRACT 53100
M.B. 1331, P. 35
UNINCORPORATED AREA

PARK VISTA ROAD

TRACT 34274
M.B. 1183, P. 64

## NOTES:
1. THE BOUNDARY SHOWN HEREON IS BASED ON TRACT NO. 34827, BK. 1101, PG. 21-23 AND TRACT NO. 45262, BK. 1187, PG. 46-50, O.R.
2. THIS MAP WAS PREPARED WITHOUT THE BENEFIT OF ANY TITLE REPORT. EXISTING EASEMENTS (IF ANY) ARE NOT SHOWN HEREON.
3. SEE SHEET 1 OF 2 FOR DESCRIPTION.

N

PROFESSIONAL LAND SURVEYOR
CHRIS D. NELSON
No. 6385
STATE OF CALIFORNIA

DATED: 11/6/2018

### CURVE TABLE
Δ = 02°14'31" R = 1822.50' L = 71.31'

### LINE TABLE
| L1 | S3°11'43"W | 328.71' |
|----|-----------|---------|
| L2 | N86°49'31"W | 5.51' |
| L3 | S3°11'36"W | 535.79' |

GRAPHIC SCALE
SCALE: 1" = 400'

400' 200' 0' 200' 400' 800'

### LEGEND:
◇ DENOTES NUMBERED COURSE ON ATTACHED DESCRIPTION.
━━━ AREA BOUNDARY
─── RIGHT-OF-WAY LINE
─── PARCEL LINE



PREPARED BY:
**chris nelson & Associates, Inc.**
PROFESSIONAL LAND SURVEYORS
31230 Via Colinas Suite H, Westlake Village, CA. 91362
Voice: 818.991.1040    Fax: 818.991.0614

AREA C
LOCATED IN SECTION 36, T. 1 N., R. 18 W., S.B.B.M.
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

PREPARED FOR:
*CITY OF AGOURA HILLS*

| JOB NO. 18-4748 |
| SCALE: 1" = 400' |
| DATE: NOV. 2018 |
| SHEET: 2 OF 2 |

SHEET 2 OF 2 SHEETS

# EXHIBIT B-3

## ANNEXATION NO. 2018-12 TO THE CITY OF AGOURA HILLS

VICINITY MAP
NO SCALE

POINT OF BEGINNING

1.88 ACRES +/-

SECTION 36
TOWNSHIP 1 NORTH
RANGE 18 WEST
S.B.B.M.

UNINCORPORATED AREA

| LINE TABLE | | |
|---|---|---|
| L1 | N3°11'36"E | 535.79' |
| L2 | S86°49'31"E | 5.51' |
| L3 | N3°11'43"E | 328.71' |
| L4 | S86°49'31"E | 75.05' |
| L5 | S3°11'43"W | 864.31' |
| L6 | N86°41'30"W | 80.45' |

| CURVE TABLE | | | |
|---|---|---|---|
| C1 | Δ = 0°14'31" | R = 1822.50' | L = 71.31' |
| C2 | Δ = 0°09'15" | R = 1897.50' | L = 71.34' |

N

| 400' 200' 0' 200' 400' | 800' |

GRAPHIC SCALE
SCALE: 1" = 400'

### NOTES:
1. THE BOUNDARY SHOWN HEREON IS BASED ON TRACT NO. 34827, BK. 1101, PG. 21-23, TRACT NO. 29675, BK. 738, PG. 96-99, TRACT NO. 34274, BK. 1109, PG. 64-67, TRACT NO. 53100, BK. 1331, PG. 35-41 AND TRACT NO. 45262, BK. 1187, PG. 46-50, O.R.
2. THIS MAP WAS PREPARED WITHOUT THE BENEFIT OF ANY TITLE REPORT. EXISTING EASEMENTS (IF ANY) ARE NOT SHOWN HEREON.
3. SEE SHEET 1 OF 2 FOR DESCRIPTION.

### LEGEND:
◇ DENOTES NUMBERED COURSE ON ATTACHED DESCRIPTION.
━━ AREA BOUNDARY
━━ RIGHT-OF-WAY LINE
━━ PARCEL LINE
L.A.C.F.C.D.  LOS ANGELES COUNTY FLOOD CONTROL DISTRICT

PROFESSIONAL LAND SURVEYOR
CHRIS D. NELSON
No. 6385
STATE OF CALIFORNIA

DATED: 11/1/2018

PREPARED BY:

chris nelson
& Associates, inc.
PROFESSIONAL LAND SURVEYORS
31238 Via Colinas Suite H, Westlake Village, CA, 91362
Voice: 818.991.1040   Fax: 818.991.0614

LIBERTY CANYON ROAD AREA
LOCATED IN SECTION 36, T. 1 N., R. 18 W., S.B.B.M.
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

PREPARED FOR:
CITY OF AGOURA HILLS

JOB NO. 18-4748
SCALE: 1" = 400'
DATE: NOV. 2018
SHEET: 2 OF 2