3838123-81

RECORDING REQUESTED BY

CC AT THE REQUEST OF CONTINENTAL LAND TITLE CO.

AND WHEN RECORDED MAIL TO

First Interstate Mortgage Company
245 South Los Robles Avenue
Pasadena, California 91109
Att: S. M. Weiskopf

FEE $ 21.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST
## AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST is made _____ May 2 _____ 19 85 by _____

CC&F LOST HILLS PROPERTIES, A CALIFORNIA LIMITED PARTNERSHIP

herein called Trustor to **FIRST INTERSTATE MORTGAGE COMPANY** a California corporation, herein called Trustee for

**FIRST INTERSTATE MORTGAGE COMPANY** a California corporation, herein called Beneficiary whose office is at

245 South Los Robles Avenue, Pasadena, California 91109

TRUSTOR DOES HEREBY IRREVOCABLY GRANT, TRANSFER AND ASSIGN to Trustee in trust with power of sale all that

certain property in _____ County of Los Angeles

California described as

SEE LEGAL DESCRIPTION MARKED EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

```
RECORDED IN OFFICIAL RECORDS
     RECORDER'S OFFICE
    LOS ANGELES COUNTY
        CALIFORNIA
21  MIN.    3 PM MAY 24 1985
    PAST
```

including all buildings and improvements now or hereafter thereon and all appurtenances, easements, water and water rights, pumps and pumping plants and all shares of stock evidencing the same, all machinery, equipment, appliances and fixtures for generating or distributing air, water, heat, electricity, light, fuel or refrigeration or for ventilating or sanitary purposes, or for the exclusion of vermin or insects, or for the removal of dust, refuse or garbage, all wall beds, wall safes, built-in furniture and installations, shelving, lockers, partitions, door stops, vaults, elevators, dumb waiters, awnings, window shades, venetian blinds, light fixtures, fire hoses and brackets and boxes for the same, fire sprinklers, alarm systems, drapery rods and brackets, screens, linoleum, carpets, plumbing, laundry tubs and trays, ice boxes, refrigerators, heating units, stoves, water heaters, incinerators, communication systems and all installations for which any such building is specially designed, all of said items whether now or hereafter installed, being declared to be for all purposes of this deed of trust a part of the realty, the specific enumerations herein not excluding the general.

FOR THE PURPOSE OF SECURING in such order of priority as Beneficiary may determine, payment of the indebtedness evidenced by a promissory

note of Trustor of even date herewith for $31,600,000.00 _____ payable to Beneficiary or order, and any and all modifications or renewals thereof, the interest on such indebtedness according to the terms of said note, all other sums (with interest as herein provided) becoming due or payable to Beneficiary or Trustee pursuant to the terms hereof, and such additional loans when evidenced by additional note or notes reciting the same to be secured hereby with interest thereon as Beneficiary at its sole discretion may advance to any Trustor or his successor in interest from time to time and for the purpose of securing performance of every obligation contained in this instrument, in any such note, in the application for the loan hereby secured, in any agreement by Trustor with Beneficiary for the construction or repair of improvements on said property, in any instrument now or hereafter evidencing or securing any indebtedness hereby secured, and in any and all agreements supplemental agreements, or other instruments of security executed by Trustor as of even date herewith or at any time subsequent to the date hereof for the purpose of further securing any indebtedness hereby secured, or any part thereof, or for the purpose of supplementing or amending this deed of trust or any instrument secured hereby.

