**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLINTON BROWN,<br><br>    Plaintiff,<br><br> v.<br><br>CLARK R. TAYLOR, AICP, THE LOS ANGELES COUNTY DEPARTMENT OF REGIONAL PLANNING,<br><br>    Defendant. | **No**. 2:22-09203-MEMF-KS<br><br>**[Proposed] Order Granting TRO &**<br><br>**[Proposed] Order to Show Cause Why a Preliminary Injunction Should Not Issue**<br><br>**[ECF No. 138]** |

**ORDER GRANTING TRO & SHOW CAUSE**

Upon careful consideration of the application for a Temporary Restraining Order ("TRO") filed under Rule 65, L.R. 65-1 & 7-19, the Court hereby ORDERS as follows:

1. The Landlord's Attorney ("Adverse Party") is **ORDERED** to stay the eviction until _____, 2024.

2. The Government is **COMMANDED** to post a $100,000 security bond with this Court (equal to the amount owed in back rent to the Adverse Party) by _____, 2024.

3. The Government is **ORDERED** to state, in writing, by _____, 2024 whether the Plaintiff & his family can live on his property in a temporary structure until such time a permanent structure can be erected.

This **ORDER** shall be binding upon the parties to this action, their officers, agents, employers, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this Order.

## Background

On December 17, 2022, Plaintiff, Clinton Brown, ("Plaintiff") filed a civil rights action under 42 U.S.C. § 1983 against Clark R. Taylor, AICP, The Los Angeles County Department of Regional Planning, ("Defendant") alleging a violation of the Fifth Amendment Takings Clause. Specifically, Plaintiff brings an inverse condemnation action alleging that Defendant denied Plaintiff's application to install a Solar Farm [structure] on his vacant land in unincorporated Los Angeles County, asserting a categorical Taking. On November 28, 2020, the Plaintiff applied to the Los Angeles County Department of Building and Safety, seeking a permit to install a Solar Farm on 32.4 acres of vacant located at 27250 Agoura Rd., in unincorporated Los Angeles County. The Los Angeles County Department of Building and Safety directed the Plaintiff to submit a new application on August 31, 2021, and subsequently voided the original application. On September 1, 2021, the same department issued an Agency Referral Sheet for the Defendant to sign and the permit to be issued. The Plaintiff's application was denied by the Defendant on October 12, 2021, for being located wholly within the Santa Monica Mountains North (SEA), which took effect on June 3, 2021. The plans for the Solar Farm covered the entire parcel. As part of the application process, an environmental report was submitted. Such a report is crucial to assessing the potential impact of the proposed project. However, the Defendant did not conduct a review of this environmental report. In his official capacity, the Defendant dispatched the rejection letter to the Plaintiff on October 12, 2021. This rejection by the Defendant was final. The Court will overturn the decision of administrative decisions, if it is evident that their action lacks a reasonable basis and is an arbitrary or irrational exercise of power that bears no significant relation to the public

health, morals, safety, or welfare. Last, the Plaintiff has been deprived of the opportunity to utilize his property for its intended purpose *or* for any other profitable alternative use.

## The Fifth Amendment

"Nor shall private property be taken for public use without Just Compensation." *See* U.S. Const. amend. V (ratified Dec. 15, 1791). Such compensation means the full and perfect equivalent in money of the property taken. *See* United States v. Miller, 317 U.S. 369, 373, 63 S. Ct. 276 (1943). *See also* Monongahela Navigation Co. v. United States, 148 U.S. 312, 326 (1893). [H]e is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the Taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added. Acts of Congress are to be construed and applied in harmony with and not to thwart the purpose of the Constitution. *See* Phelps v. United States, 274 U.S. 341, 344 (1927). *See also* Pumpelly v. Green Bay Co., 13 Wall. 166, 177-178 (1872).

A property owner has an actionable Fifth Amendment Takings claim when the Government takes his property without paying for it. [That] does mean that the property owner has suffered a violation of his Fifth Amendment rights when the Government takes his property without Just Compensation, and therefore may bring his claim in Federal Court under 42 U.S.C. § 1983 at that time. *See* Knick v. Township of Scott, 139 S. Ct. 2162, 2168 (2019). A regulation that permanently requires a property owner to sacrifice all economically beneficial uses of his or her land is a Taking. *See* Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1019 (1992). Acquisition of title after the regulations' effective date does not bar a Takings claim. *See* Palazzolo v. Rhode Island, 533 U.S. 606, 609 (2001). Future generations, too, have a right to challenge unreasonable limitations on the use and value of land. *Id*. To put it another way: a State, by *ipse dixit*, may not transform private property into public property without [Just] Compensation. *See* Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 164 (1980).

The Fifth Amendment's right to full compensation arises at the time of the Taking, regardless of post-taking remedies that may be available to the property owner. *See* Jacobs v. United States, 290 U. S. 13, 17 (1933). A property owner found to have a valid takings claim is

entitled to compensation as if it had been paid contemporaneously with the Taking; that is, the compensation must generally consist of the total value of the property when taken, plus interest from that time. *See* Seaboard Air Line R. Co. v. United States, 261 U. S. 299, 306 (1923). The form of the remedy does not qualify the right. It rests upon the Fifth Amendment. *See* Jacobs at 16. A property owner acquires an irrevocable right to Just Compensation immediately upon a Taking. *See* First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U. S. 304, 315, (1987). If a local Government takes private property without paying for it, that Government has violated the Fifth Amendment, just as the Takings Clause says. The Government's post-taking actions cannot nullify the property owner's existing Fifth Amendment right: Where the Government's activities have already worked Taking of all use of property, no subsequent action by the Government can relieve it of the duty to provide Just Compensation.

