UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

- - -

HONORABLE MAAME EWUSI-MENSAH FRIMPONG, DISTRICT JUDGE PRESIDING

CLINTON BROWN,                        )
                                      )
        Plaintiff,                    )
                                      )
                                      )
                                      )
    vs.                               ) No. CV 22-09203-MEMF
                                      )
                                      )
                                      )
CLARK R. TAYLOR,                      )
                                      )
        Defendant.                    )
_____       )


REPORTER'S TRANSCRIPT OF PROCEEDINGS

*EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER[138] (ZOOM HEARING)*

LOS ANGELES, CALIFORNIA

FRIDAY, MARCH 15,2024

_____

MARIA R. BUSTILLOS
OFFICIAL COURT REPORTER
C.S.R. 12254
UNITED STATES COURTHOUSE
350 WEST 1ST STREET
SUITE 4455
LOS ANGELES, CALIFORNIA 90012
(213) 894-2739

**A P P E A R A N C E S**

**ON BEHALF OF THE PLAINTIFF,**
**CLINTON BROWN:**                    PRO SE
                                      BY:  CLINTON BROWN
                                      16821 EDGAR STREET
                                      PACIFIC PALISADES, CA 90272
                                      (310)487-6453


**ON BEHALF OF THE DEFENDANT,**
**CLARK R. TAYLOR:**                  HURRELL CANTRALL, LLP
                                      BY:  JONATHAN FANG, ESQ.
                                      725 SOUTH FIGUEROA STREET
                                      SUITE 3800
                                      LOS ANGELES, CA 90017
                                      (213)26-2000

UNITED STATES DISTRICT COURT

<u>**I N D E X**</u>

<u>PAGE</u>

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER[138] (ZOOM HEARING):                                                    4

UNITED STATES DISTRICT COURT

LOS ANGELES, CALIFORNIA; FRIDAY, MARCH 15, 2024

-o0o-

(COURT IN SESSION AT 10:07 A.M.)

THE COURTROOM DEPUTY:  All right.  Counsel, if you don't mind, unmute your phones and video, please.

Calling item one, LA CV 22-09203-MEMF: *Clinton Brown v. Clark R. Taylor.*

Counsel and party, could you please state your appearances, starting with the plaintiffs.

MR. BROWN:  Clinton Brown, plaintiff.

MR. FANG:  Good morning, Your Honor.  Jonathan Fang on behalf of the defendant.

THE COURT:  Thank you.  Good morning to both of you.  And thank you for your patience this morning.  We are here on the ex parte application for a temporary restraining order in order to show cause.  This is Mr. Brown's motion.  So, Mr. Brown, I will let you be heard.

MR. BROWN:  Um, so good morning, Your Honor.  And --

THE COURT:  Good morning.

MR. BROWN:  -- the TRO is especially important because as stated in the motion, that it is -- we're about to be evicted from our house, and the source of that is from the harm that we're having from the

Government.  And so it's been quite the ordeal because how I see it is that when we are evicted, which we haven't been able to pay, that we'll be able to go to the property that we own, but then we'll be able to probably be evicted from that.  So the point -- if the matter that I think is what happens is that like, it -- it's considered like a taking.  So that's where my position is.  The -- you know, I stated it, I hope clearly, in the papers.

I had to -- well, we also -- because I had to also submit the trial papers.  I think I submitted that, as well -- well, I submitted that to the state court, actually.  So it's been just really like a -- I mean, I don't get this, actually.  Like, move from their -- from the papers that the defendant or, you know, the Government submitted.  Like, they're saying, oh, I'm not the owner; that I don't have standing.  You know, it doesn't make sense to me.  So, you know, maybe we're not all communicating correctly, but, like, my -- the big thing for me is that like, this is a derivative thing that came from -- that I can't do anything to my property.  You know what I mean?  Like, and I know for a fact, it's illegal to live on the property in my Range Rover, which they'll come repossess.  I guarantee that you, for one.  So, you know, I don't want to like,

