1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CLINTON BROWN,** | **NO. CV 22-09203 MEMF (KS)** |
| **Plaintiff,** | |
| **v.** | **REPORT AND RECOMMENDATION OF** |
| | **UNITED STATES MAGISTRATE JUDGE** |
| **CLARK R. TAYLOR, AICP, The Los** | |
| **Angeles County Department of** | |
| **Regional Planning,** | |
| **Defendant.** | |

This Report and Recommendation is submitted to the Honorable Maame Ewusi-Mensah Frimpong, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.

## INTRODUCTION

On December 17, 2022, Plaintiff, a California state resident proceeding *pro se*, filed a civil rights complaint under 42 U.S.C. § 1983 (the "Complaint") concerning the denial of Plaintiff's application for a 20-megawatt solar farm at a property in Calabasas, California.

1

(Dkt. No. 1 at 3.)  On January 30, 2023, Defendant filed an Answer to the Complaint.  (Dkt. No. 10.)

On October 18, 2023, Defendant filed the pending Motion for Summary Judgment ("Motion") accompanied by 10 exhibits, 10 Requests for Judicial Notice corresponding to the exhibits, and the Declaration of Jonathan Fang, Esq.  (Dkt. No. 82.)  On October 19, 2023, Defendant filed a Separate Statement of Uncontroverted Material Facts in support of the Motion.  (Dkt. No. 84.)  On December 27, 2023, Plaintiff filed an Opposition to the Motion, accompanied by an earlier-filed Statement of Genuine Disputes of Material Fact by Nonmoving Party and 11 exhibits.  (Dkt. Nos. 115, 118.)  On January 17, 2024, Defendant filed a Reply in support of the Motion accompanied by a Reply and Evidentiary Objections to Plaintiff's Statement of Genuine Disputes of Material Fact by Nonmoving Party.  (Dkt. No. 123.)  The Motion is now fully briefed and ready for decision without oral argument.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

For the reasons outlined below, the Court recommends that Defendants' Motion for Summary Judgment be GRANTED in full and this action dismissed with prejudice.

## ALLEGATIONS IN THE COMPLAINT[1]

Plaintiff sues Defendant Clark R. Taylor, a "Senior Planner" with the Los Angeles County Department of Regional Planning's Coastal Development Services.  (Dkt. No. 1 (Complaint) at 2.)  Plaintiff sues Defendant in his official capacity only.  (*Id.*)

---

[1] For ease of reference, the Court cites to the page numbers assigned by the Court's Case Management/Electronic Case Files system appearing near the top-right corner of each page.

2

1    Plaintiff, who resides at 16821 Edgar Street in Pacific Palisades, alleges that he
2   "submitted an application to install a 20 MW Solar Farm at 27250 Agoura Rd., described as
3   32.4 acres of vacant land, in unincorporated Los Angeles County, on November 28, 2020, to
4   the Los Angeles County Department of Building and Safety." (*Id.* at 2-3.)  After Plaintiff was
5   directed to reapply and did so, "[t]he Los Angeles County Department of Building and Safety
6   created an Agency Referral form on 09/01/2021 for the Department of Regional Planning,
7   among other agencies to review and sign-off on the permit request." (*Id.*)  Plaintiff contends
8   that, on October 12, 2021, Defendant denied the application "on the grounds that utility-scale
9   solar facilities are not allowed in Significant Ecological Areas ("SEA") and per the County's
10   [Geographic Information System] mapping, the SEA overlay encompasses the entire property
11   in question." (*Id.* at 3-4.)

12

13    Plaintiff further alleges that he continued to pursue the solar farm application through
14   different county agencies, "but all departments directed him back to the Regional Planning
15   Department . . . and the October 12, 2021, rejection letter." (*Id.* at 4.)  Finally, Plaintiff alleges
16   that an "environmental review document prepared by Green-Tech Environmental in June 2021
17   was also submitted, reviewed, and accepted by the Los Angeles County Department of Building
18   and Safety, and that document "concluded that with mitigations, the project would have less
19   than significant impacts." (*Id.*)

20

21    Based upon those factual allegations, the Complaint raises a single cause of action
22   alleging that Defendant's rejection of Plaintiff's application for a solar farm constituted an
23   unconstitutional governmental taking without just compensation. (*Id.* at 5-7.)  Plaintiff alleges
24   that Defendant "was acting within the scope of their authority as a government official," that
25   Defendant "had the power to take the landowner's property without compensation," and that
26   because Defendant's "actions constitute a violation of the landowner's constitutional rights,"
27   Defendant "was acting under the color of law." (*Id.* at 2-3.)

28

3

1    Plaintiff's requested relief for the alleged constitutional violation includes
2    $32,400,000.00 in "just compensation" and an order requiring Defendant to sign the agency
3    referral document so the permit Plaintiff seeks for a solar farm will be approved.  (*Id.* at 7.)
4
5                                    **THE MOTION**
6
7    Defendant seeks summary judgment on three grounds.  First, Defendant contends that
8    Plaintiff lacks standing to bring this lawsuit because he has failed to establish any ownership
9    interest in the land at issue and has, therefore, not been injured-in-fact.  (Dkt. No. 82 (Motion)
10   at 12-16.)  Second, Defendant argues that Plaintiff's Fifth Amendment Takings Clause claim
11   fails because the property was purchased with constructive notice of the legal restrictions on
12   the use of the land at issue, so the current owner never had the property right that Plaintiff
13   claims was taken from him.  (*Id.* at 16-22.)  Third, Defendant contends that "the previous
14   landowners in 1987 dedicated the Subject Property to allow the County of Los Angeles to
15   prohibit residential and/or commercial structures," and therefore, "[i]f anyone has ever
16   suffered a taking, it was the developer, who in 1987 gave up the right to develop LOT 3 in
17   TRACT NO. 33128 (Subject Property) by the dedication of rights to the County."  (*Id.* at 22-
18   23.)  Since the alleged constitutional violation occurred in 1987, Defendant argues that the
19   two-year statute of limitations for bringing the present claim expired decades ago.  (*Id.*)
20   Defendant requests that the Court grant summary judgment in full "as Plaintiff lacks standing
21   for his Takings claim and Plaintiff's Takings claim fails as a matter of law."  (*Id.* at 24.)
22
23   In support of the Motion, Defendant proffers a Separate Statement of Uncontroverted
24   Material Facts (dkt. no. 84) and ten exhibits – all of which are also the subjects of Defendant's
25   Requests for Judicial Notice:
26
27
28

