Clinton Brown, Self-Represented
16821 Edgar Street
Pacific Palisades, CA 90272
clinton@atlasinc.solar
310-487-6453

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLINTON BROWN,<br><br>              Plaintiff,<br><br>vs.<br><br>CLARK R. TAYLOR, AICP, THE LOS ANGELES COUNTY DEPARTMENT OF REGIONAL PLANNING<br><br>              Defendant | **Case No**. 2:22-cv-09203-MEMF-KS<br><br>**Objections to Proposed Findings and Recommendations**[1]<br><br>**Judge**: Honorable Maame Ewusi-Mensah Frimpong[2]<br><br>**Magistrate Judge**: Karen L. Stevenson |

**NOTICE TO THE COURT**, all persons having business before this Court are *admonished* to draw near and give their attention…God save the United States and this Honorable Court. Last, the exhaustive nature of this objection isn't the Plaintiff just throwing paint on the wall to see what sticks; it's the Plaintiff's efforts to Jackson Pollack this case record, in the event of, a 1292(b) appeal. *See* Padgett v. Wright, 587 F.3d 983, 985 n. 2. (9th Cir. 2009). Culprit, how wilt thou be tried? Not by a Judge, but by a Jury.[3] *See* Black's Law Dictionary 160 (1st. ed 1891).

---

[1] 28 U.S.C. § 636(b)(1)(C) states, "*Within fourteen days* after being served with a copy, *any party may* serve *and* file written objections to such proposed findings *and* recommendations as provided by rules of Court. [Plaintiff's] untimely notice of appeal—*though filed in reliance upon the District Court's order*—deprived the [Court] of jurisdiction. *See* Bowles v. Russell, 551 U.S. 205, 207 (2007). Thus, because of this Court's Order, ECF No. 164, an appeal under 28 U.S.C. § 1292(b), though, not by-right, would be totally foreclosed, if the Plaintiff did not file this objection *within 14 days*. *See* Harrow v. Department of Defense, 23-21, slip op. at 8 (U.S. May 16, 2024) (*citing* Hamer v. Neighborhood Housing Servs. of Chicago, 583 U. S. 17, 25 (2017). "[T]he inherent powers of the Courts *may* be controlled *or* overridden by statute *or* rule." (emphasis added). *See* Smith v. Spizzirri, No. 22-1218, slip op. at 5 (U.S. May 16, 2024) (*quoting* Degen v. United States, 517 U. S. 820, 823 (1996)). This wasn't just a foul ball; this could have been a bench-clearing brawl.

[2] "A Judge of the Court *shall* make a *de novo* determination of those portions of the report *or* specified proposed findings *or* recommendations to which objection is made. A Judge of the Court *may* accept, reject, *or* modify, in whole *or* in part, the findings *or* recommendations made by the Magistrate Judge. The Judge *may* also receive further evidence *or* recommit the matter to the Magistrate Judge with instructions." *See* ECF No. 166-1. Just as "shall" means "shall" … ["may" means "may"] *See* Smith v. Spizzirri, No. 22–1218, slip op. at 4 (U.S. May 16, 2024) (modified).

[3] Less than 1% of civil actions filed in Federal Court are tried by a Jury. *See* 28 U.S.C. § 604(a)(2), United States Courts, Federal Judicial Caseload Statistics, Table C-4—U.S. District Courts—Civil Cases Terminated, by Nature of Suit and Action Taken—During the 12-Month Period Ending March 31, 2023 (Mar. 31, 2023).

