Clinton Brown, *Self-Represented*
1431 Ocean Ave, Unit 413
Santa Monica, CA 90401
clinton@atlasinc.solar
310-775-7990

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON BROWN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CLARK R. TAYLOR, AICP, THE LOS ANGELES COUNTY DEPARTMENT OF REGIONAL PLANNING,<br><br>　　　　Defendant. | **Case No**. 2:22-cv-09203-MEMF-KS<br><br>**Application for TRO & Show Cause**[1]<br><br>**Judge:** Honorable Maame Ewusi-Mensah Frimpong<br><br>**Chief Magistrate Judge:** Karen L. Stevenson<br><br>**Time:** 10 A.M.<br><br>**Date:** January 16, 2025<br><br>**Place:** Courtroom 8B |

　　　　**NOTICE TO THE COURT**, a wildfire crisis started on January 7, 2025, when several wildfires devastated locations in and around Los Angeles, destroying homes (including Plaintiff's former residence in Pacific Palisades) and displacing thousands of residents. Plaintiff has prepared plans for the immediate construction of 200 housing units to address the crisis. Over 600 individuals and families have signed up to live in the proposed homes. *See* Brown Decl. Despite Plaintiff's readiness, the Government refuses to issue the necessary permits, effectively blocking recovery efforts. The Government's inaction exacerbates the housing crisis, prolongs suffering for displaced individuals, and denies Plaintiff the lawful use of his property.

## Legal Standard

　　　　The legal standard for a temporary restraining order is substantially similar to the standard for a preliminary injunction. *See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008). "A plaintiff

---

[1] *See* Rule 65(b), L.R. 65-1, L.R. 7-19 & Civil Standing Order § XII.

seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20 ("*Winter* Test"). Under the "serious question" approach adopted by the Ninth Circuit, a party may win an injunction by showing "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant relief of the same character as that which may be granted finally. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). Here, that is removing the prohibition that leaves Plaintiff's property completely economically idle, *infra*. That is the nature of the action in this controversy.

### a. Likelihood of Success on the Merits

"To state a claim under the Takings Clause, a plaintiff must establish the following: (1) the plaintiff must own private property as contemplated under the Takings Clause; (2) that private property must be taken for public use; and (3) the taking entity must not have paid just compensation for it. U.S. Const. Amend. 5." *Zeyen v. Bonneville Joint Dist.*, No. 23-35438 (9th Cir. Aug. 23, 2024) at 18, B. The Plaintiff owns the private property in question, that property has been taken for public use by the Government's claimed "right to prohibit the construction of residential and/or commercial structures" on the property, and Just Compensation has not been paid to the Plaintiff for this harm. *See* ECF No. 182.

The Government's refusal to grant *any* permit constitutes a regulatory taking under the Fifth Amendment by depriving Plaintiff of all economically viable use of his property. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992). (When owner of real property has been called upon to sacrifice all economically beneficial use of property in name of common good, that is, to leave his property economically idle, he has suffered a "taking" within meaning of Fifth

Amendment.); *see also* Fn. 8.² Zoning ordinance must be clearly arbitrary and unreasonable and without substantial relation to public health, safety, morals, or general welfare before it can be declared unconstitutional. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). [The] claim is not barred by the mere fact that title was acquired after the effective date of the state imposed restriction. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 630 (2001). (It suffices to say that a regulation that otherwise would be unconstitutional absent compensation is not transformed into a background principle of the State's law by mere virtue of the passage of title.) *Id.* at 629–30. Thus, Plaintiff is likely to succeed on the merits *or* serious questions going to the merits are raised.

**b. Irreparable Harm**:

Without the permits, the Plaintiff cannot proceed with the construction of urgently needed housing, causing significant and irreparable harm to wildfire victims who are in desperate need of shelter. The delay also imposes irreparable harm on the Plaintiff's property rights by rendering the property economically idle and preventing its highest and best use, in direct violation of constitutional protections under the Fifth and Fourteenth Amendments.

The irreparable nature of such harm is well-established in Takings Clause jurisprudence, where courts have recognized that property owners are entitled to injunctions to prevent the Government from interfering with their property rights through measures such as easements or restrictive zoning regulations. *See Dohany v. Rogers*, 281 U.S. 362, 364 (1930); *Delaware, L. & W. R. Co. v. Morristown*, 276 U.S. 182, 188 (1928); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 384 (1926); *Cuyahoga River Power Co. v. Akron*, 240 U.S. 462, 463 (1916); *Norwood v. Baker*, 172 U.S. 269, 276 (1898). Most recently, the Supreme Court reaffirmed this principle in *Devillier v. Texas*, 144 S. Ct. 938, 943-44 (2024).

---

² It has already been established in this Court that the Plaintiff cannot live on his own property, despite being evicted from the Palisades house that tragically burnt down. *See* ECF No. 146 at 6, n. 9. Plaintiff cannot install a solar farm. *See* ECF No. 1. Plaintiff cannot install a sign. *See* ECF No. 114 at 3. The entirety of Plaintiff's 32.4 acres must remain "essentially unimproved" despite being ordered to clear cut the property or face a $37,414.00 charge. *See* L.A. Cnty. Code § 22.16.060 (2025); ECF No. 59. (June 22, 2023). "Additionally, for any premises located within a significant ecological area such uses shall be subject to a Minor Conditional Use Permit (Chapter 22.160) application." *Id.* The Government has not met its burden to explain that any of these policies, as applied to the Plaintiff, are Constitutional. The Government's position is 'let the Plaintiff eat cake.'

