Clinton Brown, *Self-Represented*
1431 Ocean Ave, Unit 413
Santa Monica, CA 90401
clinton@atlasinc.solar
310-775-7990

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLINTON BROWN,<br><br>       Plaintiff,<br><br>    v.<br><br>CLARK R. TAYLOR, AICP, THE LOS ANGELES COUNTY DEPARTMENT OF REGIONAL PLANNING,<br><br>       Defendant. | **Case No**. 2:22-cv-09203-MEMF-KS<br><br>**Reply to Defendant's Opposition to Plaintiff's Application for TRO & Show Cause**<br><br>**Judge:** Honorable Maame Ewusi-Mensah Frimpong<br><br>**Chief Magistrate Judge:** Karen L. Stevenson<br><br>**Date:**<br><br>**Time:**<br><br>**Place:** |

      **NOTICE TO THE COURT**, the County of Los Angeles ("Government") has taken the extraordinary position of actively opposing the development of 200 housing units in the wake of the region's devastating wildfires—despite its undisputed authority to allow the project to proceed. This is not a zoning dispute. This is not about administrative discretion. This is an unconstitutional seizure of private property. The County's opposition to this Temporary Restraining Order ("TRO") is not just legally indefensible—it is an admission that it is choosing to keep the Plaintiff's property economically idle rather than allow development for the public interest. By continuing to block *all* economically viable use of the property, the Government has triggered a *per se* Taking under the Fifth Amendment. The Government's position is so extreme that, even if the Plaintiff's land were the last piece of habitable property on Earth, the Government would still deny *any* use of it for *any* purpose. This is not a mere exercise of land-use regulation—it is an outright confiscation of the Plaintiff's property without Just Compensation, in direct violation of the Fifth Amendment.[1]

---

[1] *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992) (holding that when a regulation deprives property of all economically beneficial use, it is a *per se* taking requiring just compensation); *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 715 (2010) (holding that a state may not, by *ipse dixit*, transform private

### I. The County's Total Denial of Any Property Use is a *Per Se* Taking.

The Government's zoning ordinance and deed restriction prohibits *all* structures on the Plaintiff's property, rendering it "essentially unimproved" in perpetuity. This categorical bar on development deprives the Plaintiff of *all* economically beneficial use, triggering *Lucas*'s bright-line rule. *See Lucas*, 505 U.S. at 1019 ("[W]hen the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking"). Even if the Government retains authority to "prohibit residential and/or commercial structures," it cannot leverage that restriction to functionally confiscate the Plaintiff's property without compensation. *See Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021) (regulatory actions amounting to a physical invasion require compensation). The Government's refusal to allow *any* development—even amid a housing crisis caused by wildfires—demonstrates an unconstitutional overreach.

### II. The Plaintiff has Standing to Challenge the Taking.

The Government's assertion that the Plaintiff lacks standing is contradicted by its own exercise of regulatory control. By denying permits and enforcing restrictions, the Government implicitly acknowledges the Plaintiff's property interest. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (standing requires a "concrete and particularized" injury caused by the defendant). The Plaintiff's injury—*loss of any use of his property*—is directly traceable to the Government's actions. In any event, the Government has waived this legal argument by failing to object to the Chief Magistrate Judge's R&R. *See* ECF No. 165 at 21 ("The Court concludes that

---

property into public property without compensation); *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) (holding that while property may be regulated to a certain extent, if regulation goes too far, it will be recognized as a taking); *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072–73 (2021) (holding that even if the government physically invades only an easement in property, it must nonetheless pay just compensation); *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 351 (1986) (holding that courts must first determine the extent of permitted development before adjudicating the constitutionality of regulations limiting land use); *Palazzolo v. Rhode Island*, 533 U.S. 606, 618, 627 (2001) (holding that the Takings Clause allows landowners to challenge regulations that deprive them of reasonable land use, and rejecting the notion that ownership transfers eliminate takings claims); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding that a "class of one" equal protection claim is valid where government treatment is irrational and wholly arbitrary); *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 331 (2002) ("The starting point for the court's analysis should have been to ask whether there was a total taking of the entire parcel; if not, then *Penn Central* was the proper framework").

the harm alleged in this case has been sufficiently established as harm to Plaintiff himself"). The

Government did not object to this Ruling. *See* ECF No. 169.

### III. The TRO Standards Are Satisfied.

### A. Likelihood of Success on the Merits

The Government does not dispute the following key facts:

1. Los Angeles County wildfires have displaced families and created an urgent need for housing.

2. The Plaintiff's proposed project for 200 housing units is viable and *could* be approved.

3. The Government holds the power to issue the necessary permits.

Rather than addressing these facts, the Government attempts to gaslight the Plaintiff and this Court. And this is a classic example of Government gaslighting. The Government—not the Plaintiff—holds *all* regulatory power. This is not a case of zoning for public health, safety, and welfare. Instead, this is an arbitrary and capricious denial of private property development rights. *See Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926) (holding that zoning regulations must have a substantial relation to public welfare and cannot be arbitrary).

