Clinton Brown, *Pro se*
1431 Ocean Ave, Unit 413
Santa Monica, CA 90401
clinton@atlasinc.solar
310-775-7990

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CLINTON BROWN,

        Plaintiff,

    v.

CLARK R. TAYLOR, AICP, THE LOS ANGELES COUNTY DEPARTMENT OF REGIONAL PLANNING,

        Defendant.

**No**. 2:22-09203-MEMF-KS

**Motion to Alter or Amend Judgment**

*See* **ECF No. 203 & Rule 59(e)**

**Judge:** Honorable Maame Ewusi-Mensah Frimpong

**Chief Magistrate Judge:** Karen L. Stevenson

**Date:** December 18, 2025

**Time:** 10:00 A.M.

**Place:** Courtroom 8B

      **NOTICE TO THE COURT**, a Takings Claim cannot be adjudicated without first determining what uses, if any, remain available to the owner. That threshold finding is absent from the Court's order. Without it, the Court could not properly apply either *Lucas* or *Penn Central*. This is clear error of law, and the Court must alter or amend its judgment. And while the Court may have sought to avoid the rigidity of a categorical *Lucas* rule by framing this case under *Penn Central* and "notice" principles, it cannot bypass the threshold inquiry mandated by the Supreme Court. For more than a century, beginning with *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922), "(while property may be regulated to a certain extent, if regulation goes too far, it will be recognized as a taking.")", the Supreme Court has held that takings analysis begin by identifying what uses, if any, remain. ("Whether the inquiry asks if a regulation has 'gone too far,' or whether it seeks to determine if proffered compensation is 'just,' no answer is possible *until* a court knows what use, if any, may be made of the affected property. Our cases *uniformly* reflect an insistence on knowing the nature and extent of

permitted development before adjudicating the constitutionality of the regulations that purport to limit it.") *See MacDonald et al. v. County of Yolo*, 477 U.S. 340, 350-351 (1986).

Without that predicate finding, no court can lawfully apply either the categorical rule of *Lucas* or the balancing test of *Penn Central*. Here, the record contains no identified use of Plaintiff's vacant property, and Defendant's own admitted evidence and position is that *all* structures are prohibited, and direct vehicular access is denied on Plaintiff's property. *See* ECF No. 165 at 9 (granting requests for judicial notice); *See also* FRE 201(f) ("In a civil case, the court must instruct the jury to accept the noticed fact as conclusive."). The Court's attempt to dispose of the case without undertaking this inquiry constitutes clear legal error and results in manifest injustice.

In *summa*, this motion rests on two independent grounds. First, the Court applied an incorrect legal standard under the Takings Clause by granting summary judgment without ever identifying what uses, if any, remain available to Plaintiff, contrary to over a century of Supreme Court precedent. Second, the Court applied an incorrect summary judgment standard by resolving evidence against the nonmovant and foreclosing a jury determination of disputed facts. Either ground requires vacatur of the judgment. Therefore, Plaintiff respectfully requests that the Court vacate judgment and set this matter for trial.

## **LEGAL STANDARD**

"Rule 59(e) allows a litigant to file a "motion to alter or amend a judgment." The time for doing so is short—28 days from entry of the judgment, with no possibility of an extension. *See* Fed. Rule Civ. Proc. 6(b)(2) (prohibiting extensions to Rule 59(e)'s deadline). The Rule gives a district court the chance "to rectify its own mistakes in the period immediately following" its decision. *White* v. *New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450 (1982). In keeping with that corrective function, "federal courts generally have [used] Rule 59(e) only" to "reconsider[ ] matters properly encompassed in a decision on the merits." *Id.,* at 451. In particular, courts will not address new arguments or evidence that the moving party could have raised before the decision issued. *See* 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §2810.1, pp. 163–164 (3d ed. 2012) (Wright & Miller); *accord*, *Exxon Shipping Co.* v. *Baker*, 554 U.S. 471, 485–486, n. 5 (2008) (quoting prior edition). By contrast, courts may consider new arguments based on an "intervening change in

controlling law" and "newly discovered or previously unavailable evidence." 11 Wright & Miller §2810.1, at 161–162 (3d ed. 2012). But it is rare for such arguments or evidence to emerge within Rule 59(e)'s strict 28-day timeframe. The motion is therefore tightly tied to the underlying judgment." *See Banister v. Davis*, 590 U. S. 504, 507-509 (2020).