3838123-81

## A. TO PROTECT AND MAINTAIN THIS DEED OF TRUST, TRUSTOR AGREES THAT:

1. Trustor will pay when due all monies secured hereby with interest in gold money of the United States. Trustor will pay when due all taxes and assessments affecting said property or any part thereof (including assessments on water stock) and upon request deliver to Beneficiary receipts therefor. Trustor will keep all of said property insured with loss payable to Beneficiary against fire, flood, business interruption and such other hazards and in such companies on such forms and in such amounts for such hazard as Beneficiary from time to time may require, and deliver all policies, renewals, and premium receipts thereof to Beneficiary at least thirty days before the effective date thereof; and do all things necessary to obtain prompt settlement for such loss or claim covered by any such policy. Without waiving or curing any default in any obligation hereby secured, Beneficiary may deduct and retain from the proceeds of such insurance the amount of its expense incurred by it in connection with such collection, and the balance, may at its option, the balance of such proceeds on such proper and proportion as it may determine (a) to Trustor, or (b) on the cost of restoration or repair or alteration of any or all of said property to Beneficiary's satisfaction, or (c) on account of any item of indebtedness or obligation hereby secured. Any monies released to Trustor or paid or applied on the cost of restoration, repair or alteration shall in no event be deemed a payment on the indebtedness hereby secured. Upon sale of any or said property for default in performance of any obligation hereby secured, all unexpired hazard insurance on the property, so sold, shall pass to and inure to the benefit of the purchaser of such property at such sale, and Beneficiary is hereby irrevocably authorized to assign in Trustor's name to such purchaser all such policies which may be amended or rewritten to show the interest of such purchaser.

2. Trustor will keep said property in good condition and repair and permit no waste or deterioration thereof, will perform at such acts thereon as may be reasonably necessary, in the opinion of Beneficiary under the circumstances of its character and use. Will keep all buildings free of termites, dry rot, wood borers and all destructive pests, and will keep all plants and lawns in good condition.

3. Trustor will comply with all laws, ordinances of Governments, regulations affecting said property, or requiring any alteration or improvement thereof and will permit no violation as to said property or any such law, ordinance or governmental regulation, nor of any covenant, condition or restriction affecting said property. Trustor will permit or suffer no extraordinary repairs, removals or demolition of or structural change in any building before equipment or other improvements on said property without prior written consent of Beneficiary, and will promptly and in good workmanlike manner and in conformity with plans and specifications approved by Beneficiary, complete any improvement which may be commenced, and restore any which may be damaged or destroyed hereon. Trustor will pay when due all claims for work performed or materials furnished on or in connection with all or any part of said property, and all charges, liens or encumbrances thereon which are or appear to be prior or superior hereto.

4. Upon default in performance of any obligation hereby secured or herein set forth, Beneficiary, or at its request, Trustee, at any time and from time to time, with or without notice to or demand upon Trustor, may perform the same or cause the same to be performed and in so doing may do any such acts or expend such sums as Beneficiary in its sole discretion deems advisable without incurring any obligation so to do or releasing Trustor from any obligation and without thereby waiving or curing any default, Beneficiary and Trustee are each hereby authorized for such purposes to enter upon said property. Trustor will pay on demand all sums so expended and any reasonable cost so incurred with interest thereon from date of expenditure at a rate equal to two percent (2%) per annum in excess of the rate set forth in the Note secured hereby.

5. Trustor will appear in and defend all actions or proceedings purporting to affect the security hereof or any right or power of Beneficiary or Trustee hereunder, provided that Beneficiary and Trustee, or either of them, may appear in and defend any such action or proceeding and Beneficiary is authorized to pay, purchase or compromise on behalf of Trustor any such incumbrance or claim which in its judgment appears prior to or paramount to affect the security hereof or to be superior hereto. Trustor will pay on demand all sums so expended and any reasonable cost so incurred, with interest thereon from the date of expenditure at a rate equal to two percent (2%) per annum in excess of the rate set forth in the Note secured hereby. Trustor will promptly pay all fees, costs and expenses of this trust, or which Beneficiary or Trustee may incur in connection with any action or proceeding to foreclose this deed of trust to enforce any obligation hereby secured or to prevent or redress any breach thereof.

6. In the event that any payment is not made within fifteen (15) days from the date the same is due. Trustor agrees to pay a delinquent charge of four cents (4¢) for each dollar so overdue unless the charge is waived by the Beneficiary.

## B. IT IS MUTUALLY AGREED THAT

1. All compensation and every award of damages in connection with any condemnation for public use of or injury to all or any part of said property is hereby assigned and shall be paid to Beneficiary, which may use, pay or apply such monies in the same manner and with the same effect as above provided for disposition of insurance proceeds. Trustor agrees in this connection to execute such further assignments as Beneficiary may require.