## Legal Standard for TRO

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *See* Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 374 (2008). Like a preliminary injunction, a TRO must be specific in terms and describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. *See* Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The general rule is that the scope of injunctive relief must be narrowly tailored to the specific harms established by the plaintiffs. *See* Zepeda v. INS, 753 F.2d 719, 728 n. 1 (9th Cir.1983). In Rule 65(d), the notice at issue is notice to the "adverse party." An "adverse party" for these purposes is not necessarily the named opponent. Under Rule 65, an "adverse party" means the "party adversely affected by the injunction," which may include an unnamed party to the action. *See* Parker v. Ryan, 960 F.2d 543, 545 (5th Cir. 1992). Last, the District Court retains the discretion to set the bond amount as it sees fit or waive the security requirement. *See* Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009).

**Reasons for Issuance**

The grant or denial of a temporary restraining order…is within the sound discretion of the Court. *See* Harman v. City of Santa Cruz, California, 261 F. Supp. 3d 1031, 1041 (N.D. Cal. 2017). After considering Plaintiff's Application for Temporary Restraining Order the Court finds that the Application for Temporary Restraining Order has merit. The Court further finds there is evidence that irreparable harm is imminent to the Plaintiff and that the Plaintiff has met his burden to show that he is entitled to a Temporary Restraining Order; that Plaintiff has a likelihood of prevailing on the merits, that there is no adequate remedy at law, and that a temporary restraining order is necessary, proper, and supported by the evidence and law. The Court further finds that failure to enter a Temporary Restraining Order at this time would cause irreparable injury, and it is appropriate to grant this relief ex parte (as to any parties who do not have notice), and that there is no other adequate remedy at law. Specifically, Plaintiff has provided evidence that the Defendant & Adverse Party and their agents will cause the Plaintiff to be uprooted and put onto the street, which is without a doubt, a traumatic experience. Every right, created by, arising under, or dependent upon the Constitution, may be protected and enforced by such means and in such manner as Congress, in the exercise of the correlative duty of protection, or of the legislative powers conferred upon it by the Constitution, may in its discretion deem most eligible and best adapted to attain the object. In this action, Congress has has provided that 28 U.S.C. § 2283 (The Anti-Injunction Act) does not apply to a suit brought under 42 U.S.C. § 1983. *See* Mitchum v. Foster, 407 U.S. 225, 243-244 (1972) (concurring).[1] Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer. *See* Salinger v. Colting, 607 F.3d 68, 81 (2d Cir. 2010). Last, the threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury that cannot be undone.

---

[1] The legislative history makes evident that Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of Federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts. *See* Mitchum at III.

## Specific Terms

The recipient of a TRO … should not be left guessing as to what conduct is enjoined. The benchmark for clarity and fair notice is not lawyers and judges …. [T]he 'specific terms' and 'reasonable detail' mandated by Rule 65(d) should be understood by the lay person, who is the target of the injunction. This is a circumstance, among many in the legal field, that cries out for plain English. *See* Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1134 (9th Cir. 2006). The Defendant is hereby ordered to deposit $100,000 into the Court registry as a security bond equal to the amount owed in back rent to the Adverse Party within fourteen (14) days.

## Acts Restrained or Required

The same rules applicable to a preliminary injunction apply to a TRO, namely, the order must describe in "reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required. Rule 65(d)(1)(C). *See* H-D Michigan, LLC v. Hellenic Duty Free Shops S.A., 694 F.3d 827, 842 (7th Cir. 2012). The Defendant & Adverse Party are specifically restrained from taking any further action that results in a deprivation of the Plaintiff's status quo living arrangements while this TRO is in effect.

**THEREFORE, IT IS HEREBY ORDERED** that, for the foregoing reasons, the Plaintiff's Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue is **GRANTED**.

Accordingly, the Court **ORDERS** the following:

1. The Landlord's Attorney ("Adverse Party") is **ORDERED** to stay the eviction until _____, 2024.

2. The Government is **COMMANDED** to post a $100,000 security bond with this Court (equal to the amount owed in back rent to the Adverse Party) by _____, 2024.

3. The Government is **ORDERED** to state, in writing, by _____, 2024, whether the Plaintiff & his family can live on his property in a temporary structure until such time a permanent structure can be erected.

This **ORDER** shall be binding upon the parties to this action, their officers, agents, employers, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this Order.

**IT IS FURTHER ORDERED** that this temporary restraining order shall remain in force until the _____ day of _____, 2024, or until such later date as may be extended by the Court or agreed upon by the parties. Pursuant to Rule 65(b)(3) of the Federal Rules of Civil Procedure, Defendant & Adverse Party shall appear before this Court on _____ _____, 2024, at _____, for a hearing to show cause, if there is any, why the preliminary injunction requested by the Plaintiff should not be granted. Defendant & Adverse Party shall serve and file any response to the application for a preliminary injunction (ECF No. 138) on or before _____ _____, 2024, and the Plaintiff shall serve and file any reply on or before _____ _____, 2024.

**IT IS SO ORDERED.**

Dated: March ___, 2024                              _____

                                                                                       MAAME EWUSI-MENSAH FRIMPONG

                                                                                                  United States District Judge