mix the -- you know, the emotional part of it, you know. Like, I try to keep it very simple, but it has been like, really very --  it's been really very difficult to --  to actually, like put these pieces together, because they won't let me do anything to my property, and that's -- you know, that's -- I mean, that's the harm.  Like, I mean, I --  I'm not going to let that property go for anything.  Like, it's -- and I submitted to the court, you know, that -- the location, it's a whole, you know, corruption thing.  But I'm not, like, into that.  Like, I don't --  you know, that's not my job.  I want to be able to get this property developed for housing.  There are people that want housing.  And that's -- that's my position.  Like, it's --  I mean, it's -- it's so absurd that, like, you know, it is just draining.  And we've been in this court for I don't know 16 months -- maybe 15 months now.  And, you know, like, I'm trying to be like very -- you know, I don't want to be emotional about this because this is something that is business, but it's also the fact that, as stated in the papers, like, this is also constitutional.  Like, you know, I'm just a regular guy that saw an opportunity, and I have a right to do that.  And the -- the folks down at the government, you know, they just -- they're not being reasonable.  And so, you know, they're

going to have to pay me for that.  And that's just the bottom line.  And that that's how I feel.  And so the legal argument -- and as the Court -- there is equity. And that's -- there is no law I can point to that says -- at least that I know of, that says okay, well -- and the defendant says it like, okay, well, like, it was like a plaintiff getting in a car crash and then like, saying that they're responsible for that and whatever but that's not what we're -- this is constitutional. This isn't like, you know, a car crash.  So I feel very strongly about, you know, not -- and the informality that I'm giving you guys is because of the nature of the -- well, from what I read at least, is that, you know, it's not -- I mean, obviously, it would be like professional, but, like, you know, I've waited to the last minute for this.  I mean, like, you know, it's just been crazy.  Like, but I want the Government to know that what I'm going to do to my property, and I think the Court needs to know that too.  So...

Thanks for hearing me out on that.

THE COURT:  Yeah, thank you.  Thank you.

First of all, there's a little bit of an issue with the Zoom.  I can see you fine, but I think my camera might be going in and out.  But trust me that I could see you, fine, and I can hear you fine.  Also, it

looks like I'm looking to my left, but that's because that's the screen where you guys are and the camera is in a different place.  So I just wanted to apologize for that.

MR. BROWN:  No worries.

THE COURT:  Thank you for your explanation, Mr. Brown.  And I was very sorry to see what you and your family are going through as described in your -- in your request for the TRO, and I think, you know, what you said in there about the impact of losing your home is --  can't be denied.  And I appreciate as you said, it's very emotional.  And I think it's fair that it's emotional for a number of reasons.  So I thank you for explaining all of that.  And I just wanted to acknowledge that the Court --  I wanted to state that the Court acknowledges how difficult this must be for you.

I did have just a couple of clarifying questions before I hear from Mr. Fang, if that's okay...

So you indicated -- and thank you for your response to the Court's order regarding the name of the landlord and the pending unlawful detainer proceeding. Is the unlawful detainer proceeding in Los Angeles Superior Court?

MR. BROWN:  Yes, Your Honor.

THE COURT: Okay. And then what's -- if you know, what is your understanding of the current status of the case in -- in Los Angeles Superior Court?

MR. BROWN: So I submitted my trial brief actually last night. And so the trial is -- it is a nonjury trial. It's on Monday. And originally, I requested a jury trial; but, you know, I know it's in the Constitution of California, but I don't have the 150 bucks to like, secure that. So, you know, and I -- I mean, my defense is which -- I don't know if you want to know about that or -- I'm not sure, like, it's -- they waited after a year -- you know, CCP, I think it's -- I wrote it down somewhere -- I think it's 16 something. But long story short is that like, you know -- like, it's -- you know, I'm not about technicalities, but...