                                         4

1.  Quitclaim Grant Deed dated January 28, 2022, reflecting The Atlas LLC as grantor to Steve Weera Tonasut, as trustee, recorded 02/01/2022, Los Angeles County Official Record #20220123442;

2.  Grant Deed dated Nov. 12, 2020, by Tax Deed Enterprises, LLC as grantor to The Atlas LLC as grantee, dated Nov. 12, 2020, recorded 12/18/2020 Los Angeles County Official Record #20201688734;

3.  GIS-Net Public Results for 27250 Agoura Road showing corresponding APN #2064-005-011 dated October 16, 2023;

4.  Secretary of State of California, LLC Registration – Articles of Organization filed 08/06/2020, and; Secretary of State Statement of Information, filed Jan. 26, 2022;

5.  Tract No. 33128, recorded on December 21, 1987, Los Angeles County Official Record #87-2026009, which states in all caps, "We hereby dedicate to the County of Los Angeles the right to prohibit construction of residential and/or commercial structures within lot 3" in the first paragraph of the first page;

6.  Development Agreement, recorded on March 13, 1985, Los Angeles County Official Record #85-277980;

7.  Los Angeles County Code Section 22.140.510.C.5.a, which prohibits installation of solar farms within SEA, accessed on October 16, 2023;

8.  Los Angeles County Code Section 22.52.1605.E.1 on June 25, 2018, which prohibits installation of solar farms within SEA, accessed on October 16, 2023;

9.  Certified Minutes of the County of Los Angeles Board of Supervisors adopting Ordinance No. 2002-0062Z on August 20, 2002, with effective date of September 19, 2002, and relevant pages of the Statement of Proceedings on August 20, 2002, and Ordinance No. 2002-0062Z, and map adopted with Ordinance 2002-0062Z. Ordinance No. 2002-0062Z designates the Subject Property APN/AIN # 2064-005-011 an open space zone (See Pages 18, 50, and 57);

10. Los Angeles County Code Section 22.16.060, which states an open space designation means that the development of premises on the Subject Property shall remain essentially unimproved and buildings, structures, grading excavation, fill or other alterations shall be prohibited except for the specified uses listed as permitted or conditionally permitted.

(Dkt. Nos. 82-2 – 82-11.[2])

In his Opposition, Plaintiff argues that the Fifth Amendment's Takings Clause prohibits the government "from requiring a landowner, as a land-use condition, to relinquish property rights the landowner is otherwise entitled to unless there's a nexus and rough proportionality between the property right and the social cost of the landowner's proposed use." (Dkt. No. 118 (Opposition) at 6-7.) He further contends that "[a] property owner acquires an irrevocable right to Just Compensation immediately upon a Taking." (*Id.* at 8.) As "[t]he date of the subject Property's acquisition determines the amount of Just Compensation and interest," "there is a genuine issue of material fact that is in dispute." (*Id.*) Plaintiff then argues that his service on Defendant was proper in response to a preliminary statement made in the Motion, but not a ground on which Defendant seeks relief here. (*Id.* at 9-12; Dkt. No. 82 at 24.) Lastly,

---

[2] The Court, with minor edits, uses Defendant's description of his exhibits for the purpose of noting them here. (*See* Dkt. No. 82-1.) The Court describes these exhibits in further detail to the extent necessary in its analysis.

1    Plaintiff argues that he "has the Constitutional right to challenge a government-imposed

2    restriction irrespective if that restriction was recorded before or after the acquisition of the

3    Property in this controversy." (Dkt. No. 118 at 13.)  Plaintiff makes no argument challenging

4    Defendant's contention that he lacks standing to bring this suit.

5

6        Plaintiff's Opposition is supported by his own Statement of Genuine Disputes of

7    Material Fact, in which he disputes all eleven of Plaintiff's Uncontroverted Material Facts.

8    (Dkt. No. 115.)  Plaintiff further proffers the following exhibits:

9

10       1. Purchase Agreement, Loan Approval and Tax Title Certification;

11       2. Emails Between All Parties in Controversy Regarding Property Ownership;

12       3. SMMNA June 3, 2021, Implementation;

13       4. Plaintiff's Emails with County Regarding Solar Project;

14       5. County's Quit Claim Deeds of LOT 17 to Agoura and Calabasas;

15       6. County, Agoura, Calabasas, and LAFCO's Annexation Dispute of Property;

16       7. FERC QF, SCE, and WDAT; PURPA Preempts Local Law;

17       8. Structure Mounted Solar Projects Generally Do Not Require Regional

18       Approval (2019);

19       9. LOT 3 and LOT 17 Deed of Trust Schedule of Rents Conveyed in the

20       Amount of $0;

21       10. Title 22 Minor CUP for Open Space Development (2019 Ordinance).

22

23   (Dkt. Nos. 115-1 – 115-11.[3])

24

25   _____

     [3]  The Court uses Plaintiff's description of his exhibits for the purpose of noting them here.  (*See* Dkt. No. 115-1.)  As stated

26   above, the Court describes these exhibits in further detail to the extent necessary in its analysis.

27

28

1    Plaintiff's Opposition includes one additional exhibit – a copy of a notice from the

2    Central District of California's Bankruptcy Court rejecting a petition for filing for lack of a

3    correct filing fee. (*See* Dkt. no. 118-1.)

4

5    In the Reply, Defendant argues that Plaintiff's Opposition "contains little more than

6    hyperbole." (Dkt. No. 123 (Reply) at 2.)  Defendant further contends that Plaintiff's nearly

7    complete failure to refer to his exhibits in the Opposition – exhibits which Plaintiff argues

8    support his factual assertions – amounts to the failure to direct the Court's attention to specific,

9    triable facts, as Plaintiff is required to do. (*Id.* at 2-3.)  Defendant also argues that Plaintiff's

10   legal citations are largely inapposite in this case, and that Plaintiff "never presents any

11   competent evidence to dispute Defendant's simple assertions that Clinton Brown, as an

12   individual does not own '27250 Agoura Road' . . . and without ownership Brown lacks

13   standing to bring this lawsuit." (*Id.* at 3.)