## Objections[4]

| MSJ's Ground | Defendant's Argument | Court's Conclusion | MSJ's Ground Outcome | Plaintiff's Objection as a Matter of Law |
|---|---|---|---|---|
| 1. Standing *See* ECF No. 165 at 4. | Defendant contends that Plaintiff lacks standing to bring this lawsuit because he has failed to establish any ownership interest in the land at issue and has, therefore, not been injured-in-fact. (Dkt. No. 82 (Motion) at 12-16.) *See* ECF No. 165 at 4. | The Court concludes that the harm alleged in this case has been sufficiently established as harm to Plaintiff himself. (Dkt. No. 1; Defendant's Ex. 4.) Consequently, the Court finds that Plaintiff has proffered evidence sufficient to defeat summary judgment with respect to Plaintiff's standing to bring suit in this case. *Nasby*, 79 F.4th at 1056. *See* ECF No. 165 at 21. | Defeated *See* ECF No. 165 at 21. | None |
| 2. Fifth Amendment Takings Clause Claim *See* ECF No. 165 at 4. | Defendant argues that Plaintiff's Fifth Amendment Takings Clause claim fails because the property was purchased with constructive notice of the | Defendant has proffered ample admissible evidence showing that specific government-imposed restrictions against development on | Granted *See* ECF No. 165 at 27. | "[The] claim is not barred by the *mere* fact that title was acquired after the effective date of the state-imposed restriction." |

---

[4] *See* ECF No. 166-1 at 1-36 "Redlined Objections to Proposed Findings and Recommendations" † Two RJNs, ECF Nos. 75 & 163, have not been noticed by the Court. *See* Evid. Rule 201(c)(2) & (d). The Magistrate Judge also punted ECF Nos. 110 (moot), 133 & 137. *See* docket text at ECF No. 165. The Plaintiff respectfully requests that the Court *de novo* determine ECF Nos. 59, 89, 99, 114, 124, 126 & 157, *inter alia*, that "the Court conclude[d] that the harm alleged in this case has been sufficiently established as harm to Plaintiff himself." *See* ECF No. 165 at 21. And last, the District Judge's *de novo* review of the *full factual* record, for a just determination of the MSJ.

| | legal restrictions on the use of the land at issue, so the current owner never had the property right that Plaintiff claims was taken from him. (ECF No. 82 at 16-22.) *See* ECF No. 165 at 4. | the Subject Property that led to the denial of Plaintiff's solar farm application have been in place since 1987. [Statement Uncontroverted of Material Facts] ("SUF") (dkt. no. 84) Nos. 4-9; Defendant's Exs. 3, 5&6, 8-10.) *See* ECF No. 165 at 28. The relevant restrictions were recorded on the official Tract Map 33128 in Book 1099, Pages 94 TO 97, through the Los Angeles County Official Record No. 87-2026009. (Defendant's SUF No. 4); see also Los Angeles County Code § 22.16.060(A) (2024). As stated above, the Subject Property was granted to The Atlas LLC on November 12, 2020, after the restrictions at issue were imposed. (Defendant's SUF Nos. 8, 10; Defendant's Ex. 2; Defendant's Ex. 4.) *See* ECF No. 165 at 27-28 | | *See* Palazzolo v. Rhode Island, 533 U.S. 606, 630 (2001). In a direct condemnation action, *or* when a Government has **physically** invaded the property without filing suit, any award goes to the owner at the time of the Taking, and that the right to compensation is not passed to a subsequent purchaser. *Id.* at 628. (Cross-Reference Ground 3 – Defeated); *See* ECF Nos. 75 at 2. & 118 at 8 (Tarp Photos) *See* 18 U.S.C. § 1621(2)) |

| | | | | |
|---|---|---|---|---|
| 3. Statute of Limitations *See* ECF No. 165 at 4. | Defendant contends that "the previous landowners in 1987 dedicated the Subject Property to allow the County of Los Angeles to prohibit residential and/or commercial structures," and therefore, "[i]f anyone has ever suffered a taking, it was the developer, who in 1987 gave up the right to develop LOT 3 in TRACT NO. 33128 (Subject Property) by the dedication of rights to the County." Since the alleged constitutional violation occurred in 1987, Defendant argues that the two-year statute of limitations for bringing the present claim expired decades ago. (Id. at 22-23.) See ECF No. 165 at 4. | The Court rejects Defendant's argument that this action is barred by the relevant statute of limitations on the ground that "[i]f anyone has ever suffered a taking, it was the developer, who in 1987 gave up the right to develop LOT 3 in TRACT NO. 33128 (Subject Property) by the dedication of rights to the County." (Dkt. No. 82 at 23.) The referenced developer is not a party to this case, and while Plaintiff is critical of the circumstances surrounding the 1987 dedication, there is no allegation in the Complaint that the County of Los Angeles committed an unconstitutional taking that injured the owner of the Subject Property in 1987. *See* ECF No. 165 at 29 n.7. | Defeated *See* ECF No. 165 at 29 n. 7. | None |