### c. Balance of Equities:

"In assessing whether the plaintiffs have met this burden, the district court has a "duty . . . to balance the interests of all parties and weigh the damage to each." *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). Here, granting relief imposes minimal, if any harm on the Government but provides significant benefits to displaced residents and Plaintiff's property rights. Thus, the balance of equities tips strongly in the Plaintiff's favor.

### d. Public Interest:

[T]he right to build on one's own property, even though its exercise can be subjected to legitimate permitting requirements, cannot remotely be described as a "Governmental benefit." *See Nollan v. California Coastal Comm'n,* 483 U.S. 825, 834, n. 2 (1987). "A December 21, 1987 recorded tract map reflects that the land that Plaintiff ultimately acquired was dedicated to the County, expressly giving the County "the right to prohibit the construction of residential and/or commercial structures" upon the property." *See* ECF No. 43 at 4. It is squarely not in the public interest for private property rights to be subject to "clearly arbitrary and unreasonable" Government regulations, *prima facie*.

"If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *See Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1138-39 (9th Cir. 2009). Here, the public interest is not only affirming private property rights, but also providing housing to nearly 600 victims of the still smoldering wildfires in and around Los Angeles. This TRO obviously impacts the public interest in view of the Government's efforts to house its citizens. In other words, failing to grant this TRO risks further eroding public trust in the Government's ability to meet housing demands, particularly in the face of wildfire disasters, and could dissuade future initiatives aimed at alleviating housing shortages, such as the Plaintiff's here.

## Discussion

The devastation caused by the wildfires has left thousands homeless in Southern California. This Court has an opportunity to provide immediate relief by compelling the Government to issue permits for the development of housing urgently needed by 600 individuals and families who have already committed to living in these homes. The refusal of the Government to issue permits not only exacerbates the immediate wildfire recovery efforts but also perpetuates a larger housing crisis that the State of California has had to address through litigation against local governments, including many in Los Angeles County.

Unless this Federal Court compels an answer from the Government, there will be no progress in rebuilding homes for wildfire victims or addressing the state's broader housing emergency or solving this Plaintiff's Fifth Amendment Takings claim. This denial is just another attempt by the Government to silence the Plaintiff for advocating what his property should be used for, in its highest and best use.

## Conclusion[3]

The irreparable harm in this case is clear: there would be no Taking but for the Government's denial of the 200 housing permits, as well as the other denials that are central to this matter. *See* Fn. 2. Granting the requested permits would resolve the entire dispute without the need

---

[3] At its core, this case involves the Plaintiff's fight to exercise his constitutionally protected property rights under the Fifth and Fourteenth Amendments. The Government's actions in denying the Plaintiff all economically viable use of his property constitutes a regulatory taking without just compensation, in violation of the Takings Clause. Such actions undermine the fundamental principles of a free and fair democracy, where property rights are supposed to be safeguarded from arbitrary or unreasonable Government interference.

The Plaintiff's property, if allowed to be used for its highest and best use, would not only serve the Plaintiff's economic interests but also provide substantial benefits to the community. Yet, the Government has unjustly prohibited such use, effectively rendering the property idle and economically useless. These actions are not only unconstitutional but also inequitable.

The Plaintiff seeks relief to ensure that his property rights are respected and that the Government cannot impose unfair restrictions without due process or without just compensation, as required by the Constitution.

for further litigation. This is the most efficient and equitable way to bring finality to this controversy.

In the alternative, if the Government persists in its refusal, Plaintiff will be compelled to file additional litigation addressing the Government's continued actions concerning Plaintiff's property—actions that are well-documented in this Court's record but have not been fully addressed in the current Takings claim. Should the Court require a new Complaint to proceed, Plaintiff is prepared to file, but this Court should not disregard the extensive record of harm in favor of the Government. That record clearly shows a pattern of ongoing harm inflicted upon Plaintiff by the Government, harm which continues unabated.

The petitions submitted by 600 individuals and families who both need and want housing on Plaintiff's property, as stated in the Declaration of Clinton Brown in support of this TRO, further underscore the urgent public need for relief. Finally, Plaintiff would welcome the opportunity to invite these individuals to Courtroom 8B, where the Government can directly explain to the displaced families why it refuses to allow Plaintiff to build the homes they so desperately want and need.

## Relief Requested

Plaintiff respectfully requests this Court:

1. Issue a TRO requiring the Government to issue permits for the construction of 200 housing units immediately, without delay.

2. Alternatively, issue an Order to Show Cause directing the Government to appear before this Court and justify its refusal to issue the 200 housing permits.

**THEREFORE**, the Court is urged to issue the TRO immediately, without delay.

[*Intentionally Left Blank*]

**Certification of Rule 65(b)(1)(A) and (B) Pursuant to L.R. 65-1**

The Government has refused to meet and confer. *See* ECF No. 160. This Court has not ordered the Government to meet and confer. *See* ECF No. 162. The parties have not communicated since the Court's Order on May 1, 2024, despite Plaintiff's attempts to do so.

A declaration setting forth the facts pursuant to 18 U.S.C. § 1746 and L.R. 65-1 is attached herein.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: January 12, 2025 | */s/ Clinton Brown, Self-Represented* <br> 1431 Ocean Ave, Unit 413 <br> Santa Monica, CA 90401 <br> clinton@atlasinc.solar <br> 310-775-7990 |

CC: All Counsel of Record (via ECF) on January 12, 2025.