The Government's own zoning ordinance explicitly states that property must remain "essentially unimproved" and cannot contain new structures—only improvements to existing ones. There are no structures on the Plaintiff's property. This means the Government has made clear it will never allow development—regardless of whether it is in the Complaint.[2]  This is an outright ban on development, not a mere regulatory delay. *See* ECF No. 186-1, Proposed Amended Complaint. The Government's opposition fails to provide any substantive argument refuting these

---

[2] *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 351 (1986) (holding that courts must first determine the extent of permitted development before adjudicating the constitutionality of regulations limiting land use). Here, the Government has explicitly stated that no improvements are allowed on the property. Even if a zone change were theoretically possible, the Government has already claimed the right in this Court to "prohibit residential and/or commercial structures" entirely. *See* ECF No. 82 at 10. ("Motion for Summary Judgment") This presents a no-win scenario—no matter what, the Government has ensured that the property remains economically idle and unusable. Last, this is not just a zoning dispute—it is a Constitutional case involving fundamental property rights, and that fact must not be overlooked by the Government's gaslighting.

claims and instead relies on procedural mischaracterizations and meritless assertions that the Plaintiff's TRO is "unintelligible" and "unsupported." These arguments fail under scrutiny.

### B. Irreparable Harm

The Government's irreparable harm argument was based entirely on the standing issue. As stated above, the Government has waived that argument, and the outstanding R&R said that the Government's legal position on that issue was defeated. *See* ECF No. 165 at 21. ("Plaintiff has proffered evidence sufficient to defeat summary judgment with respect to Plaintiff's standing to bring suit in this case."). The Court has already rejected a statute of limitations argument as well. *See* ECF No. 165 at 29 n. 3. ("The Court rejects Defendant's argument that this action is barred by the relevant statute of limitations on the ground that "[i]f anyone has ever suffered a taking, it was the developer, who in 1987 gave up the right to develop LOT 3 in TRACT NO. 33128 (Subject Property) by the dedication of rights to the County."). In other words, the Government cannot have it both ways. The Government is actively harming the Plaintiff through its abuse of power, effectively seizing private property rights that do not belong to them. This constitutes irreparable harm and a clear violation of Constitutional protections, *infra*.

### C. Public Interest & Balance of Equities

The Government makes no argument that a TRO is not in the public interest. But the public interest overwhelmingly favors enjoining unconstitutional Government conduct. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is always in the public interest to prevent the violation of a party's constitutional rights."). The Government incurs no actual cost in issuing the necessary approvals—merely the act of signing and processing paperwork—yet the harm inflicted by its refusal is profound. The Plaintiff, along with those who could benefit from the proposed housing, suffers far greater losses. Even if monetary compensation is eventually awarded, the deprivation of constitutional rights is itself an irreparable injury that cannot be undone. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury" & agreeing with the Appeals Court's overruling of the District Court's finding "that the allegations in their complaints

and affidavits did not constitute a sufficient showing of irreparable injury and that respondents had an adequate remedy at law."). *See* ECF No. 185-1. This is precisely the kind of Government overreach that the Constitution exists to prevent and, as such, the balance of the equities favors the Plaintiff. *See The Federalist Papers*, No. 51 (James Madison) ("The great difficulty lies in this: You must first enable the government to control the governed; and in the next place, oblige it to control itself."). Allowing the Government to continue to impose an indefinite prohibition on *all* property use, without justification or compensation, sets a dangerous precedent and violates foundational Constitutional principles. This Court must act to prevent such an abuse of power from continuing by granting the Plaintiff's request for a TRO.

**Conclusion**

Under binding Supreme Court precedent, the Government <u>cannot</u>: Regulate property into worthlessness and refuse to pay Just Compensation or block *all* economically viable use of private property without triggering the Takings Clause.[3]  Immediate judicial intervention is necessary to uphold the Plaintiff's Constitutional rights and prevent further irreparable harm. This Court should issue the TRO.

Respectfully submitted,

Dated: February 5, 2025

*/s/ Clinton Brown, Self-Represented*
1431 Ocean Ave, Unit 413
Santa Monica, CA 90401
clinton@atlasinc.solar
310-775-7990

CC: All Counsel of Record (via ECF) on February 5, 2025.

---

[3] The County also denied the solar farm (*See* ECF No. 1) by stating, "I have also attached Map Book Number 1099, pages 94 through 97. These pages illustrate Tract Map number 33128. Of special note is the deed restriction associated with lot 3 (the property in question) in which the signees "dedicate to the County of Los Angeles the right to prohibit the construction of residential and / or commercial structures within lot 3" and in which the rights of vehicular access to Liberty Canyon Road are abandoned and the right to restrict vehicular access to Agoura Road is granted to the County of Los Angeles." *See* Exhibit 1.