"The filing of a Rule 59(e) motion within the 28-day period "suspends the finality of the original judgment" for purposes of an appeal. *FCC* v. *League of Women Voters of Cal.*, 468 U.S. 364, 373, n. 10 (1984) (internal quotation marks and alterations omitted). Without such a motion, a litigant must take an appeal no later than 30 days from the district court's entry of judgment. *See* Fed. Rule App. Proc. (FRAP) 4(a)(1)(A). But if he timely submits a Rule 59(e) motion, there is no longer a final judgment to appeal from. *See Osterneck* v. *Ernst & Whinney*, 489 U.S. 169, 174 (1989). Only the disposition of that motion "restores th[e] finality" of the original judgment, thus starting the 30-day appeal clock. *League of Women Voters*, 468 U. S., at 373, n. 10 (internal quotation marks omitted); *see* FRAP 4(a)(4)(A)(iv) (A party's "time to file an appeal runs" from "the entry of the order disposing of the [Rule 59(e)] motion"). And if an appeal follows, the ruling on the Rule 59(e) motion merges with the prior determination, so that the reviewing court takes up only one judgment. *See* 11 Wright & Miller §2818, at 246; *Foman* v. *Davis*, 371 U.S. 178, 181 (1962). The [reviewing] court thus addresses any attack on the Rule 59(e) ruling as part of its review of the underlying decision." *Supra*.

## DISCUSSION

### I. Takings Clause

"The just compensation requirement comes from the Fifth Amendment's Takings Clause, which provides: "nor shall private property be taken for public use, without just compensation." By requiring the government to pay for what it takes, the Takings Clause saves individual property owners from bearing "public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong* v. *United States*, 364 U. S. 40, 49 (1960)" *See Sheetz v. County of El Dorado,* 601 U.S. 267, 273–74 (2024).

### a. Takings Clause Legal Standard

### i. The Finality Rule

1        "We now must consider whether the interference with appellants' property is of such a

2  magnitude that "there must be an exercise of eminent domain and compensation to sustain [it]."

3  *Pennsylvania Coal Co. v. Mahon*, 260 U. S., at 413. That inquiry may be narrowed to the question of

4  the severity of the impact of the law on appellants' parcel, and its resolution in turn requires a careful

5  assessment of the impact of the regulation on the [] site." S*ee Penn Central Transportation Co. v. New*

6  *York City*, 438 U.S. 104, 136 (1978). Thus, "The [final decision regarding the application of the

7  [challenged] regulations to the property at issue] follows from the principle that only a regulation that

8  "goes too far," *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393, 415 (1922), results in a taking under

9  the Fifth Amendment, *see*, *e. g., MacDonald, Sommer* & *Frates* v. *Yolo County,* 477 U. S. 340, 348

10  (1986) ("A court cannot determine whether a regulation has gone 'too far' unless it knows how far the

11  regulation goes"); *see also Lucas* v. *South Carolina Coastal Council,* 505 U. S. 1003, 1014-1019

12  (1992) (regulation" 'goes too far'" and results in a taking "at leas[t] in the extraordinary circumstance

13  when *no* productive or economically beneficial use of land is permitted")." *See Suitum v. Tahoe*

14  *Regional Planning Agency*, 520 U.S. 725, 734 (1997). "Whether the inquiry asks if a regulation has

15  'gone too far,' or whether it seeks to determine if proffered compensation is 'just,' no answer is

16  possible *until* a court knows what use, if any, may be made of the affected property. Our cases

17  *uniformly* reflect an insistence on knowing the nature and extent of permitted development before

18  adjudicating the constitutionality of the regulations that purport to limit it." *See MacDonald et al. v.*

19  *County of Yolo*, 477 U.S. 340, 350-351 (1986).

20        This [finality] rule is "compelled by the very nature of the inquiry required by the Just

21  Compensation Clause," because the factors applied in deciding a takings claim "simply cannot be

22  evaluated until the [Government] has arrived at a final, definitive position regarding how it will apply

23  the regulations at issue to the particular land in question." *See Williamson County Regional Planning*

24  *Comm'n v. Hamilton Bank of Johnson City*, 473 U. S. 172, 190-191 (1985) <u>overruled on other grounds</u>

25  <u>by</u> *Knick v. Township of Scott*, 588 U.S. 180, 205 (2019). ("The state-litigation requirement of

26  *Williamson County* is overruled.").