2. In the event of the passage after the date hereof of any law of California deducting from the value of real property for taxation purposes, any lien thereon or changing in any way the laws now in force for the taxation of deeds of trust or debts secured thereby for State or local purposes or the manner of the collection of any such taxes so as to affect this deed of trust or note, the whole of the principal sum secured by this deed of trust together with accrued interest thereon, at the option of the Beneficiary, without demand or notice shall immediately become due and payable.

3. Beneficiary's acceptance of late payment of any sum hereby secured shall not constitute a waiver of its right to require prompt payment when due of all other sums so secured or to declare default as herein provided for any failure so to pay, or to proceed with foreclosure or sale for any other default then existing. Beneficiary's acceptance of partial payment of any sum hereby secured after default shall not cure such default or affect any notice of default heretofore recorded unless such notice of default is expressly revoked in writing by Beneficiary.

4. At any time or from time to time without liability therefor and without notice, and without releasing or otherwise affecting the liability of any person for payment of any indebtedness hereby secured (a) Beneficiary, at its sole discretion may extend the time for or release any person now or hereafter liable for payment of any or all of such indebtedness, or accept or release additional security therefor, or subordinate the lien or charge hereof; or (b) Trustee upon written request of Beneficiary and presentation of said note and any additional loan notes and this deed of trust for endorsement may reconvey any part of said property, consent to the making of any map or plat thereof, join in granting any easement thereon, or join in any such agreement of extension or subordination.

5. Upon written request of Beneficiary and surrender of said note and any additional loan notes and this deed of trust to Trustee for cancellation and upon payment to Trustee of its fees and expenses, Trustee shall reconvey without warranty the property then held hereunder. The recitals in any reconveyance shall be conclusive proof of the truthfulness thereof and the grantee in any reconveyance may be described as "the person or persons legally entitled thereto".

6. If Trustor or any successor in interest becomes bankrupt or insolvent, or if any petition is filed by or against him under any bankruptcy or insolvency law, or a receiver is appointed for his property, or he makes an assignment for the benefit of creditors, then Beneficiary, without notice or demand, may declare all indebtedness secured hereby immediately due and payable.

7. Upon default in payment of any indebtedness or performance of any obligation hereby secured, Beneficiary, without demand on Trustor, may declare all sums hereby secured immediately due and payable including any prepayment charge payable under the terms of the promissory note secured hereby, by executing and recording or by causing the Trustee to execute and record a notice of default and election to cause the property to be sold to satisfy the obligations secured hereby, or by the commencement of an appropriate action to foreclose this deed of trust by any other appropriate manner. After delivery to Trustee of notice of default and demand for sale and after at least three months have elapsed after recordation of a notice of default, Trustee shall give notice of sale as then required by law and, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place fixed by the preceding postponement. Any person, including Trustee, Trustor or Beneficiary, may purchase at such sale. Upon such sale by Trustee it shall deliver to such purchaser its deed conveying the property so sold but without any covenant or warranty expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Upon sale by Trustee, and after deducting all costs, expense and fees of Trustee and of this trust, Trustee shall apply the proceeds of sale to the payment of the principal indebtedness hereby secured whether evidenced by said note or otherwise or representing advances made or cost or expense paid or incurred by Beneficiary under the or any other instrument evidencing or securing any indebtedness hereby secured and to the payment of all other sums then secured hereby, including interest as provided in said note or in this or any other instrument in such order, as Beneficiary shall direct; and then the remainder, if any, shall be paid to the person or persons legally entitled thereto.