THE COURT: Okay, that's --

MR. BROWN: I'm blessed that it actually didn't -- I mean, this -- because I've been dealing with all this, like, well, you know, so like, it anyway, they waited after a year to actually collect our rent. So I haven't paid -- I haven't been able to pay rent since like September of '22.

THE COURT: I see. Okay. Yeah, I just wanted to make sure that I understood the status.

And I -- I do I read your -- if I understand

your theory correctly, is that due to the county's actions with respect to the Agoura property, you have not been able to make the stream of income that you expected from the Agoura property, and that has impacted your ability to pay the landlord at the place where you live?

MR. BROWN:  Yeah, absolutely.  And the standing issue, which I think is super important, you know, it's a -- you know, we wouldn't have so many decisions on what standing is if it wasn't, you know, very technical. So -- and I think that one of the cases cited that, you know, there's a -- I don't know if I want to call it derivative action, but, you know, it's not somebody in a car crash like, you know -- this is -- this is, like, I know that I'm about to do something -- well, they've -- you know, it's in the record -- about the, you know, the sign -- the sign that we have.  And we have folks that want to live there.  I mean, it -- you know, I mean, this, is -- you know, I don't want to be unprofessional at all.  It's just like, you know, what do I have to be proving -- I mean, to me, what happens is that when I do move there, because I'm going to lose the trial more likely, I mean not you know -- I did -- like, I didn't pay, I mean, I -- like, I can't pay.  And when I live there on the property, then, you know, that's going to

11

be an issue.  And so for me, it's like there's going to be a taking no matter what.

THE COURT:  Uh-huh.

MR. BROWN:  You know, like --

THE COURT:  Meaning -- sorry -- let me just make sure I understand.  Meaning --

MR. BROWN:  Oh, sorry.

Sorry.  Meaning, if you move to the Agoura property and they attempt to evict you from the Agoura property, that will be another taking besides the one that is already in the complaint; is that it?

MR. BROWN:  Yes, Your Honor.

THE COURT:  Okay.  Oh, sorry.  Do -- and is there -- sorry, am I correct that you're not alleging that there is any relationship between your landlord and the county.  The issue is that what the county has done has had these effects which now are impacting your ability to pay your rent; is that correct?

MR. BROWN:  From my understanding of like, standing issue --

THE COURT:  I'm not asking you about standing, because I think I understand the arguments.  I just as a factual matter, are you alleging that there is a relationship between the county and the landlord?

MR. BROWN:  Yes, I -- that is the --

12

THE COURT:  Okay.  What is the nature of their relationship?

MR. BROWN:  Oh, I mean, not the two of them together, no, no, no, no.

THE COURT:  Oh, okay.

Sorry.  I'm sorry.  I'm confused about like what -- I'm saying as a derivative as in like, cause and effect.

THE COURT:  Got it, got it, got it.  Okay, understood.

MR. BROWN:  Yeah.

THE COURT:  I understand.

Sorry.  Was there something you were going to add?

MR. BROWN:  Well, I just -- you know, they didn't -- you know, it's just -- you know, the effect on this is like, super -- like, they did not --  like -- like, I mean, I haven't paid since September '22.  Like, I'm not -- I'm not proud of that at all.  Like, that's not like -- I'm just like I feel, like -- I feel that, like, if that would have been on top of that with what we -- you know, the learning curve that we have to go on, that it would be way too much.  And it still is, but it's like, I -- you know, it's a simple question:  What can I do with the property?  It's not like, we're -- I'm

trying to build a spaceship to Mars here, you know. Like, I mean, I would sell it for $29 million. I have people calling me about that. You know what I mean? Like if, in fact, I mean, it's just a piece of paper. I mean -- I mean, you know we -- as a profession, you deal in papers; right, you know? So if it had "residential" on it as opposed to "OS," which used to be residential. Then I have Toll Brothers, which is one of the best folks that, like, I think, you know, build houses. I mean, I'm not, like, privy to all this. I'm like -- I don't Google people and all that kind of stuff, but I have conference calls with folks. And -- and, you know, they're willing to pay $29 million. And they saw that opportunity, and I have a right to challenge that restriction. And so my thing is, it's like, I don't know what I have to -- I mean, for me, it's like, I don't want to be evicted, obviously; but I actually think it's going to be a good thing, because then there will be another taking because they're going to kick me out of the property. So, you know, it's like, how much more do I have to suffer, you know, like --

THE COURT: Understood.