14

15   Defendant next argues that Plaintiff's exhibits are all unauthenticated, as they "are not

16   supported by any affidavits, declarations, or answers to discovery" and "Plaintiff fails to

17   explain under penalty of perjury what each [] Exhibit is, what they mean, where the document

18   was obtained, and that they are true and correct copies." (*Id.* at 4.)  Defendant adds that

19   Plaintiff's exhibits fail to meet the standard for taking judicial notice under Federal Rule of

20   Evidence 201(b). (*Id.*)

21

22   Defendant further contends that Plaintiff raises previously-adjudicated issues, such as

23   whether the instant Motion may be heard by the Magistrate Judge, whether service was proper,

24   and whether Defendant's affirmative defenses fail as a matter of law. (*Id.* at 5-6.)

25   Defendant then reiterates his argument that Plaintiff has no standing to bring this lawsuit

26   because he has not proffered any admissible evidence to show he owns the subject property.

27   (*Id.* at 6-7.)  Defendant also contends that Plaintiff has not proffered evidence to show that he

28

8

1    has standing under an alternative theory, such as bringing suit as a shareholder of one of the
2    entities who own the property.  (*Id.* at 7.)

3

4        Lastly, Defendant argues that Plaintiff fails to raise any issues of material fact in support
5    of his Takings Clause claim because Plaintiff "provides no material fact or admissible
6    evidence to support this conclusory statement." (*Id.* at 8.)

7

8                    **REQUEST FOR JUDICIAL NOTICE [DKT. NO. 82-1]**

9

10       Upon a properly supported request by a party, a federal court may take judicial notice
11   of adjudicative facts.  FED. R. EVID. 201(a), (d).  Facts subject to judicial notice are those
12   which are "(1) generally known within the trial court's territorial jurisdiction; or (2) can be
13   accurately and readily determined from sources whose accuracy cannot reasonably be
14   questioned."  FED. R. EVID. 201(b).

15

16       Citing Federal Rules of Evidence 201 and 902, Defendant requests that the Court take
17   judicial notice of Defendant's ten exhibits set forth above.  (Dkt. No. 82-1.)  Plaintiff does not
18   object to these requests, does not dispute the authenticity or accuracy of the proffered
19   documents, or offer any reason that the Court should not take  judicial notice of them.  The
20   Court finds that Defendant's Exhibits 1, 2, 3, 5, and 6 are properly subject to judicial notice as
21   they are official records of the Los Angeles County Recorder's Office or printouts from the
22   public websites of the California Secretary of State and Los Angeles County Department of
23   Regional Planning.  (Dkt. Nos. 82-2, 82-3, 82-4, 82-6, 82-7.)  As such, these exhibits and the
24   facts therein "can be accurately and readily determined from sources whose accuracy cannot
25   reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Daniels-Hall v. National Educ.*
26   *Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (finding it appropriate to take judicial notice of
27   information displayed publicly on two school district websites in part because the information
28   "was made publicly available by government entities"); *see also Baldwin v. Washington*

*Mutual Bank, FA*, No. CV 19-01898 JAK (AGRx), 2019 WL 13252680, at *2 (C.D. Cal. Dec. 26, 2019) (public records maintained in the Los Angeles County Recorder's Office were judicially noticed on the ground that "their authenticity may be accurately and readily determined").

Defendant's Exhibit 4, a copy of the California Secretary of State's electronic filing of the registration and Articles of Organization for The Atlas LLC, as well as a copy of the California Secretary of State's Statement of Information concerning The Atlas LLC (Dkt. No. 82-5), is also a proper subject of judicial notice as information "made publicly available by [a] government entit[y]." *Daniels-Hall*, 629 F.3d at 998; Fed. R. Evid. 201(b)(2).

Defendant's Exhibits 7, 8, and 10 are all printouts of sections of the Los Angeles County Code, one of which (Exhibit 8) reflects a section of that code as it existed on June 25, 2018. (Dkt. Nos. 82-8, 82-9, 82-11.) These three exhibits are also proper subjects for judicial notice, as not only can their authenticity be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, but Defendant has provided corresponding links to the complete Los Angeles County Code (Dkt. No. 82-1 at 3-4), allowing the Court to affirmatively make such a determination. Fed. R. Evid. 201(b)(2); *see also AHCS – Mental Health and Wellness Inc. v. Los Angeles County*, No. CV 21-7694-RSWL-DFMx, 2021 WL 6495038, at *3 (C.D. Cal. Dec. 16, 2021) (courts "may take notice of local ordinances") (citations omitted).

Lastly, Defendant's Exhibit 9 is a copy of the Certified Minutes of the Los Angeles County Board of Supervisors adopting Ordinance No. 2002-0062Z on August 20, 2002, and accompanying information identifying the affected areas and lots. (Dkt. No. 82-10.) This exhibit is also proper subject of judicial notice. Fed. R. Evid. 201(b)(2); *Baldwin*, 2019 WL 13252680, at *2.

1

2

**EVIDENTIARY OBJECTIONS**

3          Defendant raises multiple objections to Plaintiff's Exhibits.  (Dkt. No. 123-2.)  In ruling

4   on a motion for summary judgment, the Court may only consider admissible evidence.  *See*

5   Fed. R. Civ. P. 56.  A party may object that the material used to "dispute a fact cannot be

6   presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  But, if

7   the evidence could be presented in an admissible form at trial, "then the contents may be

8   considered on summary judgment even if the evidence itself is hearsay."  *Burch v. Regents of*

9   *Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) (overruling objections that

10  evidence was irrelevant, speculative and/or argumentative).

11

12         A court must rule on material evidentiary objections.  *Norse v. City of Santa Cruz*, 629

13  F.3d 966, 973 (9th Cir. 2010).  Here, Plaintiff's exhibits 3 and 5-10 are irrelevant to the

14  pending Motion and are, therefore, inadmissible on that basis and not discussed herein.  Fed.

15  R. Evid. 401.  The Court finds that Plaintiff's remaining exhibits, including unauthenticated

16  email exchanges, are inadmissible hearsay not subject to any exception.  Therefore, these

17  exhibits also have not been considered in ruling on this Motion.  *See* Fed. Rule Evid. 801.  To

18  the extent the Court refers to those exhibits, it has done so only for context in explaining

19  Plaintiff's arguments.   In all other respects, in resolving Defendant's Motion, where this

20  Report and Recommendation cites evidence to which a party has objected, the objection is

21  impliedly overruled.  The Court denies as moot objections to any evidence on which it did not

22  rely.