**Legal Standard**

    a.  **Takings Clause**

The Takings Clause of the Fifth Amendment states: "nor shall private property be taken for public use, without Just Compensation."[5] [The Court] ha[s] explained that "a property owner acquires an irrevocable right to Just Compensation immediately upon a Taking [b]ecause of the Self-Executing character of the Takings Clause with respect to compensation. *See* Knick, 588 U. S. 180, 192 (2019) (*quoting* First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U. S. 304, 315 (1987)). *See* DeVillier et al. v. Texas, 601 U.S. 285, 291 (2024). The Takings Clause of the Fifth Amendment [is] applicable to the states through the Fourteenth Amendment. *See* Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 241 (1897)[6] Last, by requiring the Government to pay for what it takes, the Takings Clause saves individual property owners

---

[5] The language used in the Fifth Amendment in respect to this matter is happily chosen. The entire amendment is a series of negations, denials of right or power in the Government, the last, the one in point here, being, "Nor shall private property be taken for public use without Just Compensation." The noun "compensation," standing by itself, carries the idea of an equivalent. Thus we speak of damages by way of compensation, or compensatory damages, as distinguished from punitive or exemplary damages, the former being the equivalent for the injury done, and the latter imposed by way of punishment. So that if the adjective "just" had been omitted, and the provision was simply that property should not be taken without compensation, the natural import of the language would be that the compensation should be the equivalent of the property. And this is made emphatic by the adjective "just." There can, in view of the combination of those two words, be no doubt that the compensation must be a full and perfect equivalent for the property taken. And this Just Compensation, it will be noticed, *is for the property, and not to the owner*. Every other clause in this Fifth Amendment is personal. "No person shall be held to answer for a capital, or otherwise infamous crime," etc. Instead of continuing that form of statement, and saying that no person shall be deprived of his property without just compensation, the personal element is left out, and the "Just Compensation" is to be a full equivalent for the property taken. This excludes the taking into account, as an element in the compensation, any supposed benefit that the owner may receive in common with all from the public uses to which his private property is appropriated, and leaves it, to stand as a declaration, that no private property shall be appropriated to public uses *unless a full and exact equivalent for it be returned to the owner*. *See* Monongahela Nav. Co. v. United States, 148 U. S. 312, 325 (1893); *In re* Hastings Lock and Dam, 2 F. Supp. 324, 328 (D. Minn. 1932)

[6] *Whatever may have been the power of the states on this subject prior to the adoption of the Fourteenth Amendment to the Constitution*, it seems clear that, since that Amendment went into effect, such limitations and restraints have been placed upon their power in dealing with, individual rights that the states cannot now lawfully appropriate private property for the public benefit *or* to public uses *without compensation to the owner*,' *and that any attempt so to do*, whether done in pursuance of a constitutional provision *or* legislative enactment, whether done by the legislature itself or under delegated authority by one of the subordinate agencies of the state, and whether done directly, by Taking the property of one person and vesting it in another *or* the public, *or* indirectly through the forms of law, by appropriating the property *and* requiring the owner thereof to compensate himself, *or* to refund to another the compensation to which he is entitled, would be wanting in that 'due process of law' required by said Amendment. The conclusion of the Court on this question is, that since the adoption of the Fourteenth Amendment compensation for private property Taken for public uses constitutes an essential element in 'due process of law,' and that without such compensation the appropriation of private property to public uses, *no matter under what form of procedure it is taken, would violate the provisions of the Federal Constitution*. *Id*. at 238-239. (emphasis & capitalizations added) *accord with* Sheetz (2024).

from bearing "public burdens which, in all fairness and justice, should be borne by the public as a whole." *See* Armstrong v. United States, 364 U. S. 40, 49 (1960).