27       **ii.  The Finality Rule in this Case**

28

Here, there is no question that the Government has exercised its *discretionary* "right" to prohibit residential and commercial structures without any exceptions. *See* ECF No. 10 ("Plaintiff took title to his property with a prior executed and recorded open space dedication document prohibiting the placement of structures on Plaintiff's property."). *Cf.* ECF No. 165 at 12 ("Defendant has proffered ample admissible evidence showing that specific *government-imposed restrictions* against development on the Subject Property that led to the denial of Plaintiff's solar farm application have been in place since 1987." (emphasis added). *See* ECF No. 165 at 26" *Inter alia*, although perhaps not directly relevant to the Takings Clause framework, the restriction at issue constitutes an impermissible delegation of police power to private parties—an arrangement that cannot withstand constitutional scrutiny. The Government cannot avoid its constitutional obligations by clothing private citizens with regulatory authority that extinguishes property rights. *See Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936) (condemning delegation of coercive power to private parties as "legislative delegation in its most obnoxious form"). But perhaps relevant still is that acceptance of such an outcome by this Court would itself work a "manifest injustice" upon property owners generally, and upon Plaintiff specifically, by denying just compensation for the Government's enforcement of such a restriction. In any event, it is clear legal error for the Court to have proceeded directly into the *Penn Central* factors without first determining what uses, if any, remained for the property. Furthermore, Plaintiff contends that the determination of whether any economically viable use remains is a factual issue reserved for the trier of fact, not the Court**.** *See Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 526 U.S. 687, 720–21 (1999) (recognizing the jury's role in evaluating regulatory takings claims under § 1983); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("In sum, we conclude that the determination of whether a given *factual dispute* requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."). In *this* Fifth Amendment Takings claim, the Court did not apply the "substantive evidentiary standards" required by the Supreme Court in a Takings case. (*i.e.* determining what uses remain prior to applying the Takings Clause legal framework). In any event, the record is undisputed that Plaintiff cannot build a single structure on his property, and the right to erect at least one lawful structure is a fundamental incident of ownership that cannot be denied without just compensation. *See Nollan v. Cal. Coastal Comm'n,* 483 U.S. 825, 834

n.2 (1987) ("But the right to build on one's own property -- even though its exercise can be subjected to legitimate permitting requirements -- cannot remotely be described as a governmental benefit."). And again, with respect to the 1987 *government-imposed restrictions*, a reasonable buyer would not conclude that the Government could enforce this so-called "right" to prohibit *all* structures on private property without just compensation. It defies logic that the Government would *want* to take property without just compensation and put itself in legal proceedings such as this one. Thus, the importance of the finality requirement, which this case clears.[1]

In fact, the Supreme Court itself has recognized the impropriety of resolving categorical and regulatory takings claims on an incomplete record and has remanded such cases for further proceedings. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1031–32 (1992) (remanding for determination whether "background principles of nuisance and property law" permitted the regulation); *Palazzolo v. Rhode Island*, 533 U.S. 606, 632 (2001) (remanding for application of the *Penn Central* takings framework to the facts of record). Thus, this is precisely what Plaintiff's Rule 59(e) motion seeks to prevent: the entry of final judgment despite unresolved factual disputes that go to the heart of the Takings Clause analysis.

Last, Plaintiff was not harmed by the purchase of the property because the "mere enactment" of a regulation does not "ripen" a Takings Claim. In other words, Plaintiff would not have had standing to sue the Government if he had sued on the same day he acquired the property. Plaintiff only had standing to sue when he was harmed by the regulation's enforcement in October 2021. Thus, the standing and the ripeness doctrine are in sync with the Takings Clause. It makes perfect sense that a

---

[1] *Cf.* "With respect to the wetlands on petitioner's property, the Council's decisions make plain that the agency interpreted its regulations to bar petitioner from engaging in any filling or development activity on the wetlands, a fact reinforced by the Attorney General's forthright responses to our questioning during oral argument in this case. See Tr. of Oral Arg. 26, 31. The rulings of the Council interpreting the regulations at issue, and the briefs, arguments, and candid statements by counsel for both sides, leave no doubt on this point: On the wetlands there can be no fill for any ordinary land use. There can be no fill for its own sake; no fill for a beach club, either rustic or upscale; no fill for a subdivision; no fill for any likely or foreseeable use. And with no fill there can be no structures and no development on the wetlands. Further permit applications were not necessary to establish this point." *See Palazzolo v. Rhode Island*, 533 U.S. 606, 621 (2001).