8. Upon default in payment of any indebtedness or performance of any obligation hereby secured, Beneficiary at any time, without notice or demand or regard to the adequacy of any security for the indebtedness and obligations hereby secured, in person or by any agent or employee or by a receiver appointed by court, may enter upon and take possession of all or any part of said property, and Trustor shall on demand surrender possession thereof to Beneficiary, and Beneficiary may in its own name rent, lease, operate and maintain the same or any part thereof to such extent as Beneficiary deems advisable, and sue for or otherwise collect any or all of the rents, issues and profits thereof including those past due and unpaid. Trustor hereby presently assigns to Beneficiary, absolutely and irregardless of possession of said property, all rents and other monies now due or hereafter to become due under any lease or agreement or otherwise for the use or occupation of all or any part of said property, now existing or hereafter made, reserving to Trustor only the right, prior to any such default, to collect and retain such rents as they become due, but not otherwise. Trustor shall or demand execute such further assignments to Beneficiary of any or all such leases agreements, rents or monies as Beneficiary may require and deliver to Beneficiary a full executed original of any or all such leases or agreements. Beneficiary shall apply in such order and proportion and upon such items of the indebtedness hereby secured as Beneficiary may determine, the amount of all such rents and monies so actually collected by Beneficiary without less all reasonable cost or expense paid or incurred by it in making such collection or in renting, leasing, operating or maintaining said property less fees for collecting said rentals not exceeding 5% of the sums collected which Beneficiary may pay to itself or its agent. No act or acts referred to in this paragraph shall cure or waive any default or notice of default hereunder, or invalidate any act done pursuant to such notice, or any cause of action to foreclose this deed of trust.

9. In this deed of trust (a) the term Beneficiary shall mean the owner and holder including pledgees of the note hereby secured, whether or not named as Beneficiary herein, (b) terms such as "herein" and "hereunder" refer to the entire instrument; (c) when of the words "cost" or "expense" shall include but shall not be limited to cost of title evidence and reasonable fees for attorneys for Beneficiary or Trustee, (d) the enumeration of certain particulars as included, when general language shall not restrict the scope or affect the generality of such language, and (e) personal pronouns shall be construed as though of the gender and number required by the context, and the singular shall include the plural and the plural the singular as may be required by the context.

10. Should Beneficiary hold any other or additional security for the payment of any indebtedness or performance of any obligation hereby secured, its sale or foreclosure upon any default in such payment or performance, in the sole discretion of Beneficiary, may be prior or subsequent to, or joined or otherwise contemporaneous with any sale or foreclosure hereunder. In addition to the rights herein specifically conferred, Beneficiary at any time and from time to time may exercise any right or remedy now or hereafter given by law to beneficiaries under deeds of trust generally or to the holders of any obligation of the kind hereby secured.

11. Every obligation of Trustor hereunder is joint and several and recourse for deficiency after sale hereunder may be had against any other property of any Trustor personally liable therefor, however, creating a present lien or charge thereon. So far as laxulity may be Trustor waives every statute of limitation applicable at any time to any action or proceeding to enforce any obligation hereby secured or to prevent or redress any breach thereof. This deed of trust shall apply to bind and inure to the benefit of all parties hereto, their heirs, devisees, legatees, executors, administrators, successors and assigns. Any Trustor who is a married person hereby agrees that recourse may be had against their separate property but without hereby creating a present lien thereon for any deficiency after sale of the property hereunder.

12. Beneficiary at any time and from time to time by instrument in writing may substitute and appoint a successor or successors (either corporate or individual) to any trustee named herein or previously substituted hereunder, which instrument when executed acknowledged and recorded in the office of the Recorder of the county in which said property is situated shall be conclusive proof of the proper substitution and appointment of each such successor trustee or trustees who shall then have all the title powers, duties and rights of the predecessor trustee without the necessity of any conveyance from such predecessor Trustee. shall not be obligated to notify any party hereto of pending sale under any other deed of trust or unless brought by Trustee of any action or proceeding in which Trustor Beneficiary or Trustee shall be a party Trustee accepts this trust when this deed of trust duly executed and acknowledged is made a public record as provided by law.

13. A charge not to exceed that provided by the California Code may be made for any statement regarding the obligation secured by this deed of trust.

14. This deed of trust has been executed and delivered in the State of California and is to be construed and enforced according to and governed by the laws of the State of California.

15. Trustor agrees at any time and from time to time, upon receipt of written request from the Beneficiary therefor to furnish to Beneficiary detailed statements in writing of the income, rents, profits, and operating expenses of the premises, and the names of the occupants and tenants in possession, together with the expiration dates of their leases and full information regarding all rental and occupancy agreements, and the rents provided for by such leases and rental and occupancy agreements and such other information regarding the premises and their use as may be requested by Beneficiary. Trustor also agrees that within 120 days following the end of each fiscal year of Trustor Trustor shall furnish to Beneficiary a balance sheet and statement of earnings for the Trustor certified by the Trustor or the Chief Financial Officer of the Trustor."