MR. BROWN: I mean, thank you for hearing me out on that. And I don't mean to be emotional, but it's been like a really -- and the law thing, but it's like,

you know, and it's like also for equity.  And it's been a real, like -- you know, and I'm not asking for sympathy or anything like that.  But it's like, you know...  Thank you for hearing me out, at least.  Thank you.

THE COURT:  Yeah, no, no.  Thank you very much for the explanation.

Okay.  Mr. Fang, let me hear from you.

MR. FANG:  Good morning, Your Honor.

I just want to say, we're also sorry for, you know, the situation you're in.  It is a sad situation, but as we stated in the opposition, there's no likelihood of success for the taking.  There's several issues.  There's no competent evidence presented.  His issue regarding the taking was already argued previously.  And an order was given on December 5th.  The standing issue is Mr. Brown does not own the property itself.  It's owned by Atlas, LLC and Steve Weera, 85 percent by Atlas, LLC and 15 percent by Steve Weera's trust.  And the harm that he's alleging occurred to Atlas, LLC, which, you know, from our understanding, is -- it comprises of three members, which one is, Mr. Brown, therefore, he doesn't have the standing to bring the takings claim.  The second, you know, there was no reasonable invest tiff expectation.

This was already argued when he sought the preliminary injunction.  The second point is, you know, as he stated himself, the eviction is not related to this section.  He -- his -- his obligation to pay the rent is separate from what he's alleging here.  And, you know, the landlord, it -- as he said, is subject to the state court jurisdiction currently.  There's a pending litigation between the two, which he -- he just said trial begins on Monday.  And then that would kind of go to imminent harm because right now, there's --  there is still no result as in to what that proceeding will come, even though he believes that it will likely result in his eviction.

The last thing, you know, the zoning laws -- and this was mentioned in the order -- the zoning laws of the local Government, you know, they have power to control that, and it's broadened and proper.  And, you know, the U.S. Supreme Court and the Ninth Circuit have held that municipalities have like, legitimate Government interest in -- in achieving their zoning rules and preserving the character of their -- their neighborhoods.

What -- what the complaint has stated is that, you know, due to the -- the denial of his solar -- of a solar farm, he believes that taking has occurred.  He

hasn't -- Mr. Brown has not presented any competent evidence, but he keeps trying to change and, you know, testify in -- into existence what is not there.

The -- the denial of the solar farm was not a taking.  And -- and without likelihood of success, then, you know, similar to the preliminary injunction, a TRO cannot be granted.

Thank you, Your Honor.

THE COURT:  Thank you.

One of the questions that came up at the hearing in -- and I just want to confirm what the county's position is on this.

Let me --  give me just a moment.

I believe at the hearing on the preliminary motion, a preliminary injunction motion, the question arose about the breadth of the County's power to prohibit uses on the land.  I believe that came up.  And as -- as I recall -- and I think this was stated in the Court's order on the preliminary injunction, the County's position is that it does have that power, but right now, it is only prohibiting solar farms and other commercial uses.  Is that correct?

MR. FANG:  Yeah, at the time, that was what -- what we had knowledge of.  Since then, you know, the -- the property itself is designated as an open space

17

designation. And there are prohibited uses, except for specified uses that are like permitted or conditionally permitted by -- by a -- by the County ordinance, which I believe is Section 22.16.030 --

THE COURT: I'm sorry, Mr. Fang, can you -- can you give the number of the ordinance again, 22 --

MR. FANG: Section --

THE COURT: Yes.