23

24         **FACTS FOR WHICH THERE IS NO GENUINE DISPUTE**

25

26         The property that is the subject of this lawsuit is 27250 Agoura Road, an unincorporated

27  parcel of land whose Assessor Parcel Number APN is 2064-005-011, described as "LOT 3 in

28  TRACT NO. 33128" (the "Subject Property").  (Defendant's Statement of Uncontroverted

Facts ("SUF") No. 1 (Dkt. No. 84 at 2).)  On December 22, 1987, the County of Los Angeles approved the map of Tract No. 33128.  (Defendant's SUF No. 4 (Dkt. No. 84 at 3); Defendant's Ex. 5 (Dkt. No. 82-6).)  The County of Los Angeles concurrently accepted a dedication from the prior landowners of the Subject Property that included "the right to prohibit the construction of residential and/or commercial structures within Lot 3."  (Defendant's SUF No. 4; Defendant's Ex. 5 (Dkt. No. 82-6 at 2).)  This restriction is recorded on the official Tract Map 33128 in Book 1099, Pages 94 TO 97, through the Los Angeles County Official Record No. 87-2026009.  (Defendant's SUF No. 4 (Dkt. No. 84 at 3).)  The dedication of the Subject Property was made pursuant a development agreement dated November 29, 1984, between the prior landowners of the Subject Property and the County of Los Angeles.  (Defendant's SUF No. 5 (Dkt. No. 84 at 3-4); Defendant's Ex. 6 (Dkt. No. 82-7).)

On August 20, 2002, the County of Los Angeles designated the Subject Property through APN 2064-005-011 as an Open Space ("Zone O-S") in Ordinance No. 2002-0062Z. (Defendant's SUF No. 6 (Dkt. No. 84 at 4); Defendant's Ex. 3 (Dkt. No. 82-4); Defendant's Ex. 9 (Dkt. No. 82-10 at 18, 57).)  Premises in Zone O-S "shall remain essentially unimproved and buildings, structures, grading excavation, fill or other alterations shall be prohibited except for the specified uses listed as permitted or conditionally permitted in Section 22.16.030.C (Use Regulations)."  (Defendant's SUF No. 7 (Dkt. No. 84 at 4); Defendant's Ex. 10 (Dkt. No. 82-11)); *see also* Los Angeles County Code § 22.16.060(A) (2024).  As of October 16, 2023, the Subject Property was still designated as Zone O-S.  (Defendant's Ex. 3 (Dkt. No. 82-4).)

On December 13, 2016, the County of Los Angeles adopted an ordinance amending Title 22 of the Los Angeles County Code to *inter alia* establish or amend requirements for small-scale solar energy systems and utility-scale solar energy facilities.  (Defendant's SUF No. 9 (Dkt. No. 84 at 5); Defendant's Ex. 8 (Dkt. No. 82-9).)  That ordinance, in pertinent part, prohibits "[g]round-mounted utility-scale solar energy facilities within adopted Significant

12

1    Ecological Areas designated in the General Plan . . . ."  (*Id.*); *see also* Los Angeles County

2    Code § 22.140.510(C)(5)(a) (2024).

3

4           On November 12, 2020, the Subject Property was granted to The Atlas LLC, a California

5    Limited Liability Company.  (Defendant's SUF Nos. 8, 10 (Dkt. No. 84 at 4-6); Defendant's

6    Ex. 2 (Dkt. No. 82-3); Defendant's Ex. 4 (Dkt. No. 82-5).)

7

8           On September 1, 2021, Plaintiff submitted an application and supporting materials to

9    Defendant Los Angeles County Department of Regional Planning for a solar farm project.[4]

10   (Dkt. No. 42 at 4.)  On October 12, 2021, Defendant rejected the application and stated the

11   following:

12

13          Ground mounted utility scale solar facilities are not permitted in

14          Significant Ecological Areas as described in section 22.140.510(C)(5)(a)

15          found here: https://library.municode.com/ca/los angeles county/codes/code of

16          ordinances?nodeId=TIT22PLZO   DIV7STSPUS   CH22.140STSPUS

17          22.140.510REEN.  The proposed project site is located wholly within the

18          Santa Monica Mountains North Area Significant Ecological Area and for this

19          reason, the proposed project cannot be permitted at this location and the

20          application cannot be processed.

21

22   (*Id.*)

23

24   _____

25   [4]  Plaintiff sues Defendant Taylor in his official capacity as a senior planner employed by the Los Angeles County
     Department of Regional Planning.  (Dkt. No. 1 at 2.)  In light of the fact that an "official capacity suit is, in all respects
26   other than name, to be treated as a suit against the entity" and not against the official personally, *Kentucky v. Graham*, 473
     U.S. 159, 166 (1985), the Court refers to the Los Angeles County Department of Regional Planning as the Defendant in
27   this case.

28

                                          13

1

2

3

4

On January 28, 2022, The Atlas LLC transferred "an undivided 15% interest" in the Subject Property to Steve Weera Tonasut, Trustee of the Tonasut Family Trust dated June 14, 2004." (Defendant's Ex. 1.)  In that grant deed, Plaintiff signed on behalf of "Atlas, LLC," as a "member."  (*Id.*)

5

6

**LEGAL STANDARD**

7

8

9

10

11

12

13

14

15

16

17

18

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of offering proof of the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party's burden is met, the opposing party is required to go beyond the pleadings and, by the party's own affidavits or by other evidence, designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  The party opposing the motion must submit evidence sufficient to establish the elements that are essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

19

20

21

22

23

24

25

26

27

28

The Court must "view the facts in the light most favorable to the non-moving party and draw reasonable inferences in favor of that party." *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 784 (9th Cir. 2007).  Where different ultimate inferences reasonably can be drawn, summary judgment is inappropriate.  *Miller*, 454 F.3d at 988.  At summary judgment, "the court does not make credibility determinations or weigh conflicting evidence." *Porter*, 419 F.3d at 891 (citation omitted).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis upon which a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "material" only if it might affect the outcome of the lawsuit under governing law.  *Id.*

14

"Evidence may be offered to support or dispute a fact on summary judgment only if it could be presented in an admissible form at trial." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925-26 (9th Cir. 2014) (citation and internal quotation marks omitted); *see also Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial.'") (citations omitted). Purported evidence which "sets out mere speculation for the critical facts, without a showing of foundation in personal knowledge[ ] for the facts claimed to be at issue" is insufficient. *John M. Floyd & Assocs.*, 550 F. App'x at 360 (9th Cir. 2013). Conclusory statements are insufficient to defeat summary judgment. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 950 n.9 (9th Cir. 2011) (*en banc*).