### b. Inverse Condemnation

Inverse condemnation is *a cause of action against a Governmental* defendant to recover the value of property which has been taken in fact by the Governmental defendant. (emphasis in the original). *See* United States v. Clarke, 445 U.S. 253, 257 (1980). *[H]ow the Government acts may vary but the Constitution's standard for assessing those actions does not*. (emphasis added). It does so because our Constitution deals in substance, not form. However the Government chooses to act, whether by way of regulation 'or statute, or ordinance, or miscellaneous decree,' it *must* follow the same Constitutional rules. (*quoting* Cedar Point Nursery v. Hassid, 594 U. S. 139, 149 (2021). (emphasis added) *See* Sheetz v. County of El Dorado, California, 601 U.S. 267, 281-282 (2024). (Gorsuch, J. concurring)

### c. Categorical Taking

*A categorical Taking occurs when [a] "regulation[s]" denies <u>all</u> economically beneficial use of land, making it unnecessary to balance other factors like reasonable investment-backed expectations and legitimate Government interests*. (emphasis added). *See* Dodd v. Hood River Cty.,136 F.3d 1219, 1228 & 1230, (9th Cir. 1998) (*citing in accord* Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992)).

A public way is established either by the dedication of the owner of the land *or* by an appropriation of the land for the purpose by the sovereign authority, under what is called the 'right of eminent domain.' When this right is exercised, it must be in pursuance of some express legislative authority which prescribes the formalities, *and compensation must be made to the owner*. (emphasis added). *See* Scott v. City of Toledo, 36 F. 385, 394–95 (C.C.N.D. Ohio 1888).

### d. *Per Se* Taking

While states have substantial authority to regulate land use, *see* Village of Euclid v. Amber Realty Co., 272 U. S. 365 (1926), the right to compensation is triggered if [the Government] "physically appropriat[e]" property *or* otherwise interfere with the owner's right to exclude others

from it, *see* Cedar Point Nursery v. Hassid, 594 U. S. 139, 149–152 (2021). That sort of intrusion on property rights is a *per se* Taking. *See* Loretto v. Teleprompter Manhattan CATV Corp., 458 U. S. 419, 426 (1982)."[7] (*quoting* Sheetz v. County of El Dorado, California, 601 U.S. 267, 274 (2024)). *See also*, ECF No. 75 at 2. (Figure 1 below).



Figure 1: The County's physical appropriation of Plaintiff's property discovered on September 22, 2023.

### e. The Right to Build

[T]he *right to build on one's own property*, even though its exercise can be subjected to legitimate permitting requirements, cannot remotely be described as a "Governmental benefit." *See* Nollan v. California Coastal Comm'n, 483 U.S. 825, 834, n. 2 (1987). That's indisputable.[8]

### Discussion

**THE COURT**: Okay. And so to your understanding, the open space designation, pursuant to that ordinance does prohibit residential uses?

---

[7] [The Court's] cases establish that even a *minimal* "permanent physical occupation of real property" requires compensation under the Clause. *See* Loretto at 427 (1982).