*Cf.* "It seems unlikely that common-law principles would have prevented the erection of any habitable or productive improvements on petitioner's land; they rarely support prohibition of the "essential use" of land, *Curtin v. Benson*, 222 U. S.78, 86 (1911)." (holding that even if the government acts as both sovereign and proprietor, it cannot "destroy essential uses of private property," and that prohibiting a lawful, essential use of land is tantamount to taking the property itself.). *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1031 (1992).

1  regulation can be challenged regardless of its actual recording date, if the harm from the regulation

2  has occurred and confers standing within the statute of limitations of that harm. So, even if Plaintiff is

3  not successful in his Takings Claim today, a future owner will be entitled to challenge the

4  Government's prohibition on *all* structures and direct vehicular access once the Government inflicts

5  that injury. Lest liability for the unconstitutional Taking never forces the Government to pay for what

6  it took; the Court must apply the proper Takings Clause framework to ensure that just compensation

7  is not nullified by procedural or doctrinal error in this case.

8      **iii. The *Lucas* and *Penn Central* Takings Analysis Frameworks**

9          For *Lucas,* "The "total taking" inquiry we require today will ordinarily entail (as the application

10  of state nuisance law ordinarily entails) analysis of, among other things, the degree of harm to public

11  lands and resources, or adjacent private property posed by the claimant's proposed activities, *see, e.g.*,

12  Re-statement (Second) of Torts §§ 826, 827, the social value of the claimant's activities and their

13  suitability to the locality in question, *see, e. g., id*., §§ 828(a) and (b), 831, and the relative ease with

14  which the alleged harm can be avoided through measures taken by the claimant and the government(or

15  adjacent private landowners) alike, *see, e. g. id*., 88 827(e),828(c), 830. The fact that a particular use

16  has long been engaged in by similarly situated owners ordinarily imports a lack of any common-law

17  prohibition (though changed circumstances or new knowledge may make what was previously

18  permissible no longer so, *see id*., § 827, Comment g. So also does the fact that other landowners,

19  similarly situated, are permitted to continue the use denied to the claimant." *See Lucas v. South*

20  *Carolina Coastal Council*, 505 U.S. 1003, 1030-1031 (1992). (holding "A taking that requires just

21  compensation exists when the government creates a regulation that negates all economically beneficial

22  use of a property, and state nuisance law would have permitted such a use."). "It seems unlikely that

23  common-law principles would have prevented the erection of any habitable or productive

24  improvements on petitioner's land; they rarely support prohibition of the "essential use" of land, *Curtin*

25  *v. Benson*, 222 U. S.78, 86 (1911)."

26          For *Penn Central*, "whether a particular restriction will be rendered invalid by the

27  government's failure to pay for any losses proximately caused by it depends largely "upon the

28  particular circumstances [in that] case." *United States v. Central Eureka Mining Co*., 357 U. S. 155,

357 U. S. 168 (1958); *see United States v. Caltex, Inc*., 344 U. S. 149, 344 U. S. 156 (1952). In engaging in these essentially *ad hoc*, factual inquiries, the Court's decisions have identified several factors that have particular significance. The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations. *See Goldblatt v. Hempstead, supra* at 369 U. S. 594. So, too, is the character of the governmental action." See *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978).

### b. Clear Error of Law Applying the Takings Analysis

The Court committed clear error of law by failing to apply the *threshold inquiry* required in every takings case—whether any economically viable use of the property remains. *See MacDonald et al. v. County of Yolo*, 477 U.S. 340, 350-351 (1986). ("Whether the inquiry asks if a regulation has 'gone too far,' or whether it seeks to determine if proffered compensation is 'just,' no answer is possible *until* a court knows what use, if any, may be made of the affected property. Our cases *uniformly* reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it."). The Court instead bypassed this threshold question and applied the *Penn Central* factors as though some viable use necessarily survived. But neither Plaintiff, the Government, nor this Court has identified a single lawful use permitted on Plaintiff's property.

The Supreme Court has made clear that such a failure to identify remaining uses is legal error. By resolving the case under *Penn Central* without first determining what uses, if any, remain, the Court applied the wrong legal framework. This clear error of law alone warrants altering or amending the judgment under Rule 59(e). *See Palazzolo v. Rhode Island*, 533 U.S. 606, 632 (2001) ("The court did not err in finding that petitioner failed to establish a deprivation of all economic value, *for it is undisputed that the parcel retains significant worth for construction of a residence*. The claims under the *Penn Central* analysis were not examined, and for this purpose the case should be remanded."); *See also*, Footnote 1.