16. Unless specifically relieved of the obligation so to do in writing by Beneficiary, Trustor agrees to pay to Beneficiary in installments on the day on which monthly payments of principal and interest are due under said note sufficient funds (as estimated by Beneficiary from time to time) to permit the Beneficiary to pay when due the next maturing taxes, assessments and hazard insurance premiums. Any excess over the amount required for such purposes shall be held for future use applied to any indebtedness hereby secured or refunded to Trustor at Beneficiary's option and Trustor agrees to make up any deficit on demand. Such collection of installments to cover taxes assessments and insurance premiums may be suspended or terminated by Beneficiary at any time upon notice sent to the then owner. this arrangement being solely for the added protection of Beneficiary, and it is agreed that it entails no responsibility on the Beneficiary's part except to apply any sums actually received by it as herein provided, and no interest shall be payable on any sums held by Beneficiary hereunder. Trustor agrees that any conveyance of the interest in the real property shall have the effect of transferring to the grantee all of Trustor's interest in and all his rights to any funds accumulated hereunder without any further act on the part of Trustor.

17. Trustor agrees that Trustor will not cancel modify or alter or accept the surrender of any existing or future lease of all or any part of said property without first obtaining the written consent of Beneficiary.

18. See Rider to Deed of Trust marked Exhibit "B" attached hereto and made a part hereof.

C  If a mailing address is set forth opposite his signature hereto and not otherwise the undersigned Trustor shall be deemed to have requested that a copy of any notice of default and of any notice of sale hereunder be mailed to him at such address

| MAILING ADDRESS FOR NOTICES | SIGNATURE OF TRUSTOR |
|---|---|
|  | CC&F LOST HILLS PROPERTIES, |
|  | A CALIFORNIA LIMITED PARTNERSHIP |
|  | BY CC&F LOST HILLS INVESTMENT COMPANY, |
| 911 Wilshire Boulevard, Suite 1010 | a California General Partnership |
|  | its General Partner |
| Los Angeles, California 90017 | BY  CC&F WEST LIMITED PARTNERSHIP, |
|  | a Delaware Limited Partnership, |
|  | its managing General Partner |
|  |  |
|  | BY  CC&F INVESTORS, INC., |
|  | a Delaware corporation, |
|  | its General Partner |
|  | By: _____ |
|  | Michael C. Bousfield, Vice Pres. |

85 591033

STATE OF CALIFORNIA } ss
County of Los Angeles)

On this 22nd day of May, 19 85, before me, the undersigned a Notary Public in and for said County and State, personally appeared James H. Kenyon and Michael C. Brasfield, personally known to me (or proved to me on the basis of satisfactory evidence) to be the ~~Executive~~ Vice-President and _____ Secretary of CC&F INVESTORS INC., a corporation and who are also personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument on behalf of said Corporation, and acknowledged to me that such corporation executed the within instrument pursuant to its By-laws or a resolution of its Board of Directors, on behalf of CC&F WEST LIMITED PARTNERSHIP, a partnership, which said Partnership is personally known to me (or proved to me on the basis of satisfactory evidence) to be one of the partners of CC&F LOST HILLS INVESTMENT COMPANY, a partnership, which said partnership is personally known to me (or proved to me on the basis of satisfactory evidence) to be one of the partners of CC&F LOST HILLS PROPERTIES, said Corporation being personally known to me (or proved to me on the basis of satisfactory evidence) to be one of the partners of CC&F WEST LIMITED PARTNERSHIP, and acknowledged to me that said Corporation executed the within instrument as one of the partners of said Partnership CC&F WEST LIMITED PARTNERSHIP, said Partnership personally known to me (or proved to me on the basis of satisfactory evidence) to be one of the partners of CC&F LOST HILLS INVESTMENT COMPANY, said Partnership being personally known to me (or proved to me on the basis of satisfactory evidence) to be one of the partners of CC&F LOST HILLS PROPERTIES, the partnership that executed the within instrument, and acknowledged to me that such partnership (CC&F WEST LIMITED PARTNERSHIP) executed the same as such partner and (CC&F LOST HILLS INVESTMENT COMPANY) executed the same as such partners and that suchpartnership (CC&F LOST HILLS PROPERTIES) executed the same.