MR. FANG: -- 22.16.030.C.

THE COURT: C as in cat?

MR. FANG: C as in cat.

THE COURT: Okay. Sorry. And that ordinance governs the -- what is designated as an open space?

MR. FANG: Yes.

THE COURT: Okay. And so to your understanding, the open space designation, pursuant to that ordinance does prohibit residential uses?

MR. FANG: Well, it was -- what it does is it -- it says, you know, the premises must remain in essentially unimproved building structures grading excavation --

THE COURT: I'm so sorry, Mr. Fang. With the Zoom, we kind of lost you when you were speaking fast.

MR. FANG: Oh, sorry.

THE COURT: So go ahead. I had asked if the

open space designation, pursuant to the ordinance prohibits residential uses.

MR. FANG:  Right.  I mean, it wouldn't prevent residential uses because the -- what the open space designation means that the subject property would have to remain essentially unapproved and building structures grading excavation field or other alterations would be prohibited; -- and this was back in 2002, when it was designated an open space designation prior to Mr. Brown -- Atlas LLC's purchase of the subject property.

THE COURT:  Understood.  Okay.  Thank you.

Anything further?

MR. FANG:  No, Your Honor.

THE COURT:  Okay.  Mr. Brown, anything further from you?

MR. BROWN:  Yes, Your Honor.

So the issue I think that is going to happen, which is, I will be living there on -- it says "no residential structures."  They have discretion to not -- you know, to do that.

They've already sent me letters that they're going to put me in jail or whatever it is, you know, even though I don't own the property per se or whatever. But they sent me tax bills, like I just got a whole

bunch of those.  And what I think is very interesting about that is that like, there's $19 as opposed to -- it's like they reduced the amount to even less.  And so my problem with this is that, you know, like, I just want to -- I -- to put -- -- you know, like I put the sign up last time we were in your court in September, you know, I mean, I put the sign up, because, you know, I got to do something with that property.  And it's a great place to put up homes, and there's no reason not to.  And so, you know, it's just -- I mean, it's just -- you know, this is -- to me, it's not complicated.  It's more of like, why are they -- why -- you know, why are we resisting more tax payer money to -- you know, they want somebody like -- I have people who want to give me $29 million for that.  You know, obviously, I saw it.  I know the -- I know the -- I mean, you know, the solar thing though, that's -- that's a little bit, because there's a solar manual that, you know, is mentioned in the complaint that, you know, in the answer.  They -- you know, it's a -- it does not say anything about the -- the -- you know, the banning or whatever for that.  So -- and it was a draft.  So, you know, like -- you know, I spent a year -- almost maybe two years -- almost two years, building and safety, who said no, you don't have to go to planning.  And they said, well,

we'll do this draft.  So we were working together on that.  You know, these are the kinds of things that, like, you know, I'm trying to make it as very very specific so that it doesn't get like, you know, messy, because, you know, if I -- like I said in the thing, if I had a dollar for everything somebody said procedure or rule, I would not be evicted right now.  Like, you know, I -- I'm not saying that, you know -- I mean, I'm trying to do the best that I can.  And I feel very strongly about, you know, being treated equally and at the same, you know, standard.  And I understand that I've made some mistakes.  I get that, but I'm a quick learner.  And I -- I'm just very -- you know, it's like, I don't understand what can I do with this property?  I mean, they just said, you know, like, you know, you can't build.  There's no structure on it.  So I mean, what can I do?  It's just like -- and then the other thing is, too the other section -- the other property that the defendant refuses to acknowledge is the CPD.  So it's a commercial plain development district.  But it also has a overlay of that SCA that went in effect in June of '21 -- I think it was June 3rd, if I remember correctly, that well, I didn't get notice of, but CBK, I mean, I -- you know, I'm so like -- I don't know.  I'm just so like -- this property, I mean, I'm a