To establish the existence of a factual dispute, an opposing party need not establish an issue of fact conclusively in its favor; it is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); *Int'l Union of Bricklayers v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir. 1985).

## DISCUSSION

### I.   Standing

#### a.  Legal Standard

The judicial power of federal courts only extends to "cases" or "controversies." *Nasby v. Nevada*, 79 F.4th 1052, 1056 (9th Cir. 2023) (*citing* U.S. Const. art. III, § 2, cl. 1). A "critical

15

component of the case-or-controversy requirement is standing." *Id.* To establish constitutional (Article III) standing,[5] a plaintiff must suffer an "injury in fact," which is the "invasion of a legally protected interest [that] is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The party invoking federal jurisdiction bears the burden of establishing standing. *Id.*

### b. Relevant Facts

As stated above, the parties to this action are only Plaintiff Brown and Defendant Taylor in his official capacity with the Los Angeles County Department of Regional Planning. (Dkt. No. 1 at 2.) The Subject Property is currently owned by The Atlas LLC, a California Limited Liability Company, and Steve Weera Tonasut, Trustee of the Tonasut Family Trust. (Defendant's Exs. 1, 2, 4.)

In The Atlas LLC's Articles of Organization on file with the California Secretary of State, Plaintiff is designated as the sole member, the agent for service of process, and the Chief Executive Officer. (Defendant's Ex. 4.)

In Plaintiff's Exhibit P1, Plaintiff proffers a receipt documenting a $10,000 wire transfer on July 6, 2020, concerning the Subject Property. (Dkt. No. 115-2.) That document reflects the "buyer" as Plaintiff Clinton Brown. (*Id.* at 1.) The same exhibit includes an email in which Plaintiff requests "the purchase agreement that was used in Escrow" in a transaction involving the Subject Property. (*Id.* at 2.) Additionally, the same exhibit also includes a copy of a "Disclosure Regarding Real Estate Agency Relationship" which identifies Plaintiff Clinton

---

[5] There are two doctrines governing whether a plaintiff has standing to proceed in federal court – namely (1) Article III or "constitutional standing" and (2) "prudential standing." *Potere v. Board of Trustees of State Bar of California*, No. 2:21-cv-05208-JAK-JC,   – it appears that only plaintiff's Article III standing is at issue in the  Motion.

Brown as both the buyer and buyer's agent. (*Id.* at 3-23.) That exhibit also includes a letter of "Conditional Loan Approval" dated June 22, 2020, in which the name "Clinton Brown" was handwritten in next to "Potential Borrower." (*Id.* at 24.)

Finally, the exhibit includes a copy of a "Foreclosure Due process Certification" dated January 25, 2021, for the Subject Property. (*Id.* at 25.) Plaintiff's Exhibit P7 includes a copy of a "Voluntary Consent to Release Non-Public Information," which purports to contain Plaintiff's digital signature and title as "Managing Director" of The Atlas, LLC. (Dkt. No. 115-8 at 2.) On January 28, 2022, The Atlas LLC transferred "an undivided 15% interest" in the Subject Property to Steve Weera Tonasut, Trustee of the Tonasut Family Trust dated June 14, 2004." (Defendant's Ex. 1.) In that grant deed, Plaintiff signed on behalf of "Atlas, LLC," as a "member." (*Id.*)

### c. The Parties' Arguments

Defendant contends that Plaintiff has failed to allege or show any individualized injury-in-fact, as he does not personally own the Subject Property, and that Plaintiff has failed to proffer evidence to show he is authorized to bring suit on behalf of the owners of the Subject property, including The Atlas LLC, in Plaintiff's capacity as a member. (Dkt. No. 82 at 12-16.) Defendant argues that, as a result, Plaintiff lacks standing to bring suit concerning the use of the Subject Property, regardless of whether the suit is considered direct or derivative. (*Id.*)

Plaintiff does not address this issue in his Opposition. (Dkt. No. 118.) However, in Plaintiff's Statement of Genuine Disputes of Material Fact, he disputes Defendant's SUF No. 1, that he does not own the Subject Property. (Dkt. No. 115 at 2.) In doing so, Plaintiff cites to Plaintiff's Exhibit P1, as well as Plaintiff's Exhibit 2, copies of email exchanges between Plaintiff, Steve Weera Tonasut, and another individual in January, August, and November 2022, concerning the deal in which Tonasut received a 15% ownership in the Subject Property,

1    and further discussion/disputes over how to further use and subdivide the property.  (Dkt. Nos.

2    115-2, 115-3.)

3

4         Plaintiff also cites an order issued by the District Judge in this case on December 5,

5    2023, denying Plaintiff's Motion for Preliminary Injunction and Request for Judicial Notice.

6    (Dkt. No. 105.) Plaintiff specifically points to a footnote in that order that states, "The Agoura

7    Property is at the center of another lawsuit by Brown against his alleged business partners in

8    the proposed solar farm.  *Clinton Brown v. Emil Assentato, et al*, Case No. 2:23-cv-02972-

9    MEMF-KS."  (*Id.* at 2 n.4; Dkt. No. 115 at 2.)  Additionally, Plaintiff cites Plaintiff's Exhibit

10   P3, a printout of a page on the Los Angeles County Department of Regional Planning's website

11   entitled, "Santa Monica Mountains North Area Plan."  (Dkt. No. 115 at 2-3; Dkt. No. 115-4.)

12   Plaintiff then cites the rejection letter for the solar farm (Dkt. No. 42 at 2) and argues, "Nowhere

13   in the Santa Monica Mountains North Area 'Final Document' does it prohibit solar farms."

14   (Dkt. No. 115 at 3.)

15

16        Next, Plaintiff cites to Plaintiff's Exhibit P4, which are unauthenticated copies of email

17   exchanges between Plaintiff and representatives of several Los Angeles County agencies,

18   Defendant included, between November 2020 and December 2022.  (Dkt. No. 115-5.)  In

19   reference to Plaintiff's Exhibit 4, Plaintiff argues that "[t]his LLC was not created for the

20   purpose of acquiring the 32.4 acres in unincorporated Los Angeles County" but instead to

21   "open a bar at 21201 Pacific Coast Hwy, Malibu, CA 90272."  (Dkt. No. 115 at 3.)  Plaintiff

22   further argues, "[I]t is disputable whether the entity is a disregarded or partnership entity," and

23   adds that he has "pierced the corporate veil' which in all fairness and justice must be set aside

24   to prevent fraud and ensure equity."[6]  (Dkt. No. 115 at 3.)