[8] Even if the Court determines that a new argument has been raised (which there has not), it could have only been raised *at this time*. (emphasis added). The *exact* same document that was proffered by the Government and judicially noticed in R&R at 12, was originally introduced by the Plaintiff, yet that same document was not judicially noticed *or* acknowledged. *See* ECF No. 55 at 3 n. 1. (https://pw.lacounty.gov/sur/nas/landrecords/tract/MB1099/TR1099-094.pdf) Tract Map 33128, May 24, 1985, 1, para 1.). *And* "The County of Los Angeles concurrently accepted a dedication from the prior landowners of the Subject Property that included "the right to prohibit the construction of residential and/or commercial structures within Lot 3." (Defendant's SUF No. 4; Defendant's Ex. 5 (Dkt. No. 82-6 at 2).) This restriction is recorded on the official Tract Map 33128 in Book 1099, Pages 94 TO 97, through the Los Angeles County Official Record No. 87-2026009. (Defendant's SUF No. 4 (Dkt. No. 84 at 3).) The Plaintiff does not object to *any* of the evidence accepted by the Court in the R&R. *See* ECF No. 166-1 at 5 & 6., *supra* at n. 4.

**COUNTY**: Well, it was -- what it does is it -- it says, you know, the premises *must* remain in essentially unimproved building structures grading excavation. (emphasis added).

See ECF No. 152, Tr. of TRO hearing at 17 (March 15, 2024).

**PLAINTIFF**: Well, my question is -- I mean, must means must, right?

See ECF No. 131, Tr. of Videoconference hearing at 11 (December 6, 2023).

> WE HEREBY DEDICATE TO THE COUNTY OF LOS ANGELES THE RIGHT TO PROHIBIT THE CONSTRUCTION OF RESIDENTIAL AND/OR COMMERCIAL STRUCTURES WITHIN LOT 3. AS A DEDICATION TO PUBLIC USE, WHILE ALL OF LIBERTY CANYON ROAD WITHIN OR ADJACENT TO THIS SUBDIVISION REMAINS A PUBLIC STREET WE HEREBY ABANDON ALL RIGHTS OF DIRECT VEHICULAR INGRESS AND EGRESS FROM ABUTTING LOTS TO THE SAID STREET, AND AS A DEDICATION TO PUBLIC USE, WHILE ALL OF AGOURA ROAD WITHIN OR ADJACENT TO THIS SUBDIVISION REMAINS A PUBLIC STREET, WE HEREBY GRANT TO THE COUNTY OF LOS ANGELES THE RIGHT TO RESTRICT DIRECT VEHICULAR INGRESS AND EGRESS TO THE SAID STREET. IF ANY PORTION OF SAID STREETS WITHIN OR ADJACENT TO THIS SUBDIVISION ARE VACATED, SUCH VACATION TERMINATES THE ABOVE DEDICATIONS AS TO THE PART VACATED.

Figure 2: Undisputed Fact #5. *See* ECF No. 166-1 at 5

### a. Permit(s)

Whether a solar permit would be granted *or* denied (as in this case), *or any* other permit would be granted *or* denied…is entirely immaterial. The Government will still '*physically*' occupy the Plaintiff's private property. (emphasis added). The Court erred in applying the the *Penn Test*, when this is clearly a *per se* Taking. Under a *per se* Taking the Plaintiff is unable to provide *any* evidence that would meet *any* of the *Penn Test* requirements. And this is the case here. *See* ECF No. 166-1 at 26.

Again, whether a permit is granted *or* denied for a solar farm *or* an ant farm, the Government '*physically*' occupies the property by having the 'right' to exclude others that the titled private owner does not want included or excluded *or* vice versa. (*i.e.,* ingress and egress). Even if the Plaintiff was able to secure *any* permit from the County to build *anything* on the property, how would the Plaintiff allow trucks with materials to ingress and egress on and off the property when the County has the right to prohibit ingress and egress from *anywhere* on the property? What about the Plaintiff having the right of ingress *or* egress himself? *See* ECF No. 145 at n. 9. Even at this very moment the Plaintiff is unable to ingress *and* egress to and from his own

private property by-right, no doubt.[9] That's a *per se* Taking.