Here, by contrast, it is undisputed that no use whatsoever is in the record for Plaintiff's property—because no use is available. Unlike in *Palazzolo*, where residential construction remained,

the Government's prohibition on *all* structures and direct vehicular access forecloses all economically viable uses. Proceeding under *Penn Central* despite this record is clear legal error.

### c.    Manifest Injustice – The Government Cannot Enforce a Restriction that Strips Away a Federal Constitutional Right to Build on One's Own Property

The Supreme Court has recognized that the "right to build on one's own property" cannot remotely be described as a mere governmental benefit. *See Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 834 n.2 (1987). This right is not a matter of local grace; it flows directly from the Fifth and Fourteenth Amendments' protection against uncompensated takings and the common law. An enforced regulation on a property owner that eliminates the ability to construct *any* residential or commercial structure on otherwise vacant land effects precisely the kind of wipeout of economic value that *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992), identified as a categorical taking requiring just compensation.

In *Lucas v. S.C. Coastal Council*, the Court made clear that a categorical taking occurs when regulation denies "all economically beneficial or productive use of land." 505 U.S. 1003, 1015-1016 (1992). The Court further emphasized that the only narrow exception arises where the restricted use was never part of the title to begin with under background principles of nuisance and property law. *Id*. at 1029–30. Critically, at common law, nuisance did not encompass the simple act of building on one's own land. Rather, nuisance principles addressed encroachments, polluting uses, or activities that directly invaded the rights of others. *See id*. at 1029 (noting that restrictions justified under "background principles" are those preventing uses "akin to public nuisances"); *id*. at 30. ("When, however, a regulation that declares "off-limits" all economically productive or beneficial uses of land goes beyond what the relevant background principles would dictate, compensation must be paid to sustain it.").

Thus, contrary to the Government's position, the prohibition on constructing *any* residential or commercial structure cannot be justified as a mere application of nuisance law. No background principle of property or nuisance law has ever treated the ordinary act of building as unlawful *per se*. To the contrary, the right to build is among the core uses of private land, and its elimination leaves the property economically idle. Thus, by enforcing the 1987 restriction, the Government has gone beyond

1  regulation and has effectuated precisely the type of wipeout of value that *Lucas* condemned as

2  unconstitutional without just compensation.

3    Here, the County's enforcement of the 1987 restriction does exactly that: it forbids the most

4  basic and economically essential use of land—the right to build. Such an outcome is not merely poor

5  policy; it is unconstitutional. State or local governments cannot sidestep the Takings Clause by

6  recording prohibitions that purport to extinguish this fundamental right. *See Tyler v. Hennepin County*,

7  598 U.S. 631, 638 (2023) (States may not "sidestep the Takings Clause by disavowing traditional

8  property interests").

9    In any event, once this issue was brought to the Government's attention, it had many lawful

10  avenues available to resolve it — including eminent domain, zoning adjustments, or just compensation.

11  Instead, the Government chose to exercise raw police power to extinguish a core Federal

12  Constitutional right: the right to build on one's own property. That choice, which bypassed the Takings

13  Clause and denied just compensation, is precisely what the Fifth Amendment forbids. "The State, by

14  ipse dixit, may not transform private property into public property without compensation." *See Webb's*

15  *Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980).

16    Nor can the Government defend this as a harmless or revocable measure. The Supreme Court

17  has long held that temporary takings are as fully protected by the Constitution as permanent ones. *See*

18  *First English Evangelical Lutheran Church v. Cnty. of Los Angeles*, 482 U.S. 304, 318 (1987). Here,

19  the County's prohibition operates as a total ban on structures and direct vehicular access. It could, at

20  any moment, change course and allow structures and direct vehicular access for a different owner, but

21  not for this Plaintiff. That discriminatory exercise of raw police power—stripping one owner of all use

22  while leaving open the option to relax the restriction later—cannot stand under the Takings Clause.

23    In *summa*, the Government chose to exercise raw police power to take from Plaintiff a

24  fundamental property right protected by the Federal Constitution that does not belong to it, without

25  providing just compensation. That act constitutes a manifest injustice that this Court must not overlook.