Witness my hand and
Official Seal

OFFICIAL SEAL
MARTHA L CANNON
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My comm. expires AUG 19, 1985

For Notary Seal or Stamp

Martha Cannon
NOTARY PUBLIC IN AND
FOR SAID COUNTY AND STATE

85 591033

85 591033

EXHIBIT 8AL

Those portions of Government Lots 3 and 4 in Section 30, Township
1 North, Range 17 West, San Bernardino Meridian and the Southwest
quarter of said Section 30 and the South half of Section 25, Township
1 North, Range 18 West, San Bernardino according to the Official Plat
thereof in the County of Los Angeles, State of California described as
a whole as follows:

Beginning at a point in the Northerly line of said Southwest quarter
of Section 30 distant thereon North 89° 59' 56" West 605.26 feet
from the Northeast corner of said Southwest quarter; thence South
31° 48' 40" West 330.90 feet to a point in a non-tangent curve concave
Westerly having a radius of 55.00 feet a radial line of said curve to
said point bears North 31° 48' 40" East; thence Southerly along said
curve through a central angle of 104° 24' 25", a distance of 100.22 feet;
thence tangent to said curve South 46° 13' 05" West 50.00 feet to the
beginning of tangent curve concave Southeasterly having a radius of
90.00 feet; thence Southwesterly along said curve through a central
angle of 14° 24' 25", a distance of 22.63 feet; thence tangent to said
curve South 31° 48' 40" West 313.49 feet to the beginning of a tangent
curve concave Northwesterly having a radius of 738.00 feet; thence
Southwesterly along said curve through a central angle of 41° 46' 18",
a distance of 538.04 feet; thence tangent to said curve South 73° 34' 58"
West 38.75 feet to the beginning of a tangent curve concave Southeasterly
having a radius of 27.00 feet; thence Southwesterly along said curve
through a central angle of 89° 33' 29", a distance of 42.20 feet to the
beginning of a reverse curve concave Westerly having a radius of 2725.00
feet; thence South'ly along said curve through a central angle of
0° 13' 28", a distance of 10.67 feet; thence normal to said curve South
74° 14' 57" West 100.00 feet to a point in a non-tangent curve concave
Southwesterly having a radius of 27.00 feet, a radial line of said curve
to said point bears North 74° 14' 57" East; thence Northwesterly along
said curve through a central angle of 90° 30' 29", a distance of 42.65
feet to the beginning of a reverse curve concave Northwesterly having a
radius of 2447.00 feet; thence Southwesterly along said curve through
a central angle of 6° 04' 31" a distance of 259.46 feet; thence tangent
to said curve South 79° 48' 59" West 139.89 feet to the beginning of a
tangent curve concave Southerly having a radius of 1253.00 feet; thence
Westerly along said curve through a central angle of 12° 30' 12", a
distance of 273.43 feet; thence tangent to said curve South 67° 18' 47"
West 5.56 feet to the beginning of a tangent curve concave Southeasterly
having a radius of 13.00 feet; thence Southwesterly along said curve
through a central angle of 86° 18' 32", a distance of 19.58 feet; thence
tangent to said curve South 18° 59' 45" East 5.81 feet; thence South
71° 00' 15" West 64.00 feet to a point in a non-tangent curve concave
Southwesterly having a radius of 13.00 feet; a radial line of said
curve to said point bears North 71° 00' 15" East; thence Northwesterly
along said curve through a central angle of 93° 41' 28", a distance of
21.26 feet; thence tangent to said curve South 67° 18' 47" West 80.66 feet
to the beginning of a tangent curve concave Northerly having a radius
of 847.00 feet; thence Westerly along said curve through a central angle
of 39° 37' 24", a distance of 585.75 feet to the beginning of a compound
curve concave Northerly having a radius of 597.00 feet; thence Westerly
along said curve through a central angle of 2° 50' 38", a distance of
29.63 feet to the beginning of a reverse curve concave Southeasterly
having a radius of 13.00 feet; thence Southwesterly along said curve
through a central angle of 85° 46' 10", a distance of 19.46 feet;
thence North 65° 59' 21" West 64.00 feet; thence South 24° 00' 39"
West 45.41 feet to the beginning of a tangent curve concave Easterly
having a radius of 502.00 feet; thence Southerly along said curve
through a central angle of 26° 10' 25", a distance of 229.32 feet;
thence normal to said curve South 87° 50' 14" West 412.95 feet; thence
North 52° 51' 58" West 217.00 feet; thence South 73° 41' 10" West 106.80
feet; thence North 56° 41' 56" West 144.02 feet; thence North 0° 13' 54"
East 77.81 feet; thence North 89° 49' 21" West 1319.76 feet to the
Northeasterly corner of Tract No. 29674, as per map recorded in Book 734
Pages 71 to 74 inclusive of Maps, Records of said County; thence Westerly
along said Northerly line to the Southeasterly line of Rondell Avenue,
60 feet wide, as described in deed to the County of Los Angeles recorded