broker, you know.  Like, it's the location.  I mean, when it was on the open market, I saw it.  I know everything about this property, more than like anybody ever will.  And I know there's corruption in it, but I'm not like -- I don't like -- that's not my job.  You know, like...  you know, like, that's really not my job to -- I'm just -- my point is that like, I'm not going to let this property out of my hands because I know the value.  And the government has -- the three governments really, but, you know, LAPCO, LL --  they have said that Calabasas and Agoura is not a, like -- I forget the word -- but like, anyway, it's not like a -- they have no legal right to say what -- it's just an accounting.  So that has like a sphere of influence, there you go.  So my point is, is that like, you know, I know all these things.  It's not like, you know -- like, they literally want -- and it's in the record -- they want it to be taxes not being paid.  And the -- I mean, it's in their record.  You know, like...

I mean, it's in the record, you know, like... and then to take it -- and they've already done this before -- they've already recycled it.  They've already taken it and then sold it.  And then they collect taxes.  I mean, I don't know.  I just -- I really am sorry for the frustration because I -- you know, like, I'm very

very particular on what I submit to the federal court, because, you know, it's very important to have, you know -- and I guess I'm taking a little liberty the fact that this has been such a short notice, but it has come to -- and I wouldn't -- you know -- you know, I'm not bringing this up frivolously -- or frivolous or whatever -- I mean, this is my life -- this is our life, you know.  The -- I can't point you to any law that says, you know, this caused this.  I mean, you understand the standing issue.  And I thank you for that because, you know, it's -- it's -- you know, it's complicated, but it's -- there's a law.  You know, there's the way that things are.

So anyway, I'm sorry.  I'm just like not trying to ramble like in my briefs, I guess; but I'm trying to just be very direct that like, I don't know why we are still here.  And I can't do anything to my property, you know.  Like, if I don't have -- you know, if I don't have a chance and -- and, you know, we don't have a trial date, you know Rule 40, like, I just -- there 's just -- there's a lot of, like, you know.  I'm done. I'm sorry.  I just want to just put it all out there, because, you know, it's just very very -- it's a traumatic experience.  And, you know, I'm tying to keep -- you know, I don't understand why they don't want

more tax money on a property.  I mean, I'll pay -- I'll pay -- I'll pay extra taxes.  I don't care.  You know, like, I mean, I'm -- I paid $299,000 for the property.  I have someone who wants to give me 29,000,000 for it.  I mean, that's -- you know, that's some -- that's -- everybody looks at this, and they say, well, you can't do it.  Well, all it takes is a little signature.  And -- and this is -- this is the thing about federal court that I'm so happy about the *Nick* decision, because, you know, we've got -- I mean, you know, we have 30,000 something counties, you know.  I mean, they're little Theethums (phonetic) basically.  And I'm not politically connected.  You know, I believe in everybody's equal.  You know, like, I saw the opportunity.  It was on the open market.  I knew -- I know everything about that property.  And now I'm going to be living up on it, which is fine; but anyway, long story short, my frustration is -- and if I was, you know, to --  you know, my -- I think my declaration, I think, you know, ECF, I think is 126.  I think that tells you everything you need to know.  So thanks a lot.

THE COURT:  Okay.  Thank you.

I did want to raise -- with respect to the -- the motion denying the preliminary injunction -- sorry, the order denying the preliminary injunction which is

24

currently on appeal to the Ninth Circuit, you had filed, if I recall correctly, a request to proceed in form of pauperis. And there was with some information that was missing from the request. And so the Court issued an order at ECF 119, asking for additional information within 30 days s. I know there's been going on between the different cases. So I just want to -- looking at the docket, it does not appear that you responded to that. And so I just wanted to confirm that we didn't miss something or maybe you missed the order. Do you -- do you know what I'm referring to?