25   _____

26   [6]  Plaintiff provides a link to a page of the Internal Revenue Service's website discussing limited liability companies.  (Dkt. No. 115 at 3.)  The relevant language provides:  "A Limited Liability Company (LLC) is an entity created by state statute.

27   Depending on elections made by the LLC and the number of members, the IRS will treat an LLC either as a corporation, partnership, or as part of the owner's tax return (a "disregarded entity").  A domestic LLC with at least two members is

28   classified as a partnership for federal income tax purposes unless it files Form 8832 and elects to be treated as a corporation.

1    Plaintiff also disputes Defendant's SUF No. 2, which reflects that The Atlas LLC and

2    Steve Weera Tonasut (as Trustee of the Tonasut Family Trust) currently own the Subject

3    Property. (Dkt. No. 115 at 3.)  Here too, Plaintiff cites to Plaintiff's Exhibits 1 and 4, discussed

4    above. (*Id.* at 4.)  Plaintiff also cites to a portion of an earlier pleading in this case, specifically,

5    Defendant's reply in support of a motion to compel. (*Id.*; Dkt. No. 91.)  Plaintiff appears to be

6    referring to language in that reply stating, "Defendant does not have access to documents

7    related to [Plaintiff's] purchase and acquisition of the subject property, . . . ." (Dkt. No. 91 at

8    4.)  Plaintiff argues, "If the Government doesn't know who the legal landowner is, it's

9    indisputable that the public record itself is a material dispute requiring a jury's resolution."

10   (Dkt. No. 115 at 4.)

11

12   Plaintiff further disputes Defendant's SUF No. 3, which states that on October 12, 2021,

13   the date Plaintiff's solar farm application was denied, the Subject Property was owned solely

14   by The Atlas LLC. (*Id.*)  Plaintiff again cites to Plaintiff's Exhibits 2 and 4, and poses the

15   question, "Who was the owner on November 30, 2020, when application

16   UNCSOLR201128002452 was submitted to the County?" (*Id.*)

17

18   **d.  Discussion**

19

20   The Court begins with the direct evidence showing ownership of the Subject Property.

21   Defendant has proffered ample admissible evidence – specifically, copies of the relevant grant

22   deeds – showing that the Subject Property in this case is currently owned by The Atlas LLC

23   and Steve Weera Tonasut, Trustee of the Tonasut Family Trust. (Defendant's Exs. 1&2.)

24

25   For income tax purposes, an LLC with only one member is treated as an entity disregarded as separate from its owner,

26   unless it files Form 8832 and affirmatively elects to be treated as a corporation.  However, for purposes of employment tax
     and certain excise taxes, an LLC with only one member is still considered a separate entity. . . . If a single-member LLC

27   does not elect to be treated as a corporation, the LLC is a 'disregarded entity,' and the LLC's activities should be reflected
     on its owner's federal tax return." *Available at*: https://www.irs.gov/businesses/small-businesses-self-employed/single-

28   member-limited-liability-companies (last accessed on May 10, 2024).

1    Plaintiff has not proffered <u>any</u> admissible evidence that plausibly challenges the accuracy of

2    the grant deeds.  Indeed, the documents that Plaintiff relies upon to establish his purported

3    ownership of the property are all inadmissible hearsay for which Plaintiff has not established

4    that any exception will apply.  *See* F.R.E. 801.  Accordingly, the Court finds as a factual matter

5    that the Subject Property is owned by The Atlas LLC and Tonasut.  Put another way, because

6    Plaintiff fails to establish that he owns the Subject Property in an individual capacity, he has

7    not met his burden to establish an injury-in-fact based on individual ownership of the Subject

8    Property. *Nasby*, 79 F.4th at 1056.

9

10   However, as noted above, it is undisputed, based upon Defendant's admissible evidence,

11   that The Atlas LLC is the majority owner of the Subject Property, and the record establishes

12   that Plaintiff is the CEO and sole member of that company.  (Defendant's Exs. 1, 2, 4.)

13   Defendant contends that Plaintiff's position as a member of The Atlas LLC does not confer

14   standing because members of corporations and limited liability companies generally do not

15   have standing to bring direct suits for generalized harms to a company.  (Dkt. No. 82 at 12-16.)

16   However, "the same conduct" may result in injury to both the entity and the individual.  *RK*

17   *Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002).  The authority Defendant

18   relies on applies to situations in which members or shareholders attempt to bring suit when

19   they are unable to establish any direct, individual injury.  *See Gordon v. Virtumundo, Inc.*, 575

20   F.3d 1040, 1055 (9th Cir. 2009) (the individual plaintiff "failed to argue, let alone come forth

21   with evidence[] that[] . . . he has suffered any real harm" based on his company's receipt of

22   thousands of spam emails from the defendant); *Erlich v. Glasner*, 418 F.2d 226, 227 (9th Cir.

23   1969) ("It is clear that the claimed damages were suffered by the corporation, rather than by

24   appellant."); *PacLink Communications Intern., Inc. v. Superior Court*, 90 Cal. App. 4th 958,

25   964 (Cal. Ct. App. 2001) (where multiple members of a limited liability company filed suit as

26   individuals, the court found that the "members cannot be directly injured when the company is

27   improperly deprived of [] assets" because "[t]he injury was essentially a diminution in the value

28   of their membership interest in the LLC . . . .").

20

1    Here, Plaintiff brings a civil rights Complaint under 42 U.S.C. § 1983 on his own behalf,

2    not that of The Atlas LLC.  More specifically, Plaintiff alleges that the denial of his solar farm

3    application by Defendant amounted to a taking *from him*.  (Dkt. No. 1.)  The admissible

4    evidence in this case establishes that Plaintiff is the *sole* member of The Atlas LLC, not one of

5    many members or shareholders who may only suffer a generalized harm from an injury to the

6    company as a whole.  (Defendant's Ex. 4.)  Therefore, the evidence establishes that the harm

7    alleged in this case is more properly characterized as an injury to both The Atlas LLC and

8    Plaintiff, as its sole member.  *RK Ventures, Inc.*, 307 F.3d at 1057.  As a party claiming he was

9    injured-in-fact as the sole member of The Atlas LLC, Plaintiff has standing to bring suit.