The [Federal] Constitution expressly declares that the right of acquiring, possessing, and protecting property is natural, inherent, and unalienable. It is a right not *ex gratia* from the legislature, but *ex debito* from the Constitution. *See* Vanhorne's Lessee v. Dorrance, 2 U.S. 304, 311 (1795). *In other words*, it's a Constitutional right, not one County's favor or disfavor.[10]

## Federal Rules of Evidence Legal Standard

### a. Congress Enacted the FRE

*In principle*, under the Federal Rules no common law of evidence remains… All relevant evidence is admissible, except as otherwise provided. . . *See* United States v. Abel, 469 U.S. 45, 51-52 (1984) *accord* Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 n. 6 (1993) (common law of evidence has been "superseded" by the Congressionally enacted Federal Rules of Evidence.) (alteration in the original). *In other words*, the Government's generic & vague objections to the Plaintiff's evidence, which was accepted by this Court, warrants a *de novo* review as mandated in 28 U.S.C. § 636(b)(1)(C). As noted previously in the Objection Chart, even though *none* of the Plaintiff's proffered evidence was admitted, (even at this stage of the controversy), the Plaintiff defeated the Government on two of the three grounds for which their MSJ relied on. There is no doubt that the evidence proffered by the Plaintiff *could* be submitted in admissible form at trial. Most if not, all, are from sources whose accuracy cannot be reasonably questioned & as to the contents, well, that's a whole different ballgame for a Jury, not a Judge. Even if this Court reaffirms the Magistrate Judge's vague, non-specific evidence calls, and, in some cases, no evidence calls at all, the fact remains, that the Government's MSJ Ground 2, as a matter of law, is

---

[9] Even if the Government "promises" never to invoke that power of the right to prohibit ingress and egress to and from *any* corner of his private property, the Plaintiff would still be subservient to the Government's potential abuse of power. *Any* reasonable Jury would understand why it would be nearly impossible to have *any* investment-backed expectations, even if a permit were to be granted, because the owner's right to "ingress and egress" & allow or disallow others is controlled by the Government, not the titled private property owner.

[10] "1823, in the *Green v. Biddle* case... The right to land essentially implies a right to the profits from it since, without the latter, the former can be no value. Thus, a devise of the profits of land *or* even a grant of them will pass a right to the land itself. [The Government] ha[s] everything but title, but they do have title. There's no difference. [T]heir claim is that, oh, we can just take someone's [] constitutional right [to private property without Just Compensation]." (modified), *See* Transcript of September 23, 2023, oral hearing, ECF No. 80 at 30-31.

defeated by Supreme Court precedent, that this Court is bound to uphold. *See* Palazzolo v. Rhode Island, 533 U.S. 606, 630 (2001).

### b. Expert Witness Appointment

Invocation of Fed. R. Evid. 706 power is especially appropriate to protect . . . *the public interest*. (emphasis added). In such cases, many Courts rightly assume there is a heightened judicial duty to see that the abuses and inadequacies of the adversaries should not be permitted to obscure the truth. *See* 29 Charles Alan Wright et al., Federal Practice and Procedure (Wright) § 6302 (2d ed. Sept. 2018 Update). Ultimately, the most important question a Court must consider when deciding whether to appoint a neutral expert witness is whether doing so will promote accurate fact-finding *See* Gorton v. Todd, 793 F.Supp.2d 1171, 1180 (E.D. Cal. 2011)[11]; *see also* Wright § 6304 ("The policy goal of Rule 706 is to promote accurate fact-finding."); *See* G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc., 671 F. Supp. 2d 1203, 1209 (D. Nev. 2009) (appointing independent expert under Fed. R. Evid. 706 to "uncover and collect evidence . . . toward resolution of pretrial motions" and to submit final report to parties). The Appellate Court reviews a District Court's refusal to appoint an expert for abuse of discretion. *See* Scott v. Spanjer Bros., Inc., 298 F.2d 928, 931 (2d Cir. 1962); Sink, The Unused Power of a Federal Judge to Call His Own Expert Witnesses, 29 S.Cal.L.Rev. 195 (1956); 2 Wigmore § 563, 9 Id. § 2484; Annot., 95 A.L.R. 2d. 383 *See also*, Title 28 Appendix, Rules of Evidence, Rule 706, Notes of Advisory Committee on Proposed Rules, at 398.