26    **d.  Intervening Change in Controlling Law**

27    After the filing of judgment, the Ninth Circuit has issued at least three published opinions

28  clarifying Takings Clause doctrine. Courts may consider such new precedent on a Rule 59(e) motion

1    where it reflects "an intervening change in controlling law." *See Banister v. Davis*, 590 U.S. 504, 507-

2    509 (2020). Each case confirms that the Court's summary judgment ruling here was legal error.

3    *Searle v. Allen*, No. 24-4819, *slip op*. at 17-19 (9th Cir. Aug. 28, 2025)**.** The Ninth Circuit held

4    that a State cannot sidestep the Takings Clause by redefining away traditional incidents of ownership.

5    Relying on *Tyler v. Hennepin County*, 598 U.S. 631 (2023), the panel explained that "[s]tate law is

6    one important source [of property rights], but not the only source," and the Constitution forbids

7    governments from disavowing core rights to avoid liability. *Slip op*. at 18-19. So too here: Los Angeles

8    County cannot extinguish Plaintiff's right to build by invoking its 1987 prohibition on structures and

9    then deny just compensation when enforced. In other words, "retaining" a core property right when it

10   denied Plaintiff's "right to build" is a "classic" taking requiring just compensation. *Slip op*. at 17.

11   *Pharm. Research & Mfrs. of Am. v. Stolfi*, No. 24-1570, *slip op*. at 76-77 (9th Cir. Aug. 26,

12   2025) The Ninth Circuit reversed summary judgment on a Fifth Amendment takings claim,

13   emphasizing that takings analysis "necessarily requires a weighing of private and public interests" and

14   is inherently "fact-specific." *Slip op*. at 77 (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*,

15   480 U.S. 470, 492 (1987)). While the panel rejected a facial challenge under *Penn Central*, it

16   reaffirmed that an *as-applied* claim—like Plaintiff's—turns on the actual restrictions imposed and

17   whether any economically viable use remains. Such disputes belong to the trier of fact, not to the Court

18   on summary judgment. *See also*, *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 720–21 (1999).

19   *Garza v. Woods*, No. 24-1064, *slip op*. at 8–11, 16 (9th Cir. Aug. 25, 2025). The Ninth Circuit

20   confirmed that property owners suffer a cognizable constitutional injury when the Government

21   assumes control without consent, even if the owner lacks present possession or use. *Slip op*. at 8–11.

22   The panel further held that even "temporary, nonfinal" deprivations qualify as deprivations under the

23   Fourteenth Amendment. *Slip op*. at 16 (citing *Fuentes v. Shevin*, 407 U.S. 67, 85 (1972)). *Garza*

24   reinforces that constitutional protection extends to the very injury inflicted here: a government-

25   imposed restriction that strips all use while reserving the option to relax it for others.

26   Together, these decisions demonstrate why this Court's judgment cannot stand. The

27   Government's admitted prohibition on structures and direct vehicular access leaves no economically

28   viable use of the property, and at minimum creates a genuine dispute of material fact. *See* ECF No.

1   10. ("Plaintiff has not lost most or all of possible use of his property under applicable land use

2   regulations."). Under controlling Supreme Court and Ninth Circuit precedent, that question must go

3   to a jury.

4          Last, consider the scenario presented here. The Court itself recognized that "Defendant has

5   proffered ample admissible evidence showing that specific *government-imposed restrictions* against

6   development on the Subject Property that led to the denial of Plaintiff's solar farm application have

7   been in place since 1987." *See* ECF No. 165 at 26. By its own terms, such a designation appears to

8   prohibit any residential use or the construction of structures on the land. *See* ECF No. 200 at 12

9   (discussing "futility" of the claim). Yet Plaintiff was denied his day in court before a jury because he

10  could not produce admissible evidence of remaining economic uses or value. That flips the burden of

11  proof and strips the trier of fact of its constitutional role. Whether *any* economically viable use remains

12  is the quintessential jury question under the Fifth Amendment, not an issue for resolution on summary

13  judgment. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720–21 (1999).

14         But what conceivable uses could exist without structures? Even assuming, *arguendo*, that

15  agricultural use was possible, where would crops be stored without a barn or shed? Could an animal

16  farm operate without shelter or fencing? And the Government's own admissible evidence further

17  demonstrates that direct vehicular access to the parcel is prohibited. These factual disputes go directly

18  to the core question of whether any economically viable use remains. There is simply no admissible

19  evidence Plaintiff could produce to prove any viable economic use when the Government's own

20  evidence establishes the contrary. In any event, Plaintiff sought to invoke his right to a court-appointed

21  appraiser under the Federal Rules of Evidence in Fifth Amendment takings cases, but that request was

22  denied. *See* ECF No. 181. Denying both a trier of fact and an independent appraisal compounds the

23  manifest injustice: the Court required Plaintiff to prove remaining uses while simultaneously

24  foreclosing the very mechanisms by which such proof could be developed.