(1 of 2 pages)

85 591033

in Book 6235 Page 140 of Deeds, Records of said County; thence Northeasterly along said Southeasterly line to the Southerly line of the land described in deed to the State of California recorded in Book D-2553 Page 736, Official Records; thence Easterly along said Southerly line and the Southerly line of the land described to said State of California in deeds recorded in Book D-6310 Page 288 and in Book D-6081 Page 248, both of Official Records to said Northerly line of the Southwest quarter of Section 30; thence Easterly along said Northerly line to the point of beginning.

RIDER

This Rider to that certain Deed of Trust dated as of May 2, 1985 by and between CC&F LOST HILLS PROPERTIES, as Trustor and FIRST INTERSTATE MORTGAGE COMPANY as Trustee and Beneficiary, is hereby attached to the Deed of Trust, and in the event of any conflict between the terms of this Rider and the terms of the Deed of Trust, the term of this Rider shall control.

B.19.  Notwithstanding anything to the contrary which may be contained in this Deed of Trust or in the Note secured hereby of even date herewith, or in the Building Loan Agreement dated concurrently herewith, by acceptance of this Deed of Trust Beneficiary agrees:

   (a) That prior to executing any right of acceleration of the indebtedness secured hereby, or proceeding for foreclosure of this Deed of Trust, Beneficiary shall give written notice to Trustor of any default upon which such right of acceleration, or right of foreclosure, is dependent, and shall allow Trustor the following time periods for correction of such default, and in the event of correction of such default within the time allowed, the Beneficiary shall not accelerate the indebtedness or foreclose this Deed of Trust based upon such default.

      (i) if the default relates to the nonpayment of money: fifteen (15) days;

      (ii) if the default relates to the existence of any condition or state of affairs herein defined as a default other than the nonpayment of money: thirty (30) days, and if such covenant cannot reasonably be performed, or condition or state of affairs corrected within a thirty (30) day period, any additional time period during which trustor is diligently engaged in good faith in performance of such covenant or correction of such condition or state of affairs.

   (b) In the event Beneficiary fails to give such written notice as is required under Section B.19(a) above, Beneficiary shall not be liable to any person for damages arising out of such failure to give notice, and Trustor's sole remedy in this event shall be to receive proper written notice under the provisions of Section B.19(a). Any actions taken by Beneficiary to pursue any of its remedies under this Deed of Trust during the time that Beneficiary has failed to give proper notice under Section B.19(a) hereof shall be null and void and of no effect.

B.20.  That the net proceeds of any fire, extended coverage or other casualty insurance, or the award from any condemnation resulting from any loss in, to, or on said premises and received by Beneficiary, shall be devoted, to the extent required, to the restoration of said premises, provided that the disbursements of such proceeds or award by Beneficiary shall be made on such terms and conditions as Beneficiary may reasonably require, and provided that no default shall then exist under this Deed of Trust or the Note secured hereby.