MR. BROWN: Yes, I do. I paid it -- I paid that. I spoke with the clerk. I -- I received a -- a -- from another development project -- a refund from San Bernardino county. And so I paid the $600 on the ACMS system which is what the Ninth Circuit uses.

THE COURT: Okay. Okay. Okay. So the IFP is withdrawn?

MR. BROWN: Yes, I believe so. Yes, as soon as I received that money, I paid the $605 I think it was or whatever on that. And then I put it into the -- I think it's an ACF order that I did. And I spoke with the clerk. And -- and thanks for the filing letter. I think that was great. You know, the filing -- you know, letter -- you know, with the letter motion. I -- you

know, Southern District of New York does a great job with those.  So...

THE COURT:  Okay.

Okay well, thank you.  I take it there's nothing further from you, Mr. Fang?

MR. FANG:  I just -- if I could -- I just wanted to point out real quick, Your Honor, just -- over his last argument that you know, he -- he admits that he purchased it, you know, for 290,000 or 299,000, knowing the restrictions of the open space.  He said he knew everything about it and he said --

THE COURT:  I'm going to stop you right there. I didn't hear him saying he knew about that restriction. I guess I understood him to be saying he -- he's familiar with the property and its potential.

MR. FANG:  Okay, Your Honor.  He's familiar with the potential.  He said he just needed one signature to change it from nonresidential to residential.  And he's not connected.  And when he bought the property, he already knew the --

THE COURT:  I think, Mr. Fang, if I may interrupt.  I think we're going a little backwards, because now we're sort of getting back into facts which may be proven or not proven.

MR. FANG:  Understood.

UNITED STATES DISTRICT COURT

THE COURT:  I only understood Mr. Brown to be saying that he's very familiar with the property and its potential.  And that's all I heard him to be saying.  Mr. Brown, were you saying something else?

MR. BROWN:  No, Your Honor.

THE COURT:  Okay.  So if that's it, Mr. Fang, was there anything else?

MR. FANG:  No, I was just going to point that out but...

THE COURT:  Okay.  Thank you to both parties.  I do thank you for handling the briefing so quickly and for jumping on this hearing so quickly.  We do understand the urgency of the matter.  And so you should expect to see an order from the Court this afternoon on ECF.

MR. BROWN:  Thank you, Your Honor.

MR. FANG:  Thank you, Your Honor.

MR. BROWN:  I appreciate because I just -- your standing order on the -- you know, on 11.  It's just -- I'm new to this stuff, and I just appreciate this field taken seriously.  And I -- you know, it makes me -- a feel -- it makes me have confidence in the system.  And I love that and -- and I love that, you know, because it's not -- anyway, it's -- you know, you usually don't typically -- don't have success in the order, you know,

like, hearings like this.  And so it's usually on paper. So, you know, like, I just appreciate that.

THE COURT:  Okay.

MR. BROWN:  I think it's important that -- that, you know, if I were to be a lawyer and I had a client -- you know, it's just -- it's the way things work.  So I -- I just want to say that as in, like, passing, because I was kind of shocked that we were having a hearing you know what I mean?  So that's -- anyway, that's -- I just wanted to point that out. Thank you, Your Honor.

THE COURT:  And thank you for saying this.  As I indicated at the beginning, I was very sorry to hear what you are going through.  It is a very issue as you indicated, both, the potential of you losing your home and the constitutional issues that you've raised in your case.  So we're happy to have the hearing and hear the parties out.  And, again, we will issue the order this afternoon.  Okay.  Take good care.

MR. BROWN:  Thank you, Your Honor.  You too.

THE COURT:  Court stands in recess.

Thank you.

(Whereupon, proceeding adjourned.)

- - -

**C E R T I F I C A T E**

CLINTON BROWN                              :

                    vs.                   :  No. CV 22-09203-MEMF

CLARK R. TAYLOR                           :

I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

_____/S/_____          //____

MARIA R. BUSTILLOS                     DATE
OFFICIAL REPORTER

UNITED STATES DISTRICT COURT