10   *Nasby*, 79 F.4th at 1056.

11

12   The Court also notes there is no evidence to suggest that Plaintiff seeks to improperly

13   use The Atlas LLC as a shield in this lawsuit.  Whatever business reason Plaintiff elected to

14   acquire the Subject Property through his limited liability company instead of purchasing it

15   individually, it is undisputed that Plaintiff is the sole member of The Atlas LLC and the

16   applicant for the construction of a solar farm on the Subject Property.  (Defendant's Exs. 1, 2,

17   4; Dkt. No. 42.)  The Court concludes that the harm alleged in this case has been sufficiently

18   established as harm to Plaintiff himself.  (Dkt. No. 1; Defendant's Ex. 4.)  Consequently, the

19   Court finds that Plaintiff has proffered evidence sufficient to defeat summary judgment with

20   respect to Plaintiff's standing to bring suit in this case.  *Nasby*, 79 F.4th at 1056.

21

22   \\

23   \\

24   \\

25   \\

26   \\

27   \\

28   \\

## II.     The Takings Clause

### a.  The Parties' Arguments

As noted above, Plaintiff alleges in the Complaint that Defendant Los Angeles County Department of Regional Planning's October 12, 2021 rejection of his solar farm application violated the Takings Clause of the Fifth Amendment.  (Dkt. No. 1 at 4-7; *see also* Dkt. No. 42 at 3-4.)  Plaintiff brings his Takings Clause claim under the theory that "when a regulation impedes the use of property without depriving the owner of all economically beneficial use," a taking may still occur depending upon "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action."  (Dkt. No. 1 at 5-6 (citation omitted).)  Plaintiff argues that he "proceeded in good faith and with great expense to work with the Los Angeles County Department of Building and Safety to secure a permit to use the property for its highest and best use," and that the denial of his solar farm application "[w]ithout just compensation," amounts to "unjustly taking away the property owner's rights and destroying their ability to plan their own future."  (*Id.* at 5.)  Plaintiff adds that "[a] regulation which denies all economically beneficial or productive use of land requires compensation under the Takings Clause."  (*Id.*)

In the Motion, Defendant first argues that Plaintiff has "failed to allege or provide any facts related to a diminution of value of the Subject Property."  (Dkt. No. 82 at 18.)  In the absence of evidence showing a reduction in current value, Defendant reasons that to the extent any taking occurred, it would have been before Plaintiff purchased his property because – as Defendant's exhibits establish – the regulatory restrictions on that property were imposed years prior.  (*Id.*)

1

In a related argument, Defendant also contends that Plaintiff purchased the Subject

2 Property with constructive notice of the regulatory restrictions to the property, which included

3 the prohibition of a solar farm, so Plaintiff never possessed a cognizable property right to build

4 any residential or commercial structures. (*Id.* at 19-22.)

5

6

In the Opposition, Plaintiff makes a number of generalized statements about the law of

7 takings (in his view), and then argues that "[t]he date of the [S]ubject Property's acquisition

8 determines the amount of Just Compensation and interest. Thus, there is a genuine issue of

9 material fact that is in dispute." (Dkt. No. 118 at 8.) Plaintiff further argues that he "has the

10 Constitutional right to challenge a government-imposed restriction irrespective [of] if that

11 restriction was recorded before or after the acquisition of the Property in this controversy."

12 (*Id.* at 13.)

13

14

In the Reply, Defendant contends that Plaintiff has not adequately responded to

15 arguments made in the Motion, and that he "fails to raise genuine issues of material fact that

16 there was no regulatory taking because he fails to include any evidence supporting his claims

17 beyond conclusory, unsupported assertions." (Dkt. no. 123 at 8-11.)

18

19

**b. Legal Standard**

20

21

The Fifth Amendment's Takings Clause provides: "nor shall private property be taken

22 for public use, without just compensation." *Sheetz v. County of El Dorado, California*, ___

23 U.S. ___, 144 S. Ct. 893, 899 (2024). As the Supreme Court recently held:

24

25

> The Takings Clause's right to just compensation coexists with the States'

26 > police power to engage in land-use planning. (Though at times the two seem

27 > more like in-laws than soulmates.) While States have substantial authority to

28 > regulate land use, the right to compensation is triggered if they "physically

23

appropriat[e]" property or otherwise interfere with the owner's right to exclude others from it. That sort of intrusion on property rights is a *per se* taking.

*Id.* (citations omitted).

However, "[d]ifferent rules apply to State laws that merely restrict how land is used." *Id.* Judicial decisions considering regulatory takings claims are typically "characterized by essentially ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances." *Colony Cove Properties, LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (*quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302 (2002)). The goal is to determine whether regulatory actions "are functionally equivalent to the classic taking in which government directly appropriates private property." *Id.* (citation omitted).

In *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978), the Supreme Court articulated three factors that frame a regulatory takings analysis. *Colony Cove Properties, LLC*, 888 F.3d at 450. Specifically, "*Penn Central* instructs us to consider [1] the regulation's economic impact on the claimant, [2] the extent to which the regulation interferes with distinct investment-backed expectations, and [3] the character of the government action." *Colony Cove Properties, LLC*, 888 F.3d at 450 (citation and internal quotation marks omitted); *see also Penn Centr. Transp. Co.*, 438 U.S. at 124. "Primary among those factors are [t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations." *MHC Financing Ltd. Partnership v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013) (*quoting Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538-39 (2005)). The ultimate question is whether a plaintiff presents sufficient evidence on each of these factors to allow a reasonable finder of fact to conclude that the government's application of the regulation was "the functional equivalent of the direct

24

appropriation of the [p]roperty." *Colony Cove Properties, LLC*, 888 F.3d at 450.  The Court address each factor in turn.  *Id.*

### c.  Analysis

#### 1.  Economic Impact

"In considering the economic impact of an alleged taking, we 'compare the value that has been taken from the property with the value that remains in the property.'" *Id.* (*quoting Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987)).  "[E]conomic impact is determined by comparing the total value of the affected property before and after the government action." *Id.* (*citing MHC Financing Ltd. Partnership*, 714 F.3d at 1127).  "Projected income streams can contribute to a method for determining the post-deprivation value of property, but the severity of the loss can be determined only by comparing the post-deprivation value to pre-deprivation value." *Id.*  Most importantly, however, conclusory statements are insufficient to defeat summary judgment.  *Comite de Jornaleros de Redondo Beach*, 657 F.3d at 950 n.9.