Fed. R. Evid. Rule 102 mandates [from *Congress*] that, "[t]hese rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just

---

[11] [The District Judge] note[s] that under the *Celotex* standard, one might argue that summary judgment may be granted without this proof in light of the fact that Plaintiff bears the burden of proof on this issue at trial. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). However, we believe it would be incongruous to deny the non-moving party the ability to present the necessary proof to withstand a motion for summary judgment - as the [Magistrate Judge] did here by denying the Rule 706 motion - and then grant summary judgment against the non-moving party simply because the non-moving party has failed to come forward with such proof.

determination." Rule 706(c) allows just that, *in a civil case involving Just Compensation under the Fifth Amendment*.

### c. Evidence Rules in this Court

Last, rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which Courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice. *See* Hormel v. Helvering, 312 U.S. 552, 557 (1941)

### Federal Rules of Evidence Discussion

### a. Federal Rules of Evidence in MSJ

The Court must view evidence and all justifiable inferences in the light most favorable to the nonmoving party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).[12] "Tract No. 33128, recorded on December 21, 1987, Los Angeles County Official Record #87-2026009, which *states in all caps*, "We hereby dedicate to the County of Los Angeles the right to prohibit construction of residential and/or commercial structures within lot 3" in the first paragraph of the first page[.] (emphasis added) *See* ECF No. 165 at 5, #5 (Undisputed Facts). *Well*, the antecedent to that question is whether a grant *or* denial of a permit for *any* use matters? This isn't a new argument; this is a new fact that the Court did not consider & which there is no difference if answered by the County in the affirmative *or* negative. The bottom line will be that the Plaintiff is still not entitled to include *or* exclude others, including himself, because the Government occupies

---

[12] Our holding that the clear-and-convincing standard of proof should be taken into account in ruling on Summary Judgment motions does not denigrate the role of the Jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a Judge, whether he is ruling on a [MSJ] *or* for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes*, 398 U.S., at 158-159. Neither do we suggest that the trial Courts should act other than with caution in granting Summary Judgment *or* that the trial court may not deny Summary Judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249 (1948), *See* Anderson at 255.

and controls the private property & thus is entitled to make those decisions, not the titled owner. Therefore, a *per se* Taking has occurred. *That's indisputable.*[13]

## Conclusion

*And* lest we forget, that planting our flag, whether on the shores of Plymouth Rock or the Surface of the Moon, in this Nation, we have inalienable rights to choose where we want to live & raise our families without Government interference.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: May 29, 2024 | */s/ Clinton Brown*, Self-Represented<br>16821 Edgar Street,<br>Pacific Palisades, CA 90272<br>clinton@atlasinc.solar<br>310-487-6453 |

CC: All Counsel of Record (via ECF) on May 29, 2024

---

[13] Even if the Court determines that a new argument has been raised (which there has not), it could have only been raised *at this time*. (emphasis added). *Cf.* ECF No. 55 at 3 n. 3. The exact same document that was proffered by the Government and judicially noticed in ECF No. 165 at 12, yet that same document was not judicially noticed *or* acknowledged. *See* ECF No. 55 at 3 n. 1. (https://pw.lacounty.gov/sur/nas/landrecords/tract/MB1099/TR1099-094.pdf Tract Map 33128, May 24, 1985, 1, para 1.). *And* "The County of Los Angeles concurrently accepted a dedication from the prior landowners of the Subject Property that included "the right to prohibit the construction of residential and/or commercial structures within Lot 3." (Defendant's SUF No. 4; Defendant's Ex. 5 (Dkt. No. 82-6 at 2).) This restriction is recorded on the official Tract Map 33128 in Book 1099, Pages 94 TO 97, through the Los Angeles County Official Record No. 87-2026009. (Defendant's SUF No. 4 (Dkt. No. 84 at 3).)