25         In any event, the Supreme Court has long held that the right to build is a fundamental incident

26  of ownership, not a mere governmental benefit. *See Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825,

27  834 n.2 (1987). And in *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992), the Court held

28  that a regulation which deprives property of all economic use effects a categorical taking. Whether

1  that wipeout has occurred is a fact-intensive inquiry reserved for the trier of fact. *See City of Monterey*

2  *v. Del Monte Dunes*, 526 U.S. 687, 720–21 (1999). Accordingly, these disputes cannot be resolved on

3  summary judgment in this case, and they must be submitted to a jury.

4  **II. Summary Judgment**

5  "Summary judgment is appropriate if the evidence, viewed in the light most favorable to the

6  *nonmoving party*, demonstrates that there is no genuine issue of material fact and that the moving party

7  is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The moving party bears the initial

8  burden of offering proof of the absence of any genuine issue of material fact. *See Celotex Corp. v.*

9  *Catrett*, 477 U.S. 317, 323 (1986). Once the moving party's burden is met, the opposing party is

10 required to go beyond the pleadings and, by the party's own affidavits or by other evidence, designate

11 "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Miller v. Glenn*

12 *Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). The party opposing the motion must submit

13 evidence sufficient to establish the elements that are essential to that party's case, and for which that

14 party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. The Court must "view the

15 facts in the light most favorable to the non-moving party and draw reasonable inferences in favor of

16 that party." *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 784 (9th Cir. 2007). Where different

17 ultimate inferences reasonably can be drawn, summary judgment is inappropriate. *Miller*, 454 F.3d at

18 988. At summary judgment, "the court does not make credibility determinations or weigh conflicting

19 evidence." *Porter*, 419 F.3d at 891 (citation omitted). A factual dispute is "genuine" only if there is a

20 sufficient evidentiary basis upon which a reasonable jury could return a verdict for the nonmoving

21 party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" only

22 if it might affect the outcome of the lawsuit under governing law. *Id*.

23 To establish the existence of a factual dispute, an opposing party need not establish an issue of

24 fact conclusively in its favor; it is enough that "the claimed factual dispute be shown to require a jury

25 or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities*

26 *Serv. Co.*, 391 U.S. 253, 290 (1968). Thus, the "purpose of summary judgment is to 'pierce the

27 pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*

28 *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56(e) advisory

1    committee's note on 1963 amendments); *Int'l Union of Bricklayers v. Martin Jaska, Inc*., 752 F.2d

2    1401, 1405 (9th Cir. 1985)." *See* ECF No. 165 at 14-15.

3    **a. Clear Error of Law**

4    The Court's own finding confirms the *Lucas* threshold was triggered. The Court expressly

5    found that "Defendant has proffered ample admissible evidence showing that specific *government-*

6    *imposed restrictions* against development on the Subject Property that led to the denial of Plaintiff's

7    solar farm application have been in place since 1987." (emphasis added). *See* ECF No. 165 at 26.

8    (Referring to the judicially noticed recording of the Government's so-called right to prohibit

9    residential and/or commercial structures).

10    That finding is legally significant. If the Government's restriction bars *all* structures of the

11    property, then it implicates the categorical rule in *Lucas v. South Carolina Coastal Council*, 505 U.S.

12    1003, 1019 (1992), which requires compensation when a regulation "denies all economically

13    beneficial or productive use of land." The Court was therefore obligated to resolve the threshold

14    question: whether any economically viable use remained. A century of takings clause cases makes

15    clear that no answer is possible until this threshold inquiry is undertaken, *supra*.

16    Instead, the Court skipped that step and *assumed* that some use survived, plunging directly into

17    the *Penn Central* balancing test. That was clear legal error. By the Court's own statement, the

18    Government's evidence places Plaintiff squarely within the *Lucas* framework—or at minimum,

19    creates a genuine dispute of material fact on whether *any* viable use remains. Such disputes belong to

20    the jury, not the Court. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687,

21    720–21 (1999).