B.21.  Notwithstanding the provisions of this Deed of Trust, whenever Trustor may be deemed to be in default because of any assessment, charge, lien, suit, claim or litigation respecting the mortgaged property, Trustor shall have the right, during a period of fifteen (15) days from the date it has notice of such assessment, charge, lien, suit, claim or litigation, in which to provide Beneficiary with a bond acceptable to Beneficiary of such assessment, charge, lien, suit, claim or litigation, so that Trustor may contest any amount in contention or dispute.

B.22.  Where the terms hereof require the granting of consent by Beneficiary, such consent shall not be unreasonably withheld or delayed.

85 591033

(1 of 3 pages)

B.23. Notwithstanding the provisions of this Deed of Trust, it is understood and agreed that any records, books of account, financial statements, and the like required to be delivered by Trustor to Beneficiary shall relate solely to the mortgaged property.

B.24. Notwithstanding the provisions of this Deed of Trust, it is understood and agreed that recourse in the event of a default under this Deed of Trust shall be limited solely to the mortgaged property, except pursuant to the terms of that certain Guarantee Pertaining to Payment of Interest, Taxes and Maintenance, executed by CC&F Investment Company Limited Partnership and the Guarantee Pertaining to Payment of Interest, Taxes and Maintenance and Agreement and Guarantee of Completion, executed by Trustor in connection with the indebtedness secured by this Deed of Trust. Neither Trustor, the partners of Trustor, nor the officer or partners of such partners shall be held personally liable for any of the covenants or indebtedness evidenced by the Note or this Deed of Trust.

B.25. Paragraph B(2) of the Deed of Trust is hereby deleted in its entirety.

B.26. In executing, delivering and accepting this Trust Deed and the Note hereby secured, it is mutually agreed by Trustor and Beneficiary that so long as no default shall occur in the terms of this Trust Deed and said Note and parcelization of the subject property is in compliance with the Subdivision Map Act of California, Trustor, or its successor in interest shall be entitled to demand and receive and Beneficiary shall furnish Requests for Partial Reconveyances of portions of the property herein described upon additional payment for each lot thereof in accordance with the following schedule, plus accrued interest on amounts so paid to date of such payments, together with cost of prepare on and execution of the Partial Reconveyances demanded:

SCHEDULE

The release prices shall be in accordance with the following.

| Tentative Tract 33128 | RELEASE PRICE |
|---|---|
| Lot 1 | $3,104,904 |
| 2 | 1,086,690 |
| 3 (greenbelt) | 0 |

| Tentative Tract 32952 | |
|---|---|
| Lot 1 | $1,644,456 |
| 2 | 1,960,662 |
| 3 | 2,276,934 |
| 4 | 4,346,892 |
| 5 | 413,952 |
| 6 | 3,803,514 |
| 7 | 2,676,564 |
| 8 | 1,914,660 |
| 9 | 1,034,946 |
| 10 | 1,172,952 |
| 11 | 1,466,190 |
| 12 | 1,172,952 |
| 13 | 1,707,684 |
| 14 | 1,241,922 |
| 15 | 1,172,952 |
| 16 | 1,517,934 |
| 17 (civic center site) | 0 |

All such payments shall be applied upon the unpaid principal debt. Neither the acceptance of any such payments nor the issuance of such Requests for Partial Reconveyances shall affect the liability of Trustor or the lien of this Trust Deed upon the remainder of the property herein described for the full amount of the indebtedness remaining unpaid.

85 591033

(2 of 3 pages)



In addition to the foregoing, Trustor agrees to pay to Beneficiary additional fees on a cumulative basis, said fees not to be less than the total amount of $3,828,923.00, described as follows:

(a) no fee will be charged for the first 382,892 square feet of land being released;

(b) a premium computed at $1.20 per square foot of the second 638,154 square feet of land being released;

(c) a premium at $1.75 per square foot of the third 1,021,046 square feet of land being released; and

(d) a premium computed at $2.50 per square foot of the fourth 510,524 square feet of land being released.

(e) a premium computed at $1.50 per square foot for any additional land being released.

Notwithstanding the fact that the release prices set forth above include a premium in excess of each Lot's prorata share of the total principal balance of the Loan, under no circumstances shall Trustor pay a total amount of release prices which is in excess of the outstanding principal balance of the Loan, plus any accrued interest and the costs of preparation of the partial reconveyances.



85 591033