Here, Plaintiff has not proffered any evidence of post-deprivation value of the Subject Property.  Indeed, Plaintiff has not even *alleged* a loss of value.  Furthermore, even if he had alleged any economic loss, to defeat summary judgment, Plaintiff must present admissible evidence of the nature and quantum of such loss, and he has not done.  *S. Cal. Darts Ass'n*, 762 F.3d at 925-26.

Indeed, at the summary judgment stage, Plaintiff must show what, if any, *diminution* in value has occurred based on the regulatory action taken.  *Comite de Jornaleros de Redondo Beach*, 657 F.3d at 950 n.9.  Even if The Atlas LLC paid for the property, *Colony Cove Properties, LLC*, 888 F.3d at 451, Plaintiff has presented is no valuation evidence in this case,

25

admissible or otherwise, as the relevant November 2020 grant deed does not reflect a value for the property.  (Defendant's Ex. 2.)  Regardless, Plaintiff has "presented no evidence, by virtue of analyzing diminished income streams or otherwise, of the post-deprivation value of the Property."  *Colony Cove Properties, LLC*, 888 F.3d at 451; *see also Penn Cent. Transp. Co.*, 438 U.S. at 130 (a party's attempt to "establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable.").

As a result, with respect to the first *Penn Central* prong, Plaintiff fails to present any evidence to create a triable question of fact as to any economic impact caused by Defendant's denial of his solar farm application.  *Id.* at 452.

## 2.  Distinct Investment-Backed Expectations

Despite Plaintiff's failure to establish his future economic expectations for the Subject property, it is not unreasonable to infer that he had a certain expectation of income based on the installation of a solar facility. But he neither makes this argument nor presents any admissible evidence in support thereof.  The record here is devoid of any evidence to support such a theory.

"To form the basis for a taking claim, a purported distinct investment-backed expectation must be objectively reasonable." *Id.* at 452.  On this issue, Defendant's evidence, which has not been rebutted in any way by Plaintiff's evidence, eliminates any potential genuine issues of material fact.  Specifically, Defendant has proffered ample admissible evidence showing that specific government-imposed restrictions against development on the Subject Property that led to the denial of Plaintiff's solar farm application have been in place since 1987.  (Defendant's SUF Nos. 4-9; Defendant's Exs. 3, 5&6, 8-10.)  The relevant restrictions were recorded on the official Tract Map 33128 in Book 1099, Pages 94 TO 97,

26

through the Los Angeles County Official Record No. 87-2026009. (Defendant's SUF No. 4); *see also* Los Angeles County Code § 22.16.060(A) (2024). As stated above, the Subject Property was granted to The Atlas LLC on November 12, 2020, after the restrictions at issue were imposed. (Defendant's SUF Nos. 8, 10; Defendant's Ex. 2; Defendant's Ex. 4.)

Whether or not Plaintiff had economic expectations for the Subject Property— a fact he has neither pled nor proffered any evidence to prove—— the undisputed evidence established that he has never, during the time The Atlas LLC has owned the Subject property, been permitted by law to develop that property for purposes of a solar farm. (Defendant's SUF Nos. 4-9; Defendant's Exs. 3, 5&6, 8-10.) On this point, Defendant's exhibits have accomplished precisely what is required at the summary judgment stage, i.e., piercing the pleadings so the Court may assess the proof in order to see whether there is a genuine need for trial. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Moreover, Plaintiff's arguments disputing whether the County of Los Angeles is correct in its assessment of the designation of the Subject Property does not advance his argument that a constitutional taking occurred here. Plaintiff has failed to present evidence supporting any investment-backed expectations under *Penn Central*'s second prong sufficient to defeat summary judgment. *Colony Cove Properties, LLC*, 888 F.3d at 454.

### 3.  Character of Government Action

A "taking" is more likely to occur "when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Id.*; *see also Penn Cent. Transp. Co.*, 438 U.S. at 125 ("[I]n instances in which a state tribunal reasonably concluded that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land," the Supreme Court "has upheld land-use regulations that destroyed or adversely affected recognized real property interests.").

Here, Defendant has proffered admissible evidence showing that the restrictions on the Subject Property were imposed by the County of Los Angeles because the property was designated as an open space zone in a Significant Ecological Area. (Defendant's Exs. 7, 9, 10.) Plaintiff has not rebutted that evidence or otherwise proffered any evidence to establish that the government otherwise singled him out for a reason unrelated to the Subject Property. *Colony Cove Properties, LLC*, 888 F.3d at 454-55. There is no genuine issue of material fact in this case concerning the character of the government action at issue. *First Nat'l Bank of Ariz.*, 391 U.S. at 290.

As noted above, to defeat summary judgment, Plaintiff must direct the Court to specific, triable facts supported by admissible evidence, and summary judgment cannot be avoided by relying solely on conclusory allegations unsupported by factual data. *So. Cal. Gas Co.*, 336 F.3d at 889; *Arpin*, 261 F.3d at 922. After thoroughly examining the evidence submitted by both sides, the Court concludes that Plaintiff's assertions that a constitutional taking occurred do not establish disputed issues of material fact sufficient to preclude summary judgment. Indeed, Plaintiff has failed to counter the law and evidence put forth by Defendant establishing that no such taking occurred here. *Miller*, 454 F.3d at 987; *Celotex Corp.*, 477 U.S. at 322.

\\
\\
\\
\\
\\
\\
\\
\\
\\

## CONCLUSION[7]

For the reasons outlined above, the Court concludes that no material, genuine, or triable issues of fact remain in this action and Defendant's Motion should be GRANTED in its entirety.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Report and Recommendation; (2) GRANTING Defendant's Motion for Summary Judgment in full; and (3) dismissing this action with prejudice.

DATED: May 15, 2024

KAREN L. STEVENSON
CHIEF MAGISTRATE JUDGE

---

[7] The Court rejects Defendant's argument that this action is barred by the relevant statute of limitations on the ground that "[i]f anyone has ever suffered a taking, it was the developer, who in 1987 gave up the right to develop LOT 3 in TRACT NO. 33128 (Subject Property) by the dedication of rights to the County." (Dkt. No. 82 at 23.) The referenced developer is not a party to this case, and while Plaintiff is critical of the circumstances surrounding the 1987 dedication, there is no allegation in the Complaint that the County of Los Angeles committed an unconstitutional taking that injured the owner of the Subject Property in 1987.

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.