22    **III. Manifest Injustice – Denial of Jury Trial**

23    "In actions at law predominantly factual issues are in most cases allocated to the jury. *See*

24    *Baltimore & Carolina Line, Inc.* v. *Redman*, 295 U. S. 654, 657 (1935). The allocation rests on a firm

25    historical foundation, *see, e. g.*, 1 E. Coke, Institutes 155b (1628) *("ad quaestionem facti non*

26    *respondent judices; ad quaestionem juris non respondent juratores"),* and serves "to preserve the right

27    to a jury's resolution of the ultimate dispute," *Markman, supra*, at 377. Almost from the inception of

28    our regulatory takings doctrine, we have held that whether a regulation of property goes so far that

"there must be an exercise of eminent domain and compensation to sustain the act ... depends upon the particular facts." *Pennsylvania Coal Co.* v. *Mahon, 260* U. S. 393, 413 (1922); accord, *Keystone Bituminous Coal, supra,* at 473-474. Consistent with this understanding, we have described determinations of liability in regulatory takings cases as "'essentially ad hoc, factual inquiries,'" *Lucas, supra,* at 1015 (quoting *Penn Central Transp. Co.* v. *New York City,* 438 U. S. 104, 124 (1978)), requiring "complex factual assessments of the purposes and economic effects of government actions," *Yee,* 503 U. S., at 523. <u>In accordance with these pronouncements, we hold that the issue whether a landowner has been deprived of all economically viable use of his property is a predominantly factual question.</u>" *See Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 721 (1999).

      **a. The Court Committed Clear Legal Error by Skipping the Threshold Inquiry and Resolving a Jury Question at Summary Judgment**

      Thus, the Court's error is compounded by the fact that it purported to answer the threshold question of what uses remain—without identifying a single permissible use—and then bypassed *Lucas* altogether by proceeding directly to *Penn Central*. To this day, Plaintiff cannot name one use the Government would allow for the property, and the record reflects that neither the Government nor this Court has identified one. That omission is clear error of law in a Takings controversy.

      The error is compounded further by the Court's usurpation of the jury's role. The Supreme Court has made plain that takings inquiries are fact-intensive, and whether any economically viable use remains is a question for the trier of fact. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720–21 (1999). By granting summary judgment to the Government, the Court weighed evidence against the nonmoving party and resolved a genuine factual dispute that must go to a jury.

      This should go without saying: the Court's errors of law create a manifest injustice that shocks the conscience of any reasonable litigant who comes to Federal Court expecting that the Takings Clause framework will be applied fairly and without prejudice. A judgment that both misapplies controlling precedent and strips the jury of its constitutional role cannot stand. This is not "harmless error." It is clear legal error resulting in manifest injustice. Although it may be difficult to acknowledge error, it is fundamental to our legal system to correct such mistakes. This Court must do so here.

**CONCLUSION**

The Court's judgment rests on clear errors of law that work a manifest injustice. By skipping the threshold inquiry into whether any economic use remains, reallocating burdens of proof, and usurping the role of the jury, the Court deprived Plaintiff of his constitutional right to just compensation. *See Banister v. Davis*, 590 U.S. 504, 507-509 (2020); *MacDonald, Sommer & Frates v. Cnty. of Yolo*, 477 U.S. 340, 350–51 (1986); *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 720–21 (1999).

Intervening Ninth Circuit precedent has only confirmed the error. See *Searle v. Allen*, No. 24-4819 (9th Cir. Aug. 28, 2025); *PhRMA v. Stolfi*, No. 24-1570 (9th Cir. Aug. 26, 2025); *Garza v. Woods*, No. 24-1064 (9th Cir. Aug. 25, 2025). Each of these decisions underscores that courts must resolve the threshold "what use remains" inquiry and that disputes over remaining economic viability are fact questions for the trier of fact, not the Court on summary judgment.

This is not harmless error. It is structural error that nullifies the right to just compensation guaranteed by the Fifth Amendment. For these reasons, Plaintiff respectfully requests that the Court alter or amend its judgment under Rule 59(e), vacate the prior judgment, deny Defendant's motion for summary judgment, and set this matter for trial.

Dated: September 7, 2025                                    */s/ Clinton Brown, Pro Se*
                                                           1431 Ocean Ave, Unit 413
                                                           Santa Monica, CA 90401
                                                           clinton@atlasinc.solar
                                                           310-775-7990

CC: All Counsel of Record (via ECF) on